# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GEISINGER HEALTH AND EVANGELICAL COMMUNITY HOSPITAL HEALTHCARE WORKERS ANTITRUST LITIGATION | Case No. 4:21-cv-00196-MWB |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND, ALTERNATIVELY, TO STRIKE CLASS ACTION ALLEGATIONS

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    PLAINTIFFS LACK ARTICLE III AND ANTITRUST STANDING. ........ 2

     A.    Plaintiffs concede they cannot establish Article III standing because they have not been denied any job opportunities. ..................2

     B.    Plaintiffs do not meet the *Associated General Contractors* factors, and, therefore, lack antitrust standing. ....................................5

III.   PLAINTIFFS CANNOT SALVAGE THEIR INSUFFICIENTLY PLED ANTITRUST CONSPIRACY CLAIM...................................................... 6

IV.   PLAINTIFFS HAVE NOT MADE A PRIMA FACIE SHOWING THAT THEIR OVERBROAD CLASS ALLEGATIONS CAN MEET RULE 23. ............................................................................................... 10

V.    CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litig.*,
    87 F. Supp. 3d 1195 (N.D. Cal. 2015) ................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) .......................................................................................5, 6

*Bartello v. City of Sunbury*,
    No. 4:13-cv-1340, 2014 WL 220789 (M.D. Pa. Jan. 21, 2014) .........................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................7, 9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ..........................................................................................5

*Burch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ..............................................................................7

*Carrera v. Bayer Corp.*,
    727 F. 3d 300 (3d Cir. 2013) ...........................................................................14

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ...............................................................9

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..........................................................................................2

*Fonseca v. Hewlett-Packard Co.*,
    No. 19-cv-1748, 2020 WL 6083448 (S.D. Cal., Feb. 3, 2020) ..........................4

*Great Western Mining & Mineral Co. v. Rothschild LLP*,
    615 F. 3d 159 (3d Cir. 2010) .............................................................................7

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F. 3d 349 (3d Cir. 2013) ...............................................................14

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012)................................3, 5, 12, 13

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)...............................................................................5

*In re Ins. Brokerage*,
    618 F.3d 300,324 .............................................................................7, 8

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    2017 WL 3131977 (D. N.J. July 20, 2017) ..........................................9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).............................................................................2

*Marcus v. BMW of North America, LLC*,
    687 F. 3d 583 (3d Cir. 2012) .........................................................14, 15

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016).......................................................12

*Ogden v. Little Caesar Enterprises, Inc.*,
    393 F. Supp. 3d. 622 (E.D. Mich. 2019), *appeal dismissed*, No. 19-
    1986, 2020 WL 948507 (6th Cir. Jan. 28, 2020)................................3

*Pace Elecs., Inc. v. Canon Computer Sys., Inc.*,
    213 F.3d 118 (3d Cir. 2000) ............................................................4, 5

*In re Pork Antitrust Litig.*,
    495 F. Supp. 3d 753 (D. Minn. 2020)..................................................9

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430, 436 (3d Circ. 1997).......................................................4

*Resco Products, Inc. v. Bosai Minerals Group Co., Ltd*,
    158 F. Supp. 3d 406 (W.D. Pa. 2016)..................................................9

*Rowe Ent., Inc. v. William Morris Agency, Inc.*,
    No. 98 civ. 8272, 2005 WL 22833 (S.D.N.Y. Jan. 5, 2005), *aff'd*,
    167 F. App'x 227 (2d Cir. 2005) .........................................................3

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
    395 F. Supp. 3d 464 (W.D. Pa. 2019)...........................................................*passim*

*Seaman v. Duke Univ.*,
    No. 1:15-cv-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018)................3, 12, 13

*Semenko v. Wendy's Int'l, Inc.*,
    No. 2:12-cv-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)...............11, 15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..................................................................................2

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008)..........................................................8

*United States v. Container Corp.*,
    393 U.S. 333 (1969)....................................................................................8

*United States v. Geisinger Health*,
    No. 4:20-cv-01383, ECF No. 1 (M.D. Pa. Aug. 5, 2020) ..............................1, 8

*Vanderklok v. United States*,
    868 F.3d 189. (3d Cir. 2017) ......................................................................10

