# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE GEISINGER HEALTH AND EVANGELICAL COMMUNITY HOSPITAL HEALTHCARE WORKERS ANTITRUST LITIGATION | Case No. 4:21-cv-00196-MWB |

## STIPULATION AND ORDER CONCERNING THE DISCOVERY OF HARD COPY DOCUMENTS AND ELECTRONICALLY-STORED INFORMATION

## I.   PURPOSE

This Stipulation and Order shall govern the discovery of electronically stored information ("ESI") and hard copy documents (together, "Documents") in the above-captioned case and all actions that are later coordinated or consolidated with this case (collectively, the "Litigation").

## II.   GENERAL PRINCIPLES

A.   The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the Litigation consistent with this Court's Local Rules. *See, e.g.,* Local Rule 26.1. The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan.

B.   Unless expressly stated, nothing in this Stipulation and Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted consistent with applicable rules.

## III.   PRODUCTION PROTOCOL

### A.   Custodians, Repositories, and Search

The Parties will meet and confer to discuss custodians, non-custodial sources, ESI methodology, and search methodology. At a time agreed to by the parties, each party shall disclose:

1

1. <u>Custodians</u>. The custodians that it reasonably believes are most likely to have discoverable Documents in their possession, custody, or control. The custodians shall be identified by name, connection to the litigation, job title or description, and the type of the information under his/her control.

2. <u>Non-Custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, that the party reasonably believes are likely to contain discoverable, Documents.

3. <u>Third Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable, Documents and for each such source, indicate the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Search Methodologies.</u> The producing party shall conduct a reasonable and good faith search for documents and ESI that are subject to production under the Federal Rules of Civil Procedure. The parties reserve all rights they may have under the Federal Rules to employ, or to object to the use of, technology assisted review and other analytic techniques in collecting, reviewing, and/or producing responsive documents. The requesting party may timely suggest reasonable keyword search terms for consideration by the producing party. To the extent the producing party identifies any search terms it deems objectionable, the

producing party shall propose alternative terms and the parties shall meet and confer promptly to discuss alternatives.

In addition to ESI addressed by this provision, the producing party shall perform a reasonable and diligent search to locate relevant non-ESI Documents (*i.e.*, paper documents, devices, prototypes, etc.) for the identified custodians and other relevant and reasonably accessible locations not attributed to any specific custodian that the party identifies following a reasonable and diligent investigation.

It is agreed that hyperlinked ESI referenced in emails or other platforms are not considered to be attachments or otherwise part of a document family, and that parties are not required to collect any such hyperlinked documents as attachments to, or family members of, referencing emails and other ESI. The requesting party may make particularized requests for any hyperlinked referenced documents that such party reasonably cannot locate in a production, which request the producing party shall not unreasonably refuse.

### B.    Additional Categories of Documents

To the extent that a Requesting Party believes that there are certain discrete categories of relevant Documents that can be easily identified without the use of a disclosed methodology, or that fall outside the capabilities of the system or process used, the parties agree to meet and confer regarding the production of such Documents. If the parties are unable to reach agreement on such discrete categories

of Documents after such meet and confer, the parties may bring any such dispute to the Court's attention.

### C.      Preservation and Time Period

A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control, but the parties agree that no party shall be obligated to preserve information that was created after December 31, 2021. With respect to ESI, the following provisions apply:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody, or control.

2.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

b.      On-line access data such as temporary internet files, history, cache and cookies.

c.     Data in metadata fields that are frequently updated automatically, such as last-opened dates (*see also* Section III(D)).

d.     Back-up data that are substantially duplicative of data that are more accessible elsewhere.

3.     The parties may confer on any other categories of ESI that may not need to be preserved, in light of the General Principles set forth above, and determine whether the parties can agree that such categories can be added to the non-preservation list in Section III(C)(2) above.

**D.     Production Format**

The parties agree that reasonably attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost-effective conduct of discovery. Appendices A and B set forth technical specifications that the parties propose to govern the form of production of ESI and hard copy Documents in this Litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Federal Rule of Civil Procedure 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). A party may, if confronted with a circumstance where producing materials in accordance with the forms of production allowed by this protocol would be unduly burdensome or costly,

request relief from the requirements of this protocol on the basis of undue burden, in which case the parties shall meet and confer regarding reasonable, alternative forms of production. Nothing in this protocol prohibits a party from seeking relief from this protocol pursuant to applicable rules.

