

**Chahira Solh**
csolh@crowell.com
(+1.949.789.1367 direct

Crowell & Moring LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
+1.949.263.8400 main
+1.949.263.8414 fax

September 8, 2023

<u>VIA ECF</u>

Hon. Matthew W. Brann
U.S. District Court
Middle District of Pennsylvania
U.S. Courthouse and Federal Office Building
240 West Third Street, Suite 218
Williamsport, PA 17701

Re:   <u>In re Geisinger System Services and Evangelical Community Hospital Healthcare Workers Antitrust Litigation</u>, Case No. 4:21-cv-00196-MWB

Dear Chief Judge Brann:

Defendants Geisinger System Services ("GSS") and Evangelical Community Hospital ("Evangelical") ("defendants") respectfully seek the Court's intervention to: (1) compel plaintiffs' compliance with the Court's July 21 Order by responding fully to defendants' April 26, 2023 Second Set of Interrogatories to Plaintiffs ("Interrogatory # 11) and completing their document productions in response to defendants' May 27, 2022 First Set of Requests for Production of Documents ("RFPs"); (2) require plaintiffs to sit for further depositions following the completion of their document production by September 21; and (3) sanction plaintiffs for their continued non-compliance with the Court's July 21 Order by (a) imposing a $1,000 dollar daily fine continuing until compliance is reached and (b) requiring plaintiffs to reimburse defendants' reasonable attorney fees and costs associated with re-deposing plaintiffs.

1. **Plaintiffs failed to respond fully to defendants' Interrogatory # 11.**

After more than a year of plaintiffs stonewalling defendants' repeated efforts to obtain relevant discovery, on June 28, 2023, defendants asked the Court to compel plaintiffs to address their longstanding document deficiencies and provide transparency into their discovery processes. *See* ECF No. 125. During a July 21 status conference regarding the parties' dispute, Your Honor ordered plaintiffs to respond fully and substantively to defendants' Interrogatory # 11, stating that "there is nothing objectionable in Interrogatory # 11," and to produce all outstanding



documents from all relevant sources that defendants had long requested. Later that day, defendants asked plaintiffs to produce all outstanding discovery, per the Court's clear instructions, by August 11. *See* Exhibit 1.

*Four weeks* after the Court's order, plaintiffs finally responded to Interrogatory # 11 (the "Responses"). *See* Exhibit 2. The Responses, however, contained generalized objections of privilege and relevance, and lacked detailed information regarding their preservation and collection efforts, including sources collected for production, when those collections occurred, when those data and documents were preserved, and other information regarding plaintiffs' discovery processes.

Defendants promptly sought a meet-and-confer with plaintiffs on September 1. During that call, however, plaintiffs provided no additional specific information regarding their preservation and collection of documents, as called for in Interrogatory # 11 (despite the parties' respective ESI experts participating on the call), and instead stated they would take defendants' specific concerns "under advisement." Plaintiffs also provided no basis for withholding any specific information, and have yet to provide any updates to their Responses or defendants' specific questions from the parties' September 1 call as of the filing of this letter.

Plaintiffs' conduct flies in the face of the Court's July 21 order. Your Honor's instructions were unambiguous—respond to the interrogatory, "fully." Plaintiffs' unspecified objections, beyond having no merit in light of the Court's order that they respond "fully," also do not amount to the type of objections that courts credit in discovery. Third Circuit case law is clear: generalized objections to discovery requests, even on the basis of privilege, are not honored.[1] Courts also have held that parties waive any privilege in discovery requests by not providing specific

---

[1] *E.g.*, *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, No. CIV. A. 88-9752, 1992 WL 394425, at *8 (E.D. Pa. Dec. 28, 1992) (noting, in the context of responding to interrogatories, "a party claiming attorney-client privilege must submit an affidavit which shows sufficient facts as to bring the identified and described documents within the confines of the privilege," or it "waive[s] any claim of attorney-client privilege"); *Stabilus, A Div. of Fichtel & Sachs Indus., Inc. v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 268 (E.D. Pa. 1992) ("A general, unspecified objection to interrogatories on the ground of work product or attorney-client privilege is insufficient and improper."); *Eubanks v. Amica Mut. Ins. Co.*, No. CV 04-3611, 2005 WL 8176780, at *1 (E.D. Pa. Apr. 25, 2005) ("Thus, in responding to Interrogatory Numbers 2, 3, 4, 6, 7, 8, and 9, we expect defendant [] to fully and completely disclose the information requested").



information forming the bases of their objections to those requests, including what information is being withheld and on what basis. *Id.* But that is precisely what plaintiffs are doing here by requiring that defendants engage in continuous follow-up on a piecemeal basis while the clock quickly ticks toward the end of the discovery period.

Defendants therefore request that the Court order plaintiffs to comply with the Court's July 21 Order by responding fully to Interrogatory # 11 without withholding any information on the basis of any objection, including privilege and relevance.

### 2. Plaintiffs failed to produce documents from sources identified in their Interrogatory Responses and plaintiffs' deposition testimony.

