

MICHAELA L. WALLIN / *SHAREHOLDER*
d 215.875.5819 m 917.544.9930 | mwallin@bm.net

October 13, 2023

**VIA ECF**
Chief Judge Matthew W. Brann
U.S. District Court Middle District of Pennsylvania
U.S. Courthouse and Federal Office Building
240 West Third Street, Suite 218
Williamsport PA 17701

**Re: *In re Geisinger Sys. Servs. and Evangelical Cmty. Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21–cv–00196–MWB (M.D. Pa.)**

Dear Chief Judge Brann:

Plaintiffs write in response to the letter that Geisinger System Services ("Geisinger") and Evangelical Community Hospital ("Evangelical") (collectively "Defendants") filed with the Court on October 6, 2023, which supplements Defendants' prior requests that Plaintiffs be compelled to sit again for depositions, provide further information about their discovery processes, produce additional documents, and be subject to sanctions for any failure to do so. ECF No. 144 ("Defendants' October 6 Letter").

Defendants continue to mischaracterize Plaintiffs' compliance with their discovery obligations. Defendants' requested remedies should be denied because Plaintiffs have thoroughly responded to Defendants' interrogatories and document requests. The purportedly outstanding discovery is also neither relevant to the claims nor to any defenses in this case. While Defendants' October 6 Letter does not raise any new arguments or evidence for the Court's consideration, Plaintiffs respond to Defendants' assertions to ensure the record is complete.

## I. Plaintiffs' Recent Production Included No New or Relevant Information that Warrants Reopening Plaintiffs' Depositions

Defendants argue that Plaintiffs' depositions should be reopened because recently produced documents purportedly include new evidence that undermines Plaintiffs' claims. Untrue. *See* ECF No. 140 at 4-5, 12 ("Pls.' Letter to the Court") (refuting Defendants' claims).



First, the evidence at issue is neither probative of Plaintiffs' claims nor to any of Defendants' defenses. Defendants' position—that Plaintiffs' allegations are supposedly undermined by evidence that Ms. Leib was employed by both Defendants and negotiated her pay[1]—rests on a misunderstanding of the underlying case and claims. *See* Pls.' Letter to the Court at 12 (explaining that Plaintiffs do not allege, nor do their claims require that they allege, that Defendants eliminated all hiring as between Defendants or that negotiation was impossible; the case centers on an anticompetitive "no poach" agreement, not a "no hire" agreement). Moreover, Defendants' argument ignores the standard theory of harm in this case: Plaintiffs allege that the no poach agreement restrained the usual competitive forces that put upward pressure on wages, and that this restraint was felt market wide, irrespective of any particular employee's efforts or success (or lack thereof) in finding a new job or moving between Defendants. *Id.* at 4-5. As Plaintiffs have pointed out, Plaintiffs' theory of harm here is consistent with standard economic theory, and has been repeatedly endorsed by multiple courts in certifying classes in analogous no poach cases. *Id.*

Second, even if this evidence were relevant, Defendants were not prejudiced by the timing of the disclosures because the recently produced documents are cumulative of prior productions, and do not present any new information. *Id.* at 12. Defendants knew that they both employed Ms. Leib, as well as the compensation they each offered her. The documents also are not evidence of pay negotiations; they simply show Ms. Lieb communicating the compensation offered. *Id.* at 12, n.13. Finally, Defendants already questioned Ms. Leib extensively on the topics of her job history, applications, and any negotiation of pay, and Ms. Leib's testimony was consistent with recently-produced documents. *Id.* at 12-13. Further testimony from Ms. Leib would be duplicative, harassing, and unduly burdensome.[2] *Id.*

## II. Plaintiffs Fully Responded to Defendants' Interrogatory No. 11

Defendants contend that Plaintiffs have yet to provide certain information requested by their Interrogatory No. 11 ("Interrogatory"). This Interrogatory is

---

[1] Defendants articulate no reason why Mr. Brokenshire's deposition should be reopened.

