IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GEISINGER SYSTEM SERVICES AND EVANGELICAL COMMUNITY HOSPITAL HEALTHCARE WORKERS ANTITRUST LITIGATION | No. 4:21-CV-00196<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

JANUARY 10, 2024

### I.   BACKGROUND

Currently before the Court is Defendants' Motion for Leave to Take the Deposition of Danese Brokenshire.[1] Defendants' Motion is the latest salvo in an ongoing discovery dispute regarding Plaintiffs' document productions, which itself is just one of several such disputes the Court has been asked to mediate. Previously, Defendants requested, and the Court granted permission to conduct additional depositions of certain Plaintiffs, including Kevin Brokenshire. As to Mr. Brokenshire, Defendants emphasized that the "paucity" of his productions raised concerns regarding their completeness.[2]

Having taken Mr. Brokenshire's deposition for a second time, Defendants now insist that they need to depose his wife, Danese, regarding her role in ensuring that Mr. Brokenshire fulfilled his obligations to collect and preserve documents

---

[1] Mot. for Leave, Doc. 160.
[2] Oct. 6, 2023 Letter, Doc. 144 at 2.

relevant to the litigation. Defendants' Motion is fully briefed and ripe for disposition.[3]

## II.   LAW AND ANALYSIS

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." "This authority extends to requests to reopen discovery"[4] and the decision whether to do so is within a district court's broad discretion to manage discovery.[5] The United States Court of Appeals for the Third Circuit has instructed that the "good cause" inquiry "focuses on the moving party's burden to show due diligence."[6] Accordingly, "if the moving party 'was not diligent, there is no 'good cause' for modifying the scheduling order'"[7] and "the inquiry should end."[8]

Defendants' argument that they have exhibited the requisite due diligence rests on their assertion that they did not learn of Ms. Brokenshire's role in the preservation of Mr. Brokenshire's documents until he was deposed on December 6,

---

[3]   Def. Br. in Supp. ("BIS"), Doc. 161; Pl. Opp. Br. ("BIO"), Doc. 165; Def. Reply, Doc. 169.
[4]   *In Re Chocolate Confectionary Antitrust Litigation*, No. 1:08-MDL-1935, 2013 WL 3873225 at *2 (M.D. Pa. July 25, 2013) (Connor, J.) (citing *Aamco Transmissions, Inc. v. Marino,* 1991 WL 40336 (E.D. Pa. Mar. 19, 1991)).
[5]   *LeBoom v. Lancaster Jewish Cmty. Ass'n,* 503 F.3d 217, 235 (3d Cir.2007); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 734 (3d Cir.1995).
[6]   *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *accord Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020)
[7]   *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015) (quoting *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 701 (E.D.Pa.2007)).
[8]   *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992).

2023.[9] However, as Mr. Brokenshire points out, he had testified during a July 2023 deposition that he had relied on his wife to ensure that he fulfilled his document collection and preservation obligations:

> Q: Mr. Brokenshire, what have you done—what—what have you done to ensure that you have preserved all documents related to the subject— to the matters related to this case since January or February 2021?
>
> A: Well, to be honest with you, I got married; she handles all the paperwork.
>
> Q: Mr. Brokenshire, is it your testimony that your wife is ensuring that you are preserving all documents as of January or February 2021 regarding the matters of this case?
>
> A: That is what I'm stating—
>
> Q: Could you please repeat that response?
>
> A: That is what I'm stating.[10]

Defendants argue that "one exchange during Kevin Brokenshire's prior deposition" is insufficient to impute Defendants' knowledge that his wife "undertook all of his collection and preservation obligations on his behalf."[11]

The Court might find Defendant's arguments more persuasive had they not, on September 8, 2023, cited Mr. Brokenshire's July 2023 testimony in a letter to the Court in which they asserted that he had not complied with his discovery obligations.[12] In that letter, Defendants argued that Mr. Brokenshire had not lived up

---

[9] BIS 7.
[10] BIO 8 (quoting Brokenshire Dep. Tr. Vol. II, Opp. Ex. 2, Doc. 165-2 364:13-367:1).
[11] Reply 2.
[12] Sept. 8, 2023 Letter, Doc. 135 at 3-4.

to his discovery obligations because he had not made productions from, among other sources, his wife's email account and computer.[13] In another letter to the Court filed a month later, Defendants repeated their claims that Mr. Brokenshire failed to produce documents from certain sources, again including his wife's computer, and charged Plaintiffs collectively with "deliberately depriv[ing] Defendants of information that is diametrically opposed to the allegations in their Complaint."[14] In sum, Defendants suggest that, though they apparently learned of several previously unsearched sources of discoverable information during Mr. Brokenshire's deposition, they could not be expected to understand Mr. Brokenshire's unequivocal testimony that his wife was ensuring he was fulfilling his document collection and preservation obligations to mean exactly that.[15]

The Court is also unmoved by Defendants' attempt to minimize this testimony as "one exchange" during the deposition. Putting aside that the relevant testimony was elicited as part of a direct question by counsel, Mr. Brokenshire was asked several questions regarding his wife's involvement including what she had done to ensure documents had been preserved and the extent to which he could be contacted through his wife's email, which he could not access.[16]

---

[13]   *Id.*
[14]   Oct. 6, 2023 Letter at 5.
[15]   *Cf.* BIS 2 ("While Defendants may have been aware that Mr. and Ms. Brokenshire shared email accounts and devices, they could not have been aware that Mr. Brokenshire would not be able to offer *any* testimony whatsoever as to his specific preservation efforts.").
[16]   Brokenshire Dep. Tr. Vol. II 365:15-371:18.

Defendants insist that they "have sought specific information regarding Plaintiffs' preservation and collection efforts" "[f]or more than a year."[17] They suggest that their efforts have been stymied, not by a lack of diligence, but by Plaintiffs' conscious efforts to deceive Defendants. To be sure, the Court takes a jaundiced view of Plaintiffs' approach to discovery. Indeed, it was for that reason that the Court required Plaintiffs to provide more fulsome responses to written discovery requests and permitted Defendants to conduct additional depositions. However, discovery must come to an end and generalized concerns regarding potential spoliation are not grounds to delay it any further. The Court has already afforded Defendants the opportunity to conduct additional discovery regarding those concerns and will not permit them to belatedly venture down a different path after having come to a dead end.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion for Leave to Take the Deposition of Danese Brokenshire.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[17] BIS 1.