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) .........................................................................8

*Pennsylvania ex rel. Zimmerman v. Pepsico*,
    836 F.2d 173 (3d Cir. 1988) .......................................................................7

## Other Authorities

Rule 12(b)(6).........................................................................................1, 5

Rule 23 .........................................................................................*passim*

Rule 23(b)(3).........................................................................................12

Rule 23(d)(1)(D) ....................................................................................10

# I. INTRODUCTION

Plaintiffs abandoned their state (and only original) claim after conceding it lacked merit as a matter of law.[1]  To salvage their remaining federal claim, copied from a DOJ Complaint[2] in a resolved merger case, Plaintiffs impermissibly add new (but still conclusory) allegations in their Opposition to attempt to overcome fatal deficiencies in their Complaint,[3] all while refusing to address any inconvenient facts or law.  Plaintiffs' overreach by extrapolating a purported *decade*-long conspiracy affecting *all* of Defendants' "Healthcare Workers" *solely* out of a single, undated email communication about soliciting "nurses" on Facebook is fatally flawed.  The Complaint provides no other factual support and, thus, fails to plausibly state a conspiracy under Rule 12(b)(6).

Nor have Plaintiffs made a prima facie case that their overbroad and legally deficient proposed class can meet Rule 23 requirements.  Their class allegations are strikingly similar, if not identical, to those struck by Judge Conti in *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464 (W.D. Pa. 2019) ("*Railway*")— a case where the court exercised its authority to strike class allegations at the

---

[1] Plaintiffs' Opposition to Mem. of Law in Support of Defendants' Joint Mot. to Dismiss Plaintiffs' Consolidated Class Action Complaint and, Alternatively, to Strike Class Action Allegations ("Joint Motion"), ECF No. 56 ("Opp.") at n.1.
[2] *United States v. Geisinger Health, et al.*, No. 4:20-cv-01383, ECF No. 1.
[3] "Complaint" or "CAC" refers to Plaintiffs' Consolidated Class Action Complaint, ECF No. 46.

pleading stage under Rule 23.  The Court should do the same here.

## II.  PLAINTIFFS LACK ARTICLE III AND ANTITRUST STANDING.

### A.  Plaintiffs concede they cannot establish Article III standing because they have not been denied any job opportunities.

Plaintiffs allege a "no-poach" agreement between Defendants not to recruit each other's employees—*not a wage-fixing case and not a no-hire case*.  Plaintiffs have not sufficiently alleged Article III injury-in-fact (Opp. at 13) because they concede they were not directly injured as they never sought to switch jobs, would have been recruited, or were denied job opportunities because of the alleged agreement.  Opp. at 9-12.  Their alleged injury is, thus, not "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," to satisfy Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).  Article III requires a concrete injury that "must actually exist" even if a plaintiff is otherwise able to establish a statutory violation.  *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548-49 (2016).  And indirect injury, which requires inferences and speculation, is insufficient.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013) ("[S]peculative chain of possibilities" insufficient for standing.).  Indeed, Plaintiffs admit that their "injuries flow not from their own individual actions," but indirectly from the allegedly suppressed wages and job mobility of *other* healthcare workers, which, in turn, allegedly "reduced the pay of all" workers.  Opp. at 12-13.  Plaintiffs' injury-in-fact theory fails for at least the following reasons.

First, a no-recruit agreement does not automatically suppress wages. *Ogden v. Little Caesar Enterprises, Inc*., 393 F. Supp. 3d. 622, 637-40 (E.D. Mich. 2019), *appeal dismissed*, No. 19-1986, 2020 WL 948507 (6th Cir. Jan. 28, 2020) (allegations of no-recruit and no-hire agreement insufficient to assert artificially depressed wages). Unlike *wage-fixing* agreements, which could result in artificially lower wages, a no-recruit agreement could only possibly depress wages if the participants have market power in a properly defined market—a threshold issue. *See Rowe Ent., Inc. v. William Morris Agency, Inc*., No. 98 civ. 8272, 2005 WL 22833, at \*14 (S.D.N.Y. Jan. 5, 2005), *aff'd*, 167 F. App'x 227 (2d Cir. 2005).