The parties agree to produce Documents in TIFF with extracted text, native, and/or paper or a combination thereof as set forth in Appendix A. For good cause, a party may request the production of particular Documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer, and the producing party shall not unreasonably deny such particularized requests. The parties agree not to degrade the searchability of Documents as part of the Document production process unless otherwise permitted hereunder (*e.g.*, Section III.E regarding email threading). The parties also recognize that in some instances where Documents have been produced in a form other than native, subsequent production of the same Documents in native form may be warranted for certain purposes. The producing party shall produce Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access files, and video or audio files in Native Format, if available. Each electronic file produced in Native Format shall be assigned a unique Bates Number, and the database record for that file shall include a single page TIFF image branded with this unique Bates Number, any confidentiality designation, and a standardized

phrase indicating that the Document was produced in native format (*e.g.,* "PRODUCED IN NATIVE FORMAT").

Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.

If a requesting party or receiving party receives a redacted TIFF image of a Document required herein to be produced in Native Format that the requesting party or receiving party does not believe is formatted so as to be legible (*e.g.*, column cells display "#########" instead of the value) or if a requesting party or receiving party wants additional information from an Excel-type spreadsheet (*e.g.*, formulas), the requesting party or receiving party may make reasonable, particularized requests from the producing party for a more legible TIFF image, redacted native item, or other additional information (such as, *e.g.,* a formula). Upon receiving such a request, the producing party shall either produce a legible TIFF image, redacted native item, other information (such as, *e.g.,* a formula) or disclose to the requesting party or receiving party why it is unreasonable or unnecessary to do so. If the producing party encounters Microsoft Access files or audio or video files or other file types requiring native production that contain privileged content, the requesting party, receiving party, and producing party, as

appropriate, shall attempt to agree upon a suitable manner of producing the non-privileged, responsive content contained in these files.

### E. De-Duplication

The parties shall employ industry standard (MD5 or SHA-1 algorithms, or a reasonably equivalent alternative) techniques for deduplication of ESI, including deduplication of ESI globally/vertically and horizontally (*i.e.*, within custodians and across all custodians) on the family level, and will produce only a single copy of identical ESI (emails and attachments or stand alone documents). The parties may only de-duplicate exact duplicates, subject to the below provisions regarding suppression of inclusive message threads. This will result in the producing party needing to produce only a single copy of responsive duplicate ESI, provided that all other custodians of the duplicate ESI are listed in the "Custodian Other" metadata field (*see* Appendix B). In the event of a rolling production of Documents or ESI items, as is contemplated by the parties, the producing party shall provide an overlay load file with updated All Custodian and Custodian Other Directory Metadata fields along with each production. The parties shall use their best efforts to de-duplicate stand-alone Documents against stand-alone Documents and deduplicate top-level email Documents against top-level email Documents. Deduplication shall not break apart families. However, an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of

an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. An email that includes an attachment or content in the BCC or other blind copy field shall not be suppressed from production as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. Hard copy Documents shall not be eliminated as duplicates.

Any Document containing unique handwritten notes, highlighting, alterations, or markings shall not be considered a duplicate of any other version and if responsive must be produced as an original Document.

### F. Unitization

The producing party shall take reasonable steps to physically and logically unitize hard copy Documents, and to produce all hard copy Documents in an electronic format that accurately corresponds to and does not misrepresent the manner in which they were kept in the ordinary course of business. For example, Documents stored in a binder, folder, or similar container (each, a "container") shall be produced in the same order as they appear in the container. Similarly, pages that are stapled or clipped shall be produced as a single Document and not multiple one-page Documents.

### G. Exception Files

The producing party shall make reasonable efforts to address Documents that present processing or production problems (including encrypted, unsupported, and/or password protected files) ("Exception Files"). Upon reasonable request, the producing party will undertake reasonable efforts to locate passwords for specifically identified Documents. Exception Files need not be produced but shall be replaced instead with a slipsheet identifying the withheld Exception File, with corresponding metadata as appropriate.