During the July 21 status conference, the Court made clear that plaintiffs must "fully" respond to defendants' RFPs. As the Court and the parties know, discovery in this case has been on-going for well over a year. And throughout the course of that time, defendants have repeatedly expressed serious concerns about plaintiffs' productions as, at the time of plaintiffs' depositions, plaintiffs had produced so few documents and plaintiffs' productions also had not complied with the parties' ESI protocol. Nevertheless, plaintiffs maintained that they had done "forensic" collections—despite both plaintiffs having testified they had collected documents themselves— and "produced all responsive documents in their possession, custody, or control" (ECF No. 127 at 3). Plaintiffs further insisted that their depositions must proceed on an advanced timeline in June and July 2023.

It became clear during plaintiffs' depositions under oath that they had not complied with their discovery obligations. In particular, each plaintiff testified regarding the following sources that they used/accessed during the relevant period:

- **Plaintiff Leib**: (1) social media accounts, including Facebook, Snapchat, and LinkedIn; (2) job search platforms/links, including Indeed.com and company websites like DaVita Inc.; (3) current and historic email addresses, including ███████████████ and ███████████████ (4) personal electronic devices, including iPads/tablets, desktop and laptop computers, mobile phones, as well as mobile software applications such as the AOL Mobile Mail app linked to Plaintiff Leib's Verizon email; and (5) text messages, such as the highly relevant messages Plaintiff Leib recently produced for the first time in this case on September 1.

- **Plaintiff Brokenshire**: (1) social media accounts, including Facebook and possibly LinkedIn; (2) current and historic email addresses, including ███████████████████ and his wife's

email account ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which he testified is a "way to get ahold of [him]"; (3) mobile phones and mobile software applications, such as the Hotmail mobile app on Plaintiff Brokenshire's mobile phone, and the computer of Plaintiff Brokenshire's wife, which he testified using and through which he was deposed over Zoom; (4) text messages, including images or photograph of relevant evidence that Plaintiff Brokenshire testified he had stored on his cell phone; and (5) hard copy documents, including copies of mailers sent to Plaintiff Brokenshire's residences relating to employment opportunities, including for travel nurse positions.

Plaintiffs still have not made productions from all of these sources, and it is now abundantly apparent that, prior to the depositions of the plaintiffs, plaintiffs had not actually produced documents from obvious relevant sources. Furthermore, defendants are now learning that plaintiffs did not preserve or produce those documents at any time until *after* plaintiffs' depositions.

On September 1, at 5:52 PM EST, plaintiffs made their first production of 35 documents following the Court's July 21 Order. For the first time since defendants served their RFPs over a year and a half ago, and although plaintiffs had previously assured defendants that they had searched plaintiffs' phones and found no responsive documents, plaintiffs' production includes text messages from Plaintiff Leib.[2] Plaintiff Leib's text messages contain **highly relevant** information that go to the core of plaintiffs' claims. For example, they include information regarding (i) negotiations between Plaintiff Leib with her then-current employer GSS and her then-future employer Evangelical discussing offers of five-figure retention and signing bonuses, (ii) Plaintiff Leib's work history—including instances of switching from GSS to Evangelical during the alleged conspiracy—and (iii) Plaintiff Leib's

---

[2] Notably, Plaintiff Leib produced 33 documents for a period spanning from July 2020 to June 2023, including text messages beginning in February 2021 through June 2023. This suggests her phone was first collected in the past couple of months, which plaintiffs refuse to confirm. That the date range for her text messages dates back 2.5 years also indicates that any messages on her phone when she retained counsel in this case in or around January or February 2021 from at least 2018 through January 2021 would have been preserved had plaintiffs taken proper preservation efforts in a timely manner. Given plaintiffs' failure to provide a fulsome response to Interrogatory # 11, which calls for information to assess preservation and collection, plaintiffs' recent production raises serious concerns that plaintiffs spoliated relevant evidence.



ability to negotiate incentive compensation when moving between defendants, all of which are diametrically opposed to what plaintiffs have alleged in their complaint.

Plaintiffs withheld this important information from defendants. Plaintiffs did not reference this information in their original or amended complaints, failed to produce this information before Plaintiff Leib's deposition in June 2023, and thus deprived defendants of the opportunity to depose her on these documents.[3] And it is now only after being finally put to task that plaintiffs have begun producing highly relevant documents that are devastating to their case.

And still, even after the Court specifically ordered plaintiffs to produce all outstanding discovery almost two months ago, plaintiffs stated during the parties' September 1 call that they have not searched for documents and sources of documents identified by plaintiffs in their depositions. During that call, plaintiffs' counsel said that they still had not completed their "investigation" into plaintiffs' remaining document sources, and would not confirm whether they had even collected and preserved various relevant sources, including: mobile apps such as WhatsApp and Slack; iCloud storage and backups associated with plaintiffs' mobile devices; posts, messages, and information regarding group membership in plaintiffs' Facebook, LinkedIn, and Indeed.com accounts; and Plaintiff Brokenshire's wife's computer, which he testified using and through which he was deposed.