[2] Defendants additionally argue that Ms. Leib and Mr. Brokenshire should be deposed again because Plaintiffs misrepresented "that they 'produced all responsive documents'" prior to Plaintiffs' depositions. Defs.' Oct. 6 Letter (quoting ECF No. 127 at 3). But this misquotes Plaintiffs' representation. ECF No. 127 at 3 (noting that "Plaintiffs have produced all responsive documents . . . ***with the exception of***" certain social media messages and emails that were uncertain to exist or inaccessible) (emphasis added). Plaintiffs consistently provided Defendants insight into their search and collection efforts based on the best information available at the time.

discovery about discovery, requesting detailed information about Plaintiffs' discovery efforts, including Plaintiffs' methods, processes, and steps taken to preserve, search for, and collect responsive documents. Defendants are wrong that Plaintiffs have failed to respond to it for two reasons. First, none of the information they identify is encompassed by the plain language of the Interrogatory. Second, notwithstanding that it was not invoked by the Interrogatory, Plaintiffs already provided Defendants with the vast majority of the information Defendants identify. Moreover, Defendants have not demonstrated any need for this information because they have not made, and cannot make, any credible claim that ESI has been spoliated. *See* Letter to the Court at 10-11; Plaintiffs' September 8, 2023 Letter to Defendants, ECF No. 138-1 at 2 ("Pls.' September 8 Letter"). The below headings set out Defendants' descriptions of the purportedly missing information, *see* Defs.' Oct. 6 Letter at 2; Plaintiffs respond to each in turn:

- <u>When, including "dates," preservation efforts were undertaken for each source</u>: The Interrogatory does not request this information. The quoted "dates" in Defendants' description of the missing information in fact refers to the request for "the dates of any . . . instructions" Plaintiffs' counsel "provided to each custodian." *See* Plaintiffs' Amended Responses and Objections, ECF No. 135-2, at 4. ("R&Os"). Plaintiffs R&Os satisfied this request, outlining the dates that counsel provided such instructions. *Id.* at 5-6.

- <u>"Steps taken to preserve in place or via collection potentially responsive documents," including when Plaintiffs' counsel first learned about such sources and what steps they took to preserve</u>: Plaintiffs have detailed their steps to preserve and collect responsive documents. *See* R&Os at 5-8; Pls.' Sept. 8 Letter at 2-3, 5-8. The Interrogatory, however, did not request specific dates Plaintiffs' counsel learned of each document source or granular, source-by-source information about preservation efforts. Even if it did, this is irrelevant, unduly burdensome, and it is protected by attorney-client privilege as it seeks the content of conversations between Plaintiffs and their counsel. *Id.* at 2-3.

- <u>Whether Plaintiffs preserved, searched, and collected archival information from all relevant sources</u>: This was not requested by the Interrogatory. Nevertheless, assuming "archival information" refers to backups of devices or accounts, Plaintiffs provided this information in their September 8 Letter to Defendants in response to Defendants' request for the same. *Id.* at 6-7.[3]

---

[3] Plaintiffs informed Defendants that there was no cell phone backups, no iPad backup, and that Plaintiffs provided profile data archives of Ms. Leib's LinkedIn and Facebook accounts.



- The methods and processes Plaintiffs used to search for and identify responsive documents in each relevant source, and who performed those functions: This request was not included in the Interrogatory. Despite this, Plaintiffs provided detailed information about the post-collection search and review processes, *id.* at 9-10,[4] and the persons/entities that performed them. R&Os at 6-8.[5]

- When Plaintiffs first collected documents from each source, including from those sources identified by each Plaintiff at their depositions: The Interrogatory did not request this information, but Plaintiffs have nevertheless provided it. Plaintiffs' R&Os described Plaintiffs' collection process, including a timeline of the collection. *Id.* at 6-8. Plaintiffs also provided the dates when the latest collection was completed for each source. *See* Pls.' Sept. 8 Letter at 9.

Plaintiffs have provided information that goes well beyond the bounds of the Interrogatory. The Court should not permit Defendants to go on a fishing expedition for increasingly detailed information about Plaintiffs' preservation efforts, particularly given the lack of any credible spoliation claim.