The cases Plaintiffs cite do not support a finding that a no-recruit agreement alone necessarily suppresses wages absent market power, as they all involved allegations beyond just a no-recruit agreement. *See In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1111 (N.D. Cal. 2012) (alleging no-recruit agreement *and* other agreements to notify competitors when making an employment offer, not engage in bidding wars, and fix wages); *In re Animation Workers Antitrust Litig.* 87 F. Supp. 3d 1195, 1200 (N.D. Cal. 2015) (alleging no-recruit agreement *and* exchange of salary information); *Seaman v. Duke Univ*. No. 1:15-cv-462, 2018 WL 671239, at \*1 (M.D.N.C. Feb. 1, 2018) (alleging only a *no-hire* agreement).

Second, Plaintiffs have not, and cannot, allege a plausible labor market in which Defendants had market power. Plaintiffs are wrong that they need not allege

a relevant market or market power, because they plead a *per se* antitrust violation. Opp. at 15-16. This confuses liability (whether the alleged violation warrants *per se* or rule of reason treatment)[4] with standing (requiring alleged injury-in-fact). A "plaintiff is still required to meet the Article III and antitrust standing requirements" even after establishing a *per se* claim.[5]

Indeed, Plaintiffs' claim that "application of basic economic logic" supports their theory of harm (Opp. at 14) fails to address the fundamental point that the alleged no-recruit agreement cannot have "broadly" suppressed wages absent market power by Defendants in a properly defined market. Mot. at 12-15.[6] They simply dismiss the many alternatives in the region (Opp. at 20) and provide no explanation for why a nurse or patient access representative, for example, cannot work in schools, retirement homes, and other non-hospital settings—all reasonably substitutable employers in the area competing with Defendants for their labor.[7]

---

[4] To be clear, Defendants do not concede that *per se* treatment is appropriate here.
[5] *Fonseca v. Hewlett-Packard Co.*, No. 19-cv-1748, 2020 WL 6083448, at *10 (S.D. Cal., Feb. 3, 2020). Plaintiffs' wrongly rely on *Pace Elecs., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118 (3d Cir. 2000). There, a dealer's contract was terminated for refusing to acquiesce in an alleged price-fixing conspiracy. *Id.* at 119. The issue was whether the dealer's alleged injury (contract termination) was causally linked to the alleged conspiracy—a different inquiry into antitrust standing—not whether he was in fact injured. Plaintiffs' other cases relate to antitrust liability, not standing.
[6] "Mot." refers to Defendants' brief in support of their Joint Motion, EFC No. 52.
[7] Plaintiffs wrongly argue that *Queen City Pizza, Inc. v. Domino's Pizza, Inc.* holds that market definition can only be determined after a factual inquiry. Opp. at 18 n. 10. But the court held: "Plaintiffs err, however, when they try to turn this general rule into a per se prohibition against dismissal of antitrust claims for failure to plead

**B.**     **Plaintiffs do not meet the *Associated General Contractors* factors, and, therefore, lack antitrust standing.**

Plaintiffs have also failed to show they suffered antitrust injury—*i.e.*, injury "of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful" (*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)) under the multi-factor test in *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983). *See also* Mot. at 16.[8] Specifically, Plaintiffs fail to meet the third, fourth, and fifth factors: directness of the injury;[9] existence of more direct victims; and risk for duplicative recovery or complex apportionment of damages.[10]

Indeed, Plaintiffs' unsupported assertion that "they were underpaid" and, thus, satisfy antitrust injury is wrong, as their "injury" is too far removed from their insufficiently pled conspiracy claim.[11] Plaintiffs acknowledge they do not allege they attempted to switch and were denied jobs because of the alleged agreement.