### H. Embedded Documents and Non-Relevant Spreadsheets

The Parties are not required to extract as separate files, review, or produce embedded files (*e.g.*, inline/.vcf files embedded in emails, Microsoft Office embedded images, .xlsx files embedded in ESI where the contents are contained/visible within embedding document), including image files with corporate logos and the like. The Parties will accommodate reasonable and proportional requests made in good faith for the production of embedded objects on a case by case basis.

### I.   Production of Databases and Other Structured Data.

1.    Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

2.     The Parties may meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties shall meet and confer and if agreeable to the requesting party, the producing party will produce the information in such a report form.

**J.     Privilege**

1.     The parties may withhold documents subject to a valid assertion of privilege from production, in whole or in part, by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity. Within a reasonable time after the conclusion of document production, the producing party will produce a privilege log in computer searchable form setting out information sufficient to satisfy the requirements of Federal Rule of Civil Procedure 26(b)(5) and, for conventional privilege logs, identifying, at a minimum:

    a.  Bates number or other identifier;

    b.  Name(s) of the Document author(s);

    c.  Name(s) of the Document recipient(s);

    d.  Name(s) of the person(s) to whom a copy was sent;

    e.  The date the Document was created, sent, and received;

    f.  The type or format of the Document (e.g. email, spreadsheet, PowerPoint, etc.);

    g.  The Document custodian(s);

    h.  The Document title or (for emails) subject;

    i.  The basis for the assertion of privilege.

The parties reserve all rights they may otherwise have to utilize, or object to, privilege logs prepared in a manner that does not conform to the standard for conventional privilege logs described above.

2.      On the face of the privilege log or in a list or other appropriate format served concurrently with the privilege log, the party producing the privilege log shall provide information sufficient for the recipient party to ascertain which of the individuals listed on the log was as of the time of the Document's creation, sending, or receipt working in his or her capacity as an attorney.

3.      The inadvertent or unintentional failure to log privileged documents or metadata shall not constitute a waiver or impairment of any claim of privilege or exemption (including under the attorney-client privilege or work product doctrine) concerning any such materials or the subject matter thereof. Upon discovering the omission, the producing party shall send to the requesting party an addendum to the appropriate privilege log providing the required privilege log entries for the Document(s).

4.     Documents presumptively not to be logged on a privilege log include:

a.  Communications exclusively between a party or its representative(s) and its internal or outside counsel of record in this litigation that are dated after the commencement of this Litigation;

b.  Work product created by internal or outside counsel in this litigation or at the direction of such counsel after commencement of this Litigation;

c.  Inclusive email threads that are suppressed pursuant to the provisions of this Stipulation and Order.

d.  Redacted Documents where the reason for the redaction is provided in the text of the redaction box or metadata (*e.g.*, Attorney-Client Privilege, Work Product, Privacy);

e.  Privileged Documents created after the Department of Justice issued Civil Investigative Demands to Defendants on April 1, 2019, which led to the filing of the agency's civil complaint in *United States v. Geisinger Health and Evangelical Community Hospital*, 4:20-cv-01383-MWB (M.D. Pa.), on August 5, 2020.

13

Should a Receiving Party reasonably be unable to ascertain whether or not a Document contained on the log is privileged, or have good cause to believe a particular entry on the log is responsive and does not reflect privileged information, the receiving party may request a meet and confer, and the requesting party, receiving party, and/or producing party, as appropriate, shall meet and confer about such deficiencies. The Producing Party shall provide additional information necessary for the Receiving Party to determine if the Document has been properly withheld or redacted. If the Requesting Party, Receiving Party, and/or Producing Party, as appropriate, cannot agree on the provision of such additional information, the Receiving Party will promptly move the Court or an appointed discovery master for resolution.

5.      If any member of a Document Family is responsive, the producing party shall produce all family members and/or portions thereof that are not independently protected as privileged, work-product or other protections, unless withholding is otherwise expressly permitted under the provisions of this Stipulation and Order.