Defendants therefore request that the Court order plaintiffs to complete all document productions by September 21, disclose all sources identified by plaintiffs from which they did not produce any documents so that defendants may engage in further discovery of plaintiffs to sufficiently assess whether they have not satisfied their preservation obligations, and order the re-deposition of plaintiffs, with costs taxed to plaintiffs.

3. **In light of plaintiffs' longstanding discovery misconduct, defendants reluctantly request that the Court sanction plaintiffs for their failure to comply with the Court's July 21 order.**

As is clear from plaintiffs' contemptuous and continued non-compliance with

---

[3] Notably, after telling defendants that they had produced all documents from Plaintiffs Brokenshire and Leib, plaintiffs produced documents and amended discovery on the eve of their depositions, including at 11:59 PM ET on June 28, or nine hours before Plaintiff Leib's deposition at 9 AM on June 29. Defendants were also deprived altogether of deposing former plaintiffs Sharon Hixson and Brittany Gresh who were unilaterally dismissed *via* Notices of Voluntary Dismissal on the eves of their depositions. (ECF 124, 126.) Fulsome discovery from them is similarly lacking.



the Court's July 21 order, plaintiffs have not lived up to their discovery obligations. Contrary to plaintiffs' counsel's recent assertion that the discovery that matters is in the "custody, possession and control of defendants," discovery of plaintiffs in *this case* is highly relevant because plaintiffs have alleged that they could not be hired or recruited by defendants and therefore there was a corresponding impact on wages, which are the gravamen of their antitrust case on liability and damages.

Importantly, plaintiffs seek to certify a vast class consisting of all "healthcare workers" employed by defendants for an expansive 10-plus-year period. Questions about plaintiffs' ability to serve as class representatives, alone, warrant discovery of plaintiffs. But, as detailed above, plaintiffs concealed highly relevant information from the Court and defendants in this case from the start. For example, Plaintiff Leib's job history of working at *both* defendants *twice* during the relevant period was never alleged in any iteration of the complaint. Plaintiffs also alleged that they cannot negotiate compensation because of an alleged no-hire/no-recruit agreement between defendants. That allegation is plainly contradicted by Plaintiff Leib's recently produced text messages. *See* Exhibit 3.

Plaintiffs' strategy of withholding highly relevant and adverse documents until the near close of discovery (and only then promising to produce on a "rolling basis" with no clear end in sight) severely prejudiced defendants and insulated Plaintiff Leib from being confronted with this information during her June 2023 deposition. With Plaintiff Brokenshire, plaintiffs still have not produced documents from multiple identified sources of relevant materials. Plaintiffs' discovery misconduct is egregious and warrants sanctions. As a consequence, defendants are now in the unfortunate position of having to ask the Court to require plaintiffs to sit for depositions again and reimburse defendants for their reasonable legal fees and costs (including deposition transcription and videotaping costs). To ensure timely compliance with the Court's July 21 Order, defendants also request that the Court impose a $1,000 dollar daily fine continuing until compliance is reached.

Defendants reserve their rights to seek further sanctions following the completion of plaintiffs' document productions and responses to Interrogatory # 11. Finally, if and when it is confirmed that plaintiffs did not preserve documents or have withheld key information defendants will address that in a subsequent submission.



Respectfully submitted,

| | |
|---|---|
| */s/Chahira Solh* | */s/Norm Armstrong, Jr.* |
| Chahira Solh (*Pro Hac Vice*) | Norm Armstrong, Jr. |
| CROWELL & MORING LLP | KING & SPALDING LLP |
| 3 Park Plaza, 20th Floor | 1700 Pennsylvania Avenue |
| Irvine, CA 92614-8505 | Washington, DC 20006 |
| Phone: (949) 798-1367 | |
| csolh@crowell.com | Stephanie Resnick |
| | Theodore H. Jobes |
| Stefan M. Meisner (*Pro Hac Vice*) | John Fuller |
| CROWELL & MORING LLP | FOX ROTHSCHILD LLP |
| 1001 Pennsylvania Avenue NW | 2000 Market Street, 20th Floor |
| Washington, DC 20004 | Philadelphia, PA 19103-3222 |
| Phone: (202) 624-2500 | Telephone: (215) 299-2000 |
| smeisner@crowell.com | sresnick@foxrothschild.com |
| | tjobes@foxrothschild.com |
| Rosa M. Morales (*Pro Hac Vice*) | jfuller@foxrothschild.com |
| CROWELL & MORING LLP | |
| 590 Madison Avenue, 20th Floor | *Counsel for Defendant Evangelical Community Hospital* |
| New York, NY 10022 | |
| Phone: (212) 895-4261 | |
| rmorales@crowell.com | |

Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani
MYERS BRIER & KELLY LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
Phone: (570) 342-6100
dbrier@mbklaw.com
dwalsh@mbklaw.com
rarmezzani@mbklaw.com

*Counsel for Defendant Geisinger System Services*

crowell.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of September 2023, a true and correct copy of this letter was filed with the Court's Case Management/ Electronic Case Filing System and served upon all counsel known to be representing the plaintiffs.

*/s/Chahira Solh*
Chahira Solh