## III. Plaintiffs Collected and Produced Responsive Documents from All Sources Where There Is Any Expectation of Responsive Material

Defendants contend that there are additional responsive documents that Plaintiffs are withholding and should be ordered to produce. Defs.' Oct. 6 Letter at 3. Defendants are wrong. Plaintiffs have collected and produced responsive documents from *all* sources where there is *any* reasonable expectation that there will be unique, responsive documents. Pls.' Letter to the Court at 9.

Defendants nevertheless assert that Plaintiffs should be required to search Facebook, WhatsApp, Slack, and Snapchat accounts, as well as Mr. Brokenshire's LinkedIn account. Defs.' Oct. 8 Letter at 4. Plaintiffs, however, have notified Defendants that: (1) Mr. Brokenshire does not recall creating a LinkedIn account, let alone using it for job search purposes, Plaintiffs' August 2, 2023 Letter at 2, ECF. No. 140-5 ("Pls. Aug. 2 Letter"); (2) Mr. Brokenshire did not use his Facebook account for job search purposes, Pls.' Sept. 8 Letter, at 7; and (3) Plaintiffs collected and reviewed messages from Ms. Leib's Facebook account. *Id.*

---

Defendants had not previously requested information about computer backups, but Plaintiffs confirm here that there was no backup of Ms. Leib's computer.

[4] Outlining search terms, any use of limiters or exclusions, and the method of review.

[5] Identifying named Plaintiffs; Ricoh USA, Inc; and Downstreem LLC



at 9-10. Further, neither named Plaintiff has WhatsApp or Slack accounts, neither used their Snapchat accounts for job search purposes, and there is no indication Defendants solicited workers through these channels—Defendants' stated reason for this discovery.

Defendants also list several sources and claim Plaintiffs have not produced documents or sufficiently explained why documents are not available from them. Defs.' Oct. 6 Letter at 4-5. Defendants are wrong for the reasons stated below:

- Ms. Leib's Personal iPad and Facebook account, and Mr. Brokenshire's text messages: Plaintiffs collected and reviewed documents from these sources. *See* Letter to Court at 8 n. 11; R&Os at 7-8. There were no responsive documents.
- Hard copy documents including job mailers: Plaintiffs' R&Os explained that (1) Mr. Brokenshire produced all hard copy documents in his possession, and (2) Ms. Leib was directed to locate, preserve, and collect both hard copy and electronic information, but only located electronic documents. *See* R&Os at 5-6.
- Ms. Leib's AOL Mobile App: Plaintiffs explained in their Letter to the Court and prior correspondence that any responsive documents from this AOL Mobile App would be duplicative of emails already collected. *See* Letter to Court at 9; Pls.' Aug 2 Letter at 2.
- Ms. Leib's Wildblue email account and Mr. Brokenshire's Hotmail email account and Hotmail mobile app: Plaintiffs explained in their Letter to the Court and R&Os that these email accounts have been inaccessible to Plaintiffs since before the start of this litigation. *See* Letter to Court at 9; R&Os at 8.
- Ms. Leib's pre-February 2021 text messages: Plaintiffs have explained that they could not recover earlier text messages. *See* Letter to the Court at 11.
- Mr. Brokenshire's wife's computer: Plaintiffs have explained that there is no reason to believe this source contains any relevant documents. *Id.* at 9 & n.12; Pls.' Sept. 8 Letter at 6-7, 9. Mr. Brokenshire did not use this computer to store documents, as it is not a shared computer but his wife's work computer.
- Mr. Brokenshire's Facebook and LinkedIn accounts: Plaintiffs have explained that Mr. Brokenshire does not recall making a LinkedIn account and he did not use Facebook for job search purposes. *Id.* at 9, 9 n.12; Aug. 2 Letter at 3.