---

a relevant market under Fed.R.Civ.P. 12(b)(6)." 124 F.3d 430, 436 (3d Circ. 1997).
[8] Plaintiffs bear the burden of showing antitrust standing "even where, as in the instant case, the alleged acts of the defendants constitute a *per se* violation of the antitrust laws." *Pace Elecs.*, 213 F.3d at 120.
[9] *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 269 (1992) (citations omitted).
[10] *AGC*, 459 U.S. at 545; see also Mot. at 16-19 (describing *AGC* factors).
[11] Plaintiffs cite no legal support for their conclusory statements that alleging they were "underpaid by virtue of" the alleged agreement is "sufficient" for antitrust injury. Opp. at 10. Plaintiffs misplace their reliance on *High-Tech*, which as described *supra* at 3, contained detailed allegations, unlike here, "explain[ing] the means by which Defendants allegedly caused this injury" and "suggest[ing] how this injury should be quantified." *High-Tech*, 856 F. Supp. 2d at 1123.

Nor do they allege that they would have been recruited or sought higher pay. Under *AGC*, other employees who in fact suffered such harms—if they exist—would be more direct victims with injuries that would be directly related to the alleged agreement (*AGC* factor 4). The causal link between Plaintiffs' alleged harm and the alleged agreement is, thus, not only too attenuated (*AGC* factor 3), but duplicative recovery and complex apportionment of damages are serious risks if Plaintiffs are allowed to proceed (*AGC* factor 5). Plaintiffs lack antitrust standing.

## III. PLAINTIFFS CANNOT SALVAGE THEIR INSUFFICIENTLY PLED ANTITRUST CONSPIRACY CLAIM.

In their Opposition, Plaintiffs improperly add new allegations and ignore fatal flaws in their pleading, highlighting the Complaint's deficiencies and their overreach in relying on a single, undated email communication about soliciting "nurses" on Facebook. That email fails to establish *any* agreement, much less an alleged broad, ten-year "no-poach" conspiracy affecting "all" of Defendants' "Healthcare Workers." Plaintiffs' amendment by brief fails for at least the following reasons.

First, in their Complaint, Plaintiffs make the unsupported, conclusory allegation that Defendants are "dominant" employers of healthcare workers in Central Pennsylvania—a distorted copy-paste job of the relevant markets alleged in the DOJ Complaint for the sale of *inpatient hospital services* to patients and insurers, not labor markets. CAC ¶¶ 28, 38. In their Opposition, Plaintiffs assert, for the first time, "circumstantial evidence" that the Central Pennsylvania "market [for

healthcare labor is] conducive to a successful conspiracy" and "cartelization."[12] But, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. Pepsico*, 836 F.2d 173, 181 (3d Cir. 1988); *Bartello v. City of Sunbury*, No. 4:13-cv-1340, 2014 WL 220789, at *7 (M.D. Pa. Jan. 21, 2014) (same).[13]

Next, Plaintiffs' argument that the combination of their "direct and circumstantial evidence" meets their pleading burden (Opp. at 23-24) is also wrong. Plaintiffs' entire conspiracy claim relies solely on a single, undated email communication about soliciting nurses through Facebook that is not direct evidence of a decade-long "no-poach" conspiracy for all of Defendants' employees. That single email requires numerous inferential steps to support Plaintiffs' broad conclusion. *In re Ins. Brokerage*, 618 F.3d 300, 324 n.23 (holding direct evidence "*is explicit and requires no inferences* to establish the proposition or conclusion

---

[12] Compare the Complaint's market allegations (¶¶ 38-39) with new (and bare) allegations that the healthcare labor market was "conducive to a conspiracy," "a successful no-poach agreement," and "cartelization." Opp. at 4, 5, 21, 23.

[13] Plaintiffs' conclusory statements that the alleged agreement was "monitored and enforced" (CAC ¶¶ 5, 9, 50, 62, 63, 64; Opp. at 2, 6, 21) are merely speculative or the recitation of legal elements of the claim, and not factual support, as *Twombly* requires. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224-25 (3d Cir. 2011) (dismissing as conclusory that defendants "regularly and unlawfully shared highly confidential information … and then reached illegal agreements"); *Great Western Mining & Mineral Co. v. Rothschild LLP*, 615 F. 3d 159, 178 (3d Cir. 2010) (same). Similarly, Plaintiffs misleadingly use "for example" to refer to the single email communication, implying that Plaintiffs have other alleged evidence where they do not. Opp. at 2.