6.      The producing party may use redactions to protect attorney-client or work product privileges and non-public personal information and

protected health information[1] of customers or patients or potential customers or patients. Any redactions, except those of NPPI and PHI, shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the Document contains redactions and the basis for redaction (*e.g.*, "AC Privilege"). Each redaction on a Document shall be endorsed with the word "Redacted" or "Redaction," with that word being included in the extracted text provided for the Document. Parties may also redact information that is personally sensitive, or implicates public safety concerns, so long as that information is not responsive to any agreed requests for production. The producing party shall produce a field in the DAT file denoting which Documents contain redactions.

7.     Where a responsive Document contains both redacted and non-redacted content, the producing party shall take reasonable steps produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions. Email header information (*e.g.*, date,

---

[1] As used herein, "non-public personal information" ("NPPI") includes individuals' names, addresses, birthdates, Social Security numbers, taxpayer identification numbers, driver's license numbers, incomes, credit card numbers, financial account numbers, banking, and any other financial information; and "protected health information" ("PHI") includes any individually identifiable information relating to the past, present, or future health status of an individual as defined in the Privacy Rule implementing the requirement of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

subject line, etc.) should not be redacted unless it is independently privileged. If the Documents to be redacted and partially withheld from production are Microsoft Excel-type spreadsheets or other ESI that would otherwise be produced in native format in accordance with this ESI Protocol, but must be produced in TIFF format in order to effectuate the redactions, the entire Document shall be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user. For Microsoft Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. This provision does not prevent the use of native redaction techniques. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########." If the receiving party finds that the TIFF images of the Microsoft Excel-type file is illegible or formatted in such a way that the Document does not resemble how it was kept in the usual course of business or requires formulas to be shown, the parties shall meet and confer.

### K. Anti-Waiver Provision

1.      The Parties incorporate the anti-waiver provisions (Paragraph 21) of the Stipulated Protective Order dated February 8, 2022 (Dkt. 81) (the "Confidentiality Order") in this matter.

2.      This Stipulation and Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502 and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

3.      Nothing contained herein or in the Confidentiality Order is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## IV.    FINAL DISPOSITION OF ESI

Within thirty (60) days of settlement or final adjudication, including the expiration or exhaustion of all rights to appeal or petitions for extraordinary writs, each party or non-party to whom any materials were produced shall, without further request or direction from the producing party, promptly take reasonable steps to destroy all documents, items or data received including, but not limited to, copies or summaries thereof, in the possession or control of any expert or

employee. Any undestroyed materials shall remain subject to the Protective Order in this matter. The requesting party shall upon request of the producing party provide written certification of destruction to the producing party.

## V.   MODIFICATIONS

Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate under Rules 1 and 26(b)(2)(C) of the Federal Rules of Civil Procedure, including to facilitate the timely and economical production of Documents.

Dated: April 22, 2022                    /s/ Adam J. Zapala

Adam J. Zapala (*Pro Hac Vice*)
Elizabeth T. Castillo (*Pro Hac Vice*)
James G. Dallal (*Pro Hac Vice*)
**COTCHETT, PITRE & McCARTHY,
LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett (*Pro Hac Vice*)
**COTCHETT, PITRE & McCARTHY,
LLP**
40 Worth Street, 10th Floor
New York, NY 10013
Phone: (212) 201-6820
abarnett@cpmlegal.com

Eric L. Cramer (PA Bar No. 69289) (*Pro
Hac Vice*)
Shanon Jude Carson (PA Bar No. 85957)
Mark R. Suter (PA Bar No. 322922) (*Pro
Hac Vice*)
Reginald L. Streater (PA Bar No. 326878)
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-4604
Fax: (215) 875-5707
ecramer@bm.net
scarson@bm.net
msuter@bm.net
rstreater@bm.net

Daniel J. Walker (*Pro Hac Vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Phone: (202) 559-9745
Fax: (215) 875-5707
dwalker@bm.net

*Interim Co-Lead Counsel for Plaintiffs and
the Proposed Class*

Ira Neil Richards (PA Bar No. 50879)
**SCHNADER HARRISON SEGAL &
LEWIS LLP**
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
Phone: (215) 751-2503
irichards@schnader.com