Finally, Defendants' stated basis for demanding social media documents—that job solicitations made through social media contradict Plaintiffs' allegations—



is wrong for three reasons. First, Plaintiffs allege, and the underlying economics provide, that no poach agreements generally, and the alleged no poach agreement in particular, inflicted harm market wide because they impede competition generally and disrupt the pay/price discovery process, which has a suppressive effect on pay to all. Pls.' Letter to the Court at 4-5 (citing cases, economic literature, and guidance from the Department of Justice). Whether an individual class member searched, or did not search, for a job is not relevant to whether that class member was impacted by the reduction of competition between the two Defendants for workers, and thus an individual class member's job search activity would not bear upon any relevant economic or factual question in the case. *Id*.[6] Second, Defendants' claim that Ms. Leib's LinkedIn messages included direct solicitations from Defendants, contrary to Plaintiffs' allegations, *see* ECF. No. 144-2, is false. The cited messages instead consist of: (1) a message from Evangelical when Ms. Leib was an Evangelical employee; and (2) two messages from Geisinger in March of 2023, which is after this case was filed, and well outside the alleged time period of the conspiracy. *See* ECF No. 101 at ¶ 6 ("Complaint"). Third, Defendants' assertion that communications from other employers undercut the claim "that health care employers did not solicit [Ms. Leib] for jobs in the Central Pennsylvania region" Defs.' Oct. 6 Letter at 4, misstates Plaintiffs' pleadings. Plaintiffs did not allege all Central Pennsylvania healthcare employers were bound by the no poach agreement.[7] Solicitations from other employers to one named plaintiff are not relevant to the claims at issue.[8]

* * *

[6] *See also In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1192 (N.D. Cal. 2013) (finding common impact for all employees "not just those who would have received cold calls but for the anti-solicitation agreements"); *Seaman v. Duke Univ.*, No. 1:15-cv-462, 2018 WL 671239, at *4-6 (M.D.N.C. Feb. 1, 2018) (finding common impact on similar theory); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 295 (N.D. Cal. 2016) (same).

[7] Compare *id.* (citing Complaint ¶¶ 3, 32) with Complaint ¶¶ 3, 32 (the "Agreement was intended to, and did, reduce competition for Healthcare Workers in Central Pennsylvania" and "Because Geisinger and Evangelical are direct competitors in the provision of healthcare services in Central Pennsylvania, they would also ordinarily compete directly for the employment of Healthcare Workers" including through "soliciting and/or hiring each other's employees.").

[8] Such solicitations are not probative of impact. *See infra* n. 6. Further, putting aside that Plaintiffs allege a *per se* violation and need not prove relevant market or market power, these solicitations provide no insight into whether the jobs offered are adequate economic substitutes in the eyes of employees or whether competition from other employers would constrain Defendants' ability to suppress pay. *See* Pls.' Opp. to Mot. to Dismiss, ECF No. 56 at 28.



For the reasons stated above and in Plaintiffs' Letter to the Court, Defendants' requested relief is inappropriate and thus should be denied.

Date: October 13, 2023

Respectfully submitted,

*/s/ Adam J. Zapala*
Adam J. Zapala (*Pro Hac Vice*)
Elizabeth T. Castillo (*Pro Hac Vice*)
James G. Dallal (*Pro Hac Vice*)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697–6000
Fax: (650) 697–0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett (*Pro Hac Vice*)
**COTCHETT, PITRE & McCARTHY, LLP**
40 Worth Street, 10th Floor
New York, NY 10013
Phone: (212) 201–6820
abarnett@cpmlegal.com

*/s/ Michaela L. Wallin*
Eric L. Cramer (PA Bar No. 69289) (*Pro Hac Vice*)
Shanon Jude Carson (PA Bar No. 85957)
Candice J. Enders (PA Bar No. 92107) (*Pro Hac Vice*)
Michael J. Kane (PA Bar No. 73998) (*Pro Hac Vice*)
Michaela L. Wallin (*Pro Hac Vice*)
J. Taylor Hollinger (PA Bar No. 332706) (*Pro Hac Vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875–4604
Fax: (215) 875–5707
ecramer@bm.net
scarson@bm.net
cenders@bm.net
mkane@bm.net
mwallin@bm.net
thollinger@bm.net

Daniel J. Walker (*Pro Hac Vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue NW, Suite 300
Washington, DC 20006
Phone: (202) 559–9745
dwalker@bm.net

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Michaela L. Wallin, hereby certify that on this 13th day of October, 2023, a true and correct copy of the foregoing letter was filed with this Court's Case Management/Electronic Court Filing system and served upon all counsel of record.

Dated: October 13, 2023

*/s/ Michaela L. Wallin*
Michaela L. Wallin