being asserted") (emphasis added).[14] Plaintiffs do not even attempt to connect these dots. Moreover, the DOJ Complaint that Plaintiffs heavily rely on challenged a proposed collaboration between Defendants in a *product* market, not conduct in a *labor* market. DOJ Compl. ¶ 44. Indeed, Plaintiffs fail to acknowledge that the DOJ's Competitive Impact Statement said nothing about a "no-poach" conspiracy; the DOJ was "satisfied" that "the relief" obtained therein had "achieve[d] all or substantially all of the relief" it would have gotten at trial; and permitted the collaboration.[15]

Second, Plaintiffs' new assertions of "circumstantial evidence" are incorrect. "For circumstantial evidence of an agreement,[]a plaintiff must allege *both* parallel conduct *and* something 'more,' which [is] sometimes called a 'plus factor.'" *Brokerage*, 618 F. 3d at 321-23 (citing *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004)). Plaintiffs have pled neither. Rather, Plaintiffs argue that such circumstantial evidence includes, for example, that "the market was conducive

---

[14] Plaintiffs' cases are inapposite. Opp. at 22. In each, plaintiffs proffered numerous types of explicit, direct evidence that, unlike here, required no inferential steps from which to deduce an unlawful agreement. *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99-100 (3d Cir. 2010) (involving at least four distinct types of direct evidence of an agreement, including a co-conspirator's explicit acknowledgement of its existence); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902 (N.D. Cal. 2008) (involving numerous emails and communications showing defendants shared prices); *United States v. Container Corp.*, 393 U.S. 333, 335 (1969) (same).
[15] *United States v. Geisinger Health, et al.*, No. 4:20-cv-01383, ECF 46 at 18.

to a successful conspiracy; . . . among other allegations." Opp. at 20-21. But these allegations do not appear in the Complaint and are unsupported conjecture that *Twombly* and *Iqbal* condemn.[16]

Nor can Plaintiffs meet their burden by relying on inapposite economic and legal theories relevant to oligopolistic markets, which they did not—and cannot—plead here.[17] Plaintiffs' assertions that the market is "conducive to a conspiracy" is misplaced, because there are many competitors for healthcare workers in Central Pennsylvania—a fact Plaintiffs do not contest.[18] Casting aside the deficiencies in Plaintiffs' market definition, Plaintiffs' six-county map includes Berwick Hospital Center and two University of Pittsburgh Medical Center locations (CAC ¶ 2), a "competitor of significance" nearly twice the size of Evangelical for almost the entire relevant period before closing a third hospital in Sunbury on March 31, 2020

---

[16] *Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[17] *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 772 (D. Minn. 2020) is inapposite. Plaintiffs there provided direct evidence of parallel conduct to decrease pork supply, and various producers cut their supply unexplainably after years of industry growth. *Id.* at 769-70. Plaintiffs here have not alleged any parallel conduct.

[18] *See Resco Products, Inc. v. Bosai Minerals Group Co., Ltd*, 158 F. Supp. 3d 406, 424-25 (W.D. Pa. 2016) (describing "an oligopoly consisting of no more than three companies at one time …") (citation omitted); *cf. In re Liquid Aluminum Sulfate Antitrust Litig.,* 2017 WL 3131977, at *21 (D. N.J. July 20, 2017) (stating "market is susceptible to collusion [because] it is highly concentrated and has experienced heavy consolidation . . . ."); *In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 576 (M.D. Pa. 2009) ("[M]arket [] ripe for collusion due to oligarchic sellers, diffuse buyers, prohibitive entry barriers, and standardized products…high fixed costs, or that competitors possess excess capacity").

(DOJ Compl. ¶¶ 52-53). Plaintiffs disregard this Court's ability to judicially notice information "publicly available on government websites," *Vanderklok v. United States,* 868 F.3d 189, 205, n.16. (3d Cir. 2017)—*i.e.*, more than *fifty* other "healthcare facilities" within 17 miles of Geisinger Medical Center competing for healthcare labor. Plaintiffs simply ignore these competitors in their improperly defined relevant market.