Roberta D. Liebenberg (PA Bar No. 31738)
(*Pro Hac Vice*)
Gerard A. Dever (PA Bar No. 85291) (*Pro
Hac Vice*)
Mary L. Russell (PA Bar No. 58581) (*Pro
Hac Vice*)
**FINE, KAPLAN, AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Phone: (215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com
mrussell@finekaplan.com

*Attorneys for Plaintiff Jessica Sauer and the
Proposed Class*

Dated: April 22, 2022          */s/Chahira Solh*

Chahira Solh (*Pro Hac Vice*)
CROWELL & MORING LLP
3 Park Plaza, Ste. 20th Floor
Irvine, CA 92614-8505
Phone: (949) 798-1367
csolh@crowell.com

Stefan M. Meisner (*Pro Hac Vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 624-2500
smeisner@crowell.com

Rosa M. Morales (*Pro Hac Vice*)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Phone: (212) 895-4261
rmorales@crowell.com

Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani
MYERS BRIER & KELLY LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
Phone: (570) 342-6100
dbrier@mbklaw.com
dwalsh@mbklaw.com
rarmezzani@mbklaw.com

*Attorneys for Defendant Geisinger Health*

Dated: April 22, 2022         _/s/Norman Armstrong, Jr._

Norman Armstrong, Jr.  (*Pro Hac Vice*)
Shannon Kasley (*Pro Hac Vice*)
**KING & SPALDING**
1700 Pennsylvania Avenue
Washington, DC  20006
Telephone:  (202) 626-8979
narmstrong@kslaw.com
skasley@kslaw.com

Stephanie Resnick
Theodore H. Jobes
John Fuller
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone:  (215) 299-2000
sresnick@foxrothschild.com
tjobes@foxrothschild.com
jfuller@foxrothschild.com

*Attorneys for Defendant Evangelical Community Hospital*

APPROVED AND SO ORDERED THIS  26th  DAY OF    April 2022.


BY THE COURT:




*s/ Matthew W. Brann*
MATTHEW W. BRANN
Chief United States District Judge

## Appendix A:  Technical Specifications for Production

The following specifications should be used for the production of ESI and hard copy documents.

- *TIFFs.*  Images should be produced as single page, TIFF group IV format at 300 dpi resolution and 8½ x 11-inch page size, except for documents requiring different resolution or page size.  Original document orientation as displayed in the native file should be maintained in the TIFF image (*i.e.*, portrait to portrait and landscape to landscape).

  Conversion of Excel documents (redacted Excels to be produced in TIFF): When Excel files are converted to TIFFs, any hidden Rows, Cells or Columns will be unhidden in the version that will be converted, printing will be done over then down, and print settings will be set to fit to page to ensure no text is cut off.  Autodates in headers or footers should reflect the date last modified.

  Conversion of PowerPoint documents:  When PowerPoint documents are converted to TIFFs, the version that will be converted will show the speaker notes, to the extent that they exist.

  Conversion of Word documents:  When Word documents are converted to TIFFs, the version that will be converted is as it was last saved by the custodian.  This means that if it was last saved with track changes turned on that the images and metadata will reflect the track changes.

- *Color.* ESI that, in native format, is primarily in color will be provided in color in JPG format.  Emails, or other documents, were the majority of the content is not in color will be provided as black and white TIFF images, subject to native file production or redaction requirements outline in this protocol.

- *Unique IDs.*  Each image file should have a unique file name that will be the Bates number of that page (e.g. ABC0000001.TIF).  The Bates number must appear on the face of the image in the lower right corner.  The Bates number should contain only alphanumeric characters with a constant lengthy of numeric digits and be sequential within a given document.  The Bates number should not contain any blank space and should be zero padded.

- *Gaps.*  Productions should contain sequential bates numbers with no gaps.  A unique production volume number will be used for each production.  If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

- *Confidentiality Designations*.  If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to the document. The confidentiality designation also should be reflected in the "Confidentiality" metadata field specified in Appendix B.