## IV. PLAINTIFFS HAVE NOT MADE A PRIMA FACIE SHOWING THAT THEIR OVERBROAD CLASS ALLEGATIONS CAN MEET RULE 23.

Plaintiffs argue that their facially overbroad and legally deficient class allegations should not be stricken at the pleading stage, because it is "rarely" done and Defendants cannot show that class certification is a "clear impossibility" "[w]ithout an evidentiary record." Opp. at 25. They are wrong on several grounds.

First, on a motion to strike class allegations, "plaintiffs[, not Defendants,] have the burden to allege sufficient facts in the consolidated class action complaint to make a prima facie showing that the requirements of Rule 23 are satisfied or that at least discovery is likely to produce substantiation of the class allegations." *Railway,* 395 F. Supp. 3d at 498.[19] While courts typically "grant [pre-discovery] motions to strike under Rule 23(d)(1)(D) [] only in 'the rare few [cases] where the

---

[19] Plaintiffs confuse the motion to strike standard with the standard for opposing a class certification motion. *See e.g.*, Opp. at 32. Motions to strike do not require "a rigorous analysis" akin to class certification if the *complaint itself* shows Rule 23 requirements cannot be met. *Railway,* 395 F. Supp. 3d at 497 (citations omitted).

complaint itself demonstrates that the [Rule 23] requirements [ . . . ] cannot be met," this is one of those "rare" cases where the deficiency is apparent from the face of the complaint. *Id.* (citations omitted); *see also Semenko v. Wendy's Int'l, Inc.*, No. 2:12-cv-0836*, 2013 WL 1568407, at *3 (W.D. Pa. Apr. 12, 2013) (same, granting strike motion). Indeed, Plaintiffs' class allegations are remarkably similar to *Railway*'s, where Judge Conti struck overbroad class allegations for lacking predominance at the pleading stage. *Railway*, 395 F. Supp 3d at 506.

In antitrust cases, predominance requires a showing that "the issue of impact is [] susceptible to class-wide proof." *Id.* at 505. In this case, Plaintiffs must be able to allege "that the compensation structures of the defendants in the pertinent industry were so rigid that the compensations of *all* class members were tethered together," *id.* at 514 (original emphasis), such that a change in the compensation of *any one* class member affected the compensation of *all other* class members, *id.* at 508. To meet this standard, Plaintiffs must provide specific factual allegations, that changing the wages of say a nursing assistant, whose job requires a high-school diploma or equivalent, would impact the wages of a highly-skilled, sought-after neurosurgeon with years of advanced education, training, and experience. Plaintiffs make no such allegations and fail to mention this standard altogether, instead incorrectly claiming that "a showing of common impact is not necessary to establish predominance," Opp. at 27 n.16. *But see Railway,* 395 F. Supp. 3d at 505 ("[T]hree relevant elements

of an antitrust claim [] must be capable of common proof [to certify a class] under Rule 23(b)(3)[:] (1) violation of antitrust laws, (2) *antitrust impact*, and (3) measurable damages") (emphasis added).

Contrast Plaintiffs' abject lack of factual basis here with the complaint in *Nitsch* that they rely on extensively. In *Nitsch*, plaintiffs alleged numerous emails between senior executives concluding that "Defendants maintained certain compensation differentials between different positions within the hierarchy of the organization." *Nitsch v. Dreamworks Animation SKG Inc. et al.,* 5:14-cv-04062, ECF 1 ¶ 80. *See also Seaman v. Duke Univ.,* 1:15-cv-00462, ECF 1 ¶¶ 55-59 (containing high-level emails stating that a "guideline" prevented "lateral moves of faculty between Duke and UNC," because UNC recently "had to generate a large retention package" in response to a recruitment by Duke). Nor do Plaintiffs present any factual support here that "defendant[s] [] emphasized internal or external equ[]ity," *Railway,* 395 F. Supp. 3d at 506, or explain why the conclusory allegations regarding internal equity copied nearly verbatim from the *Railway* complaint, which Judge Conti rejected, apply here. *See* Mot. at 25 n.9.

Plaintiffs also cite *Nitsch*, 315 F.R.D. 270 (N.D. Cal. 2016), *High-Tech*, 985 F. Supp. 2d 1103 (N.D. Cal. 2013), and *Duke,* 2018 WL 671239 (M.D.N.C. Feb. 1, 2018), to evade the antitrust impact requirement of predominance. Opp. at 31. But these are inapposite, as they were decided at class certification, after discovery.