- *OCR/Extracted Text Files*.  Document-level text files should be provided in addition to the TIFFs.  The text of native file should be extracted directly

from the native file.  Each text file should be named using its corresponding image file (e.g. ABC0000001.TXT).

Documents for which text cannot be extracted will be produced with OCR.  Document-level OCR text files should be provided.  Each file will be named using the Bates number of the first page of the document (e.g., a four-page document that starts with ABC0000001 will bear the name ABC0000001.TXT).

If foreign language/Unicode text exists, TEXT file shall be in appropriate UTF-8 or UTF-16 format.

- *Redactions.*  With respect to documents containing redacted text, no text will be provided for the redacted portion.  OCR will be provided for the unredacted portion of the documents.

- *Data Load Files/Cross-Reference Files.*

  Documents should be provided with (1) a Concordance delimited file and (2) an Opticon delimited file.

  Example of Opticon Delimited File:

  ABC0000001,ABC001,D:\IMAGES\001\ABC0000001.TIF,Y,,,3

  ABC0000002,ABC001,D:\IMAGES\001\ABC0000002.TIF,,,,,

  ABC0000003,ABC001,D:\IMAGES\001\ABC0000003.TIF,,,,,

  ABC0000004,ABC001,D:\IMAGES\001\ABC0000004.TIF,Y,,,2

  ABC0000005,ABC001,D:\IMAGES\001\ABC0000005.TIF,,,,,

  Example of Concordance Delimited File :

  þBegDocþþEndDocþþAttachRangeþþCustodianþ

  The objective coding and/or electronic file metadata should be provided in the following format:

  (a)   Fields should be delimited by the default Concordance field delimiter for ANSI character 20 ().

  (b)   String values within the fields file should be enclosed with a text delimiter (þ).

  (c)   The first line should contain objective coding and or electronic file metadata headers and below the first line there should be exactly one line for each document.

  (d)   Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row.

  (e)   Multi-values should be separated by a semicolon (;).

- *Foreign Language Text.*  The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process, and produce the text of any document—including all TIFF conversion and OCR processes, and the extraction of text from native files—preserves all foreign language text, punctuation, and other characteristics as they exist in the source native file.

- *Metadata Fields and Processing.*  Metadata pertaining to time/date will be maintained in *Greenwich Mean Time (GMT).*

  All ESI should be produced with a delimited, database load file that contains all metadata.  Documents shall be produced with all of the fields set forth in Appendix B to the extent that such fields exist and can be extracted from the native file or created using an automated process

  ESI shall be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

- *Native Format.*  The parties have agreed that the following documents will be produced in native format:  Excel files, Access files, Microsoft Project files.  The parties reserve their rights to seek additional electronic documents in their native format.

  Native Files will be produced with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation, and the name of the native file. Native Filetypes should be produced in native format except where the redaction of information withheld on the basis of privilege or another valid basis renders production in native format infeasible.

- *Databases.*  The parties agree to meet and confer regarding the production of enterprise database-application files (e.g., SQL and SAP) to determine the most reasonable form of production based on the specific circumstances. In addition, the production of transactional data shall be in the form agreed to during the meet and confer process and shall not be subject to this Stipulation and Order.

- *Custodial Cellphone & Personal Communications Data.*  For custodians agreed on by the parties or ordered by the Court, a producing party will take reasonable steps to identify whether any responsive communications are located on any cellphones in the possession, custody, or control of the producing party. A producing party shall take reasonable steps to evaluate and consider as a potential source of data subject to discovery any such custodians' reasonably accessible sources of data/applications on a cellphone in the possession, custody, or control of the producing party, if those data sources/applications are used for relevant work purposes, including without limitation call and voicemail logs, text messages, and social media.

- *Social Media Data.* If a custodian confirms that he or she (1) used social media for business purposes and (2) used that social media to communicate with an employee of another defendant or otherwise relevant to the Litigation and included within a Request for Production, subject to

objections to that Request, then the requested communication(s) must be considered for production in response to such Request for Production if reasonably accessible and in the producing party's possession, custody, or control. The parties shall meet and confer to the extent there are any issues with respect to the format of such social media data.