Nevertheless, these cases confirm that Plaintiffs must be able to plausibly allege that the compensation of a nursing assistant or nurse is tightly "tethered" to the compensation for all other "Healthcare Workers," at a health system of over 26,500 employees. *Railway,* 395 F. Supp. 3d at 514. Courts rarely, if ever, credit such theories and Plaintiffs' cases result in much narrower classes. Indeed, Plaintiffs neglect that the proposed class of "all employees" in *High-Tech* was cut down to a class of *only* a narrow set of "technical employees whose work contributed to Defendants' core business functions, whom the Defendants heavily recruited and jealously guarded." 985 F. Supp. 2d at 1177. Similarly, in *Duke*, the court certified a class of *only* medical faculty, rejecting a class of non-faculty "skilled medical employee[s]," because plaintiffs provided no evidence that compensation structures for faculty were tightly linked to those of non-faculty. 2018 WL 671239, at *2.[20] Here, Plaintiffs allege no factual support, only the same conclusory allegations rejected in *Railway* at the pleading stage about wage structure, and fail to make a prima facie case they can meet Rule 23 predominance.

Second, the Third Circuit's heightened ascertainability standard requires a showing that: (1) "the class [is] defined with reference to objective criteria," and (2)

---

[20] Contrary to Plaintiffs' claim that *Duke* only certified the faculty class because of potential concerns of "manageability" and "confusion" (Opp. at 31 n.20), the court in fact found that "*including non-faculty in the class would defeat predominance and superiority.*" *Duke*, 2018 WL 671239, at *9 (emphasis added).

there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F. 3d 349, 355 (3d Cir. 2013).[21]  The crux of ascertainability is that knowing the requisite information should immediately clarify whether an individual belongs in the class.  *Marcus v. BMW of North America, LLC,* 687 F. 3d 583, 593 (3d Cir. 2012).  This is not the case here.

Plaintiffs claim the proposed class includes "physicians, nurses, psychologists, and therapists," and other healthcare workers with "presently unknown[] job titles." Opp. at 33.  These are not job titles.[22]  Plaintiffs' own class definition indicates that once job titles for Plaintiffs and other class members are known, there will be incredible diversity in job titles, requirements, salaries, benefits, etc., rendering their broad class definition improper.  Hospitals are in the business of delivering healthcare and most, if not all, hospital jobs involve "providing healthcare to patients." Opp. at 33.  But the Third Circuit requires Plaintiffs to identify objective criteria to determine who is in the class.  They have not done so.

Finally, Plaintiffs' failure to advance a defensible class definition also

---

[21] The court should disregard Plaintiffs' non-circuit cases regarding ascertainability (Opp. at 32-34), because they do not apply the Third Circuit's special ascertainability standard. *See, e.g., Carrera v. Bayer Corp.,* 727 F. 3d 300, 305 (3d Cir. 2013).

[22] Plaintiffs' proposed class somehow ascertains that the alleged "no-poach" agreement covered physicians, psychologists, and therapists, even though none of those jobs are referenced in the email in paragraph 42 of the DOJ Complaint on which Plaintiffs' complaint solely rests. *Compare* CAC ¶ 1 with DOJ Compl. ¶ 42.

illustrates why they do not meet the typicality requirements. Plaintiffs' claim that there is typicality because the class claims arise from the same course of conduct is meritless and unsupported by their cited cases. Opp. at 34-35 (citing cases). Here, Plaintiff Sauer's factual circumstances are different from Plaintiffs Leib, Brokenshire, and Weigley, and also the rest of the class. *Marcus* held that, for typicality, "the claims of the class representative must be generally the same as those of the class in terms of…the *factual circumstances* underlying that theory." 687 F. 3d at 598 (emphasis added). Here, the factual circumstances of any of the proposed class representatives are markedly different because of the wide disparity of positions that fit within "Healthcare Workers" at Defendants' facilities and the only fact alleged relates to recruiting nurses. Indeed, "highly individualized" inquiries would be required to figure out which class members are "healthcare workers," because Plaintiffs provide no guidance, leaving this Court to individually assess which of the numerous job titles sufficiently interacts with patients—if that is the criterion—to qualify.[23] Plaintiffs, again, have not satisfied their pleading burden.