- *Non-Convertible Files.*  Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format.  Some examples of file types that may not convert include file types with the following extensions:  *.ai *.aif *.bin *.cab *.chi *.chm *.com *.dll *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opt *.pdb *.pch *.psd *.psp *.ram *.res *.rm *.rmi *.sys *.swf *.snd *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd.  Other files may not be able to be converted to TIFF due to password protection or corruption (for example).

  Responsive, non-convertible files will be produced natively and with a placeholder TIFF image.  Each TIFF placeholder will contain the endorsed bates number, endorsed confidentiality designation and the name of the non-convertible file, including the file extension.

  Nothing in the non-convertible file section is meant to include productions of data produced from databases.

- *Parent-Child Relationships*. The parties shall take reasonable steps to preserve parent-child relationships (the association between an attachment and its parent document).

- *Unitizing of Documents*.  When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

- *Objective Coding Fields.*  The following objective coding fields should be provided to the extent determinable:  (i) Beginning Bates Number; (ii) Ending Bates Number; (iii) Custodian.

- *Production Media.*  Documents will be produced on CD-ROM, DVD disks, USB drives, or portable hard drives, or via secured electronic data transfer. To the extent that electronic data transfer would be unreasonable, any ESI productions of greater than five (5) gigabytes in total aggregated file size shall be ineligible for delivery via secured electronic data transfer, and shall instead be produced on physical media (*e.g.,* a portable hard drive). For each production, the producing party will identify the following information:

      Party v. Party (case name)
      Case No. 000000 (case number)
      Month, Day, Year (date production was created on the disk)
      Volume Number

Bates Range: (no gaps from production to production and no gaps within productions unless otherwise notified)
Confidential Designation (if necessary)

**Appendix B:  ESI Metadata Fields**

The chart below describes the metadata fields to be produced in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents and are automatically generated as part of the electronic data discovery process.  Any ambiguity about a metadata field is to be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field |
|---|---|
| BegBates | First Bates number (production number) of an item. |
| EndBates | Last Bates number (production number) of an item. **The EndBates field should be populated for single-page |
| BegAttach | First Bates number of attachment range (*i.e.*, Bates number of the first page of the first attachment). |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the first page of the first attachment). |
| PgCount | Number of pages in the item. |
| Custodian | Name of person from whose files the item is produced. |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not |
| FileSize | Size (in kilobytes) of the source native file. |
| SourceFilePath | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST |
| HashValue | The MD5 or SHA-1 hash value of the file. |
| NativeFileLink | Hyperlink path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| FileExtension | Indicates file extension of source native file. |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent. |
| TimeSent (hh:mmAM/PM | Time email or calendar item was sent. |
| LastModDate (mm/dd/yyyy) | Date the item was last modified. |

| Field Name | Field |
|---|---|
| LastModTime | Time native file was last modified. |
| LastModBy | Information in Last Saved by, Last Modified by, or Last Author in loose file documents or email attachments. |
| DateReceived | Date email or calendar item was received. |
| TimeReceived | Time email or calendar item was received. |
| To | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item. |
| From | The name and SMTP email address of the sender of the email or calendar item. |
| CC | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item. |
| BCC | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar |
| DateCreated (mm/dd/yyyy) | Date the item was created. |
| TimeCreated (hh:mm AM/PM) | Time the item was created. |
| Subject-Title | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item). |
| TextPath | Full relative path to the current location of the document-level text file. |
| Confidentiality | Indicates if item has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Redacted | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| MessageID | The unique message identifier generated by the source email or calendar system. |
| PrevMessageID | The MessageID of the previous message in the email thread (the message that was replied to or forwarded). |

| Field Name | Field |
|---|---|
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document |
| TwitterHashtag | Values/text following # in tweets and replies. |
| StartDate | Start date of chat/appointment. |
| StartTime | Start time of chat/appointment. |
| EndDate | End date of chat/appointment. |
| EndTime | End time of chat/appointment. |
| SiblingID | Group ID of text/message. |
| MobileOrigin | Sent or received info. |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 22, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Adam J. Zapala*
Adam J. Zapala

*Interim Co-Lead Counsel for*
*Plaintiffs and the Proposed Class*