## V. CONCLUSION

Accordingly, the Court should grant Defendants' motion.

---

[23] *Semenko,* 2013 WL 1568407, at *9 (holding that "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named Plaintiff, so go the claims of the class"; finding each claimant's "facts and evidence" are "unique," leading "highly individualized inquir[ies]").

Dated: July 19, 2021                    Respectfully submitted,


By: */s/Norman Armstrong, Jr.*          By: */s/Stefan M. Meisner*
Norman Armstrong, Jr. (*pro hac vice*)   Stefan M. Meisner (*pro hac vice*)
Shannon M. Kasley (*pro hac vice*)       CROWELL & MORING LLP
KING & SPALDING LLP                      1001 Pennsylvania Avenue NW
1700 Pennsylvania Avenue                 Washington, DC 20004
Washington, DC 20006                     Phone: (202) 624-2500
Phone: (202) 626-8979                    smeisner@crowell.com
narmstrong@kslaw.com
skasley@kslaw.com                        Chahira Solh (*pro hac vice*)
                                         CROWELL & MORING LLP
Carol A. Steinour Young                  3 Park Plaza, Ste. 20th Floor
Devin J. Chwastyk                        Irvine, CA 92614
MCNEES WALLACE & NURICK LLC              Phone: (949) 798-1367
100 Pine Street, P.O. Box 1166           csolh@crowell.com
Harrisburg, PA 17108-1166
Phone: (717) 232-8000                    Rosa M. Morales (*pro hac vice*)
csteinour@mcneeslaw.com                  CROWELL & MORING LLP
dchwastyk@mcneeslaw.com                  590 Madison Avenue, 20th Floor
                                         New York, NY 10022
*Attorneys for Defendant Evangelical*    Phone: (212) 895-4261
*Community Hospital*                      rmorales@crowell.com

                                         Daniel T. Brier
                                         Donna A. Walsh
                                         Richard L. Armezzani
                                         MYERS BRIER & KELLY LLP
                                         425 Spruce Street, Suite 200
                                         Scranton, PA 18503
                                         Phone: (570) 342-6100
                                         dbrier@mbklaw.com
                                         dwalsh@mbklaw.com
                                         rarmezzani@mbklaw.com

                                         *Attorneys for Defendant Geisinger*
                                         *Health*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 19th day of July 2021, a true and correct copy of the **REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND, ALTERNATIVELY, TO STRIKE CLASS ACTION ALLEGATIONS** was filed with the Court's Case Management/Electronic Filing System and served upon all counsel known to be representing the Plaintiffs, including:

Eric L. Cramer
Shanon Jude Carson
Mark R. Suter
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-4604
Fax: (215) 875-5707
ecramer@bm.net
scarson@bm.net
msuter@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Phone: (202) 559-9745
Fax: (215) 875-5707
dwalker@bm.net

Adam J. Zapala
Elizabeth T. Castillo
James G.B. Dallal
Tamarah P. Prevost
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000

Ira Neil Richards
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Phone: (215) 751-2503
irichards@schnader.com

Roberta D. Liebenberg
Gerard A. Dever
Mary L. Russell
FINE, KAPLAN, AND BLACK, R.P.C.
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Phone: (215) 567-6565
Fax: (215) 568-5872
rliebenberg@finekaplan.com
gdever@finekaplan.com
mrussell@finekaplan.com

*Attorneys for Plaintiff Jessica Sauer and the Proposed Class*

Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com
tprevost@cpmlegal.com

Alexander E. Barnett
COTCHETT, PITRE & McCARTHY,
LLP
40 Worth Street, 10th Floor
New York, NY 10013
Phone: (212) 201-6820
abarnett@cpmlegal.com

*Attorneys for Plaintiffs Nichole Leib,
Kevin Brokenshire, and Diane
Weigley and the Proposed Class*

*/s./ Chahira Solh*⎽