# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

---

IN RE GEISINGER SYSTEM
SERVICES AND EVANGELICAL
COMMUNITY HOSPITAL
HEALTHCARE WORKERS
ANTITRUST LITIGATION

No. 4:21-cv-00196

Chief Judge Matthew W. Brann

---

## PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (REDACTED - PUBLIC VERSION)

## <u>TABLE OF CONTENTS</u>

**Page No.**

I.   INTRODUCTION ............................................................1

II.  ARGUMENT ...............................................................5

    A.   Common Questions Predominate Over Individualized Issues. ...............5

        1.   Market definition is a common issue susceptible to classwide evidence. ....................................................................7

        2.   Impact is a common issue susceptible to classwide evidence......11

            a.   Defendants misstate Plaintiffs' theory of impact.................11

            b.   Defendants' criticisms of Dr. Leamer are wrong on the merits..................................................................12

            c.   Proof of impact is a classwide issue. ...................................17

    B.   Defendants' Standing Arguments Are Meritless and Untimely. .............18

    C.   The Class Is Easily Ascertainable. ...........................................19

III. CONCLUSION ............................................................20

i

<u>**TABLE OF AUTHORITIES**</u>

**Page No.**

**Cases**

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)............................................................................. *passim*

*Bishop v. GNC Franchising LLC*,
    403 F. Supp. 2d 411 (W.D. Pa. 2005) ........................................................7, 8

*Black v. Occidental Petroleum Corp.*,
    69 F.4th 1161 (10th Cir. 2023)......................................................................10

*Bogan v. Hodgkins*
    166 F.3d 509 (2d Cir. 1999)............................................................................7

*Borozny v. Raytheon Techs. Corp.*,
    No. 3:21-cv-1657, 2023 WL 348323 (D. Conn. Jan. 20, 2023)......................8

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d. Cir. 2013)........................................................................20

*Castro v. Sanofi Pasteur Inc.*,
    134 F. Supp. 3d 820 (D.N.J. 2015)..............................................................10

*Cottrell v. Alcon Labs.*,
    874 F.3d 154 (3d Cir. 2017).................................................................. 13, 18

*Finkelman v. Nat'l Football League*,
    810 F.3d 187 (3d Cir. 2016) ........................................................................19

*Hargrove v. Sleepy's LLC*,
    974 F.3d 467 (3d Cir. 2020)........................................................................20

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)...................6

*In re Broiler Chicken Grower Antitrust Litig.*,
    No. 6:20-md-02977, 2024 WL 2117359 (E.D. Okla. May. 8, 2024) .... *passim*

*In re Chocolate Confectionary Antitrust Litig.*,
   289 F.R.D. 200 (M.D. Pa. 2012).......................................................................6

*In re Fine Paper Antitrust Litig.*,
   82 F.R.D. 143 (E.D. Pa. 1979).........................................................................6

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D. 472 (W.D. Pa. 1999).......................................................................6

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ..................................................... 12, 15

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008).................................................................... 1, 3, 5

*In re Mercedes-Benz Antitrust Litig.*,
   157 F. Supp. 2d 355 (D.N.J. 2001) ..................................................................7

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   319 F.R.D. 158 (E.D. Pa. 2016)......................................................................10

*In re Niaspan Antitrust Litig.*,
   67 F.4th 118 (3d Cir. 2023)...........................................................................20

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
   630 F. Supp. 3d 968 (N.D. Ill. 2022) ..............................................................13

*In re Pressure Sensitive Labelstock Antitrust Litig.*
   No. 3:03-MDL-1556, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007)..............6

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
   395 F. Supp. 3d 464 (W.D. Pa. 2019) ..................................................... *passim*

*In re Static Random Access Memory Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009).....................................................................6

*In re Suboxone Antitrust Litig.*,
   421 F. Supp. 3d 12 (E.D. Pa. 2019) .................................................................6

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)........................................................................2, 6


*Lifewatch Servs. Inc. v. Highmark Inc.*,
   902 F.3d 323 (3d Cir. 2018) ........................................................................10

*Messner v. Northshore Univ. Health Sys.*,
   669 F.3d 802 (7th Cir. 2012) .........................................................................6

*Meyers v. Sw. Bell Tel. Co.*,
   181 F.R.D. 499 (W.D. Okla. 1997) ..............................................................10

*Mumford v. GNC Franchising LLC*,
   437 F. Supp. 2d 344 (W.D. Pa. 2006) ...........................................................7

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) .........................................................................18

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016) ........................................................... 12, 16

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*
   922 F. Supp. 1055 (E.D. Pa. 1996) ................................................................7

*Robinson v. Jackson Hewitt, Inc.*,
   No. 19-9066, 2019 WL 5617512 (D.N.J. Oct. 31, 2019) ..............................18

*Seaman v. Duke Univ.*,
   No. 1:15-cv-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018) .............. 15, 17

*Tyson Foods v. Bouaphakeo*,
   577 U.S. 442 (2016) ..................................................................................6, 17

*Weisfeld v. Sun Chem. Corp.*,
   84 F. App'x 257 (3d Cir. 2004) .............................................................. 16, 19

**Federal Rules of Civil Procedure**

Rule 23(a) .........................................................................................................1

Rule 23(b)(3) .......................................................................................... 1, 2, 5, 10

# TABLE OF ABBREVIATIONS[1]

| | |
|---|---|
| Central Pennsylvania | A region in central Pennsylvania that includes Union, Snyder, Northumberland, Montour, Lycoming, and Columbia counties and the cities of Danville and Lewisburg, where Geisinger Medical Center and Evangelical are headquartered. |
| The Class | All natural persons who worked at Geisinger or Evangelical as Healthcare Workers from January 1, 2014 through August 5, 2020. Excluded from the Class are members of Defendants' boards of directors, Defendants' C-Suite Executives, and any and all judges assigned to hear or adjudicate any aspect of this litigation and their judicial staff. |
| Co-Lead Class Counsel or Class Counsel | Berger Montague PC and Cotchett, Pitre & McCarthy, LLP |
| Class Member | A member of the Class (*see above*) |
| Class Period | January 1, 2014 to August 5, 2020 |
| Class Representatives | Nichole Leib and Kevin Brokenshire |
| Complaint or Compl. | Consolidated Amended Class Action Complaint (Feb. 2, 2023) (ECF No. 101) |
| Defendants | Geisinger System Services and Evangelical Community Hospital |
| DOJ Complaint or DOJ Compl. (Ex. 50) | Complaint, *United States v. Geisinger Health and Evangelical Cmty. Hosp.*, No. 4:20-cv-01383-MWB (M.D. Pa. Aug. 5, 2020) (ECF No. 1) |

[1] Unless otherwise noted, all exhibits referenced are Exhibits to the Declaration of Adam J. Zapala in support of Plaintiffs' Motion for Class Certification (ECF Nos. 181 (Declaration), 188 (Exhibits)).

| Evangelical | Evangelical Community Hospital |
|---|---|
| Geisinger | Geisinger System Services |
| Healthcare Workers | Nurses, physicians, advanced practitioners, medical support personnel, and other healthcare professionals (*see* LR1 ¶ 21) |
| Named Plaintiffs | Nichole Leib and Kevin Brokenshire |
| No-Poach Agreement or NPA | The alleged agreement between Geisinger and Evangelical not to solicit (or "poach") each other's Healthcare Workers |
| LR1 (Ex. 3) | Expert Report of Edward Leamer, Ph.D. (Corrected) (Jan. 16, 2024) |
| LR2 (Ex. 10) | Rebuttal Report of Edward Leamer, Ph.D. (Apr. 19, 2024) |
| MR1 (Ex. 4) | Expert Report of Prof. Alan Manning (Jan. 16, 2024) |
| MR2 (Ex. 11) | Rebuttal Report of Prof. Alan Manning (Apr. 19, 2024) |
| BR (Ex. 9) | Expert Report of Laurence Baker, Ph.D. (Further Corrected) (Mar. 8, 2024) |
| Baker Dep. Tr. (Ex. 12) | Excerpt of Deposition Transcript of Laurence Baker, Ph.D. (May 28, 2024) |
| Manning Dep. Tr.[2] | Deposition Transcript of Alan Manning (May 9, 2024) |
| Plaintiffs' Motion or Mot. | Plaintiffs' Memorandum of Law in Support of Motion for Class Certification (ECF No. 178) |

[2] Exhibit C to Defs.' Joint Mot. to Exclude the Testimony of Pls.' Expert, Prof. Alan P. Manning (ECF No. 190-3, Ex. C).

| Defendants' Opposition or Opp. | Memorandum in Support of Defendants' Joint Opposition to Plaintiffs' Motion for Class Certification (ECF No. 201) |
|---|---|
| Leamer Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Motion to Exclude the Testimony of Plaintiffs' Expert, Prof. Edward Leamer (ECF No. 204) |
| Manning Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Motion to Exclude the Testimony of Plaintiffs' Expert, Prof. Alan P. Manning (ECF No. 205) |
| MTD Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint and, Alternatively, to Strike Class Allegations (ECF No. 56) |

## I.    INTRODUCTION

Plaintiffs' Motion showed that each element of Rule 23 is satisfied. Defendants do not challenge, and thus concede, that Plaintiffs satisfy the numerosity, adequacy, typicality, and commonality requirements of Rule 23(a).

Defendants primarily argue that Plaintiffs do not satisfy the "predominance" element of Rule 23(b)(3), which requires that common issues predominate over individualized issues. But Plaintiffs' Motion sets forth record and expert evidence, all of which is common to the Class, capable of establishing: (1) the violation of antitrust law, Mot. at 18–21; (2) that Defendants possess market power in a relevant market (despite such proof not being required), *id.* at 21–23; (3) antitrust injury (or "impact") through a two-step analysis that shows (i) the conspiracy generally suppressed pay, *id.* at 23–28, and (ii) this suppression was experienced classwide, *id.* at 28–33; and (4) classwide damages, *id.* at 33–35.[3]

Defendants challenge Plaintiffs' classwide proof as to two elements of Plaintiffs' claim: the relevant market component of market power and impact. Defendants are wrong on the merits but, more importantly, Defendants *concede* that the other elements of Plaintiffs' claim—conspiracy and total damages—are common issues capable of proof with classwide evidence. This concession is critical because

---

[3] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) ("*Hydrogen Peroxide*").

in cases alleging conspiracies among horizontal competitors, the trial will focus almost entirely on proving the existence of the alleged NPA.[4] Thus, Defendants concede the trial will focus on common issues and evidence, which satisfies Rule 23(b)(3)'s predominance requirement.[5]

Defendants are also wrong on the merits. ***First***, Defendants argue that Plaintiffs must define a relevant market and that Plaintiffs' expert's market definition is unreliable. Opp. at 21–25. Not so. Plaintiffs allege a *per se* illegal conspiracy and thus need not plead or prove a relevant market.[6] ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████[7] Even if Plaintiffs were required to define a relevant market, that is a common issue that will be resolved— either for or against Plaintiffs—on a classwide basis. If Defendants convince the

---

[4] *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) ("*Warfarin Sodium*").

[5] *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) ("*Amgen*") (common issues must predominate as to plaintiffs' claims as a whole, but "Rule 23(b)(3) [. . .] does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.") (emphasis original).

[6] *See, e.g.*, *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 471 (W.D. Pa. 2019) ("*Railway Workers*") ("Plaintiffs [in no-poach case] were not required to set forth factual allegations sufficient to show plausibly the relevant market in which the antitrust impact occurred.").

[7] Mot. at 22–23; Leamer Opp. at 5–6, 17–22.

factfinder that Plaintiffs' definition is wrong, that would be a "fatal similarity" that bolsters predominance and classwide adjudication.[8]

**Second**, Defendants assert various erroneous arguments claiming Plaintiffs cannot show classwide impact and thus cannot satisfy Rule 23(b)(3). Opp. at 25–35. Several of these arguments rely on a misstatement of Plaintiffs' theory of harm. The process of competitive recruiting causes wages to rise—employers offer higher pay for recruits; employers reactively or proactively raise pay to retain employees who can be recruited; and workers learn about competing wages through recruiting attempts. A no-poach agreement restricts this competition—*that's why Defendants made this agreement*—which suppresses pay below competitive levels. ██████

████████████████████████████████████████████████████████████

██████████[9]

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████[10] This evidence, common to the Class, is capable of proving suppressed pay for the entire Class.[11] Defendants argue that the factfinder

---

[8] *Amgen*, 568 U.S. at 470; Mot. at 18–20 & n.85.

[9] MTD Opp. at 1–8; Mot. at 2–3, 10–11; LR1 ¶¶ 7.d, 79–104; LR2 ¶¶ 162–97; MR1 ¶¶ 12–16, 19–22; MR2 ¶¶ 22–32.

[10] Mot. at 2, 6–10, 18–21, 23–33; Leamer Opp. at 7–11, 22–24, 31–35, Manning Opp. at 4–6, 24; LR1 ¶¶ 79–104; LR2 ¶¶ 71–81; MR1 ¶¶ 14–17, 20, 26; MR2 ¶¶ 36–43.

[11] *Hydrogen Peroxide*, 522 F.3d at 311–12.

should find in its favor. But whether a "jury may find [Defendants' theory] more compelling" than Plaintiffs' evidence would be a classwide determination "that Plaintiffs have failed to prove an element of their claim."[12] If Defendants are correct, the entire Class will lose together. This *bolsters* predominance.[13]

**Third**, Defendants argue that Plaintiffs cannot show "injury-in-fact" and thus lack Article III standing because "Plaintiffs' antitrust theory of liability depends on Plaintiffs and class members being unaware of jobs at Defendants[.]" Opp. at 17. This is wrong because it relies on a false description of Plaintiffs' theory of harm.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ *See generally* LR1. As this Court found, suppressed pay is Article III injury-in-fact.[14] Defendants' argument is essentially that the factfinder should conclude Plaintiffs cannot prove injury. Defendants are wrong but, regardless, if Plaintiffs cannot prove injury, the entire Class loses. It is again "fatal similarity" that supports classwide adjudication. *Amgen*, 568 U.S. at 470.

**Fourth**, Defendants argue the Class is not "ascertainable" because Plaintiffs' evidence purportedly cannot identify which Class Members are injured and does not

---

[12] *In re Broiler Chicken Grower Antitrust Litig.*, No. 6:20-md-02977, 2024 WL 2117359, at *23 (E.D. Okla. May. 8, 2024) ("*Broilers*").
[13] *Amgen*, 568 U.S. at 470.
[14] Mem. Op. (Nov. 16, 2021), at 5–7 (ECF No. 66).

provide any objective criteria for determining who is a "healthcare professional" for purposes of defining the Class. Opp. at 35. This is wrong and simply recycles erroneous arguments regarding Plaintiffs' theory and proof of impact. ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Mot. at 3, 12, 34–35. In short, the Class has already been "ascertained."

## II.  ARGUMENT

### A.  Common Questions Predominate Over Individualized Issues.

Plaintiffs satisfy predominance under Rule 23(b)(3), which requires Plaintiffs to show that their claims' essential elements raise common questions "*capable* of proof at trial through evidence that is common to the class rather than individual to its members."[15] Although common issues must predominate over Plaintiffs' claim *as a whole*, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof."[16] "Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such

---

[15] *Hydrogen Peroxide*, 552 F.3d at 311–12 (emphasis added).
[16] *Amgen*, 568 U.S. at 469 (emphasis original) (cleaned up).

individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole."[17]

Defendants do not dispute that the trial will focus on proof of conspiracy,[18] nor that conspiracy evidence is necessarily common, as it focuses on the Defendants' unlawful actions, not the actions of individual plaintiffs.[19] Nor do Defendants challenge that damages are susceptible to classwide proof. Because these are common issues susceptible to classwide proof, predominance is satisfied.[20]

---

[17] *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012); *Railway Workers*, 395 F. Supp. 3d at 504 (quoting *Messner*).

[18] *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 225 (M.D. Pa. 2012) (Plaintiffs "will present common evidence of all major issues regarding Defendants' alleged conspiracy at trial"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666, at *12 (M.D. Pa. Nov. 19, 2007) (same).

[19] *See, e.g.*, *Warfarin Sodium*, 391 F.3d at 528 ("[T]he predominance test is met in an antitrust case because 'consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members[.]'") (quoting *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 483–84 (W.D. Pa. 1999)); *In re Suboxone Antitrust Litig.*, 421 F. Supp. 3d 12, 75 (E.D. Pa. 2019) ("Liability for anticompetitive conduct centers on the defendants' conduct, not the actions of individual class members" and, thus, will be proved classwide); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 151–52 (E.D. Pa. 1979) (diversity of product, marketing and pricing have not been fatal to class certification in numerous cases where conspiracy is the "overriding predominant question").

[20] *See Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175, 2014 WL 7882100, at *40 (E.D.N.Y. Oct. 15, 2014) ("Generally, the plaintiffs' successful showing of common evidence of a violation is a compelling reason to find that predominance is satisfied overall."); *In re Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603, 611 (N.D. Cal. 2009) ("Plaintiffs need not show that there will be common proof on each element of the claim" especially where proof of violation is "the predominant issue[.]") (citation omitted).

### 1. Market definition is a common issue susceptible to classwide evidence.

Defendants argue Plaintiffs must define a relevant market and that Plaintiffs failed to do so, defeating predominance. Defendants are wrong on all counts.

First, Plaintiffs are not required to define a relevant market. Defendants do not dispute that the alleged conspiracy is subject to the *per se* analysis but, instead, argue Plaintiffs must define a relevant market. That has never been the law and is not the law now.[21]

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[21] *Railway Workers*, 395 F. Supp. 3d at 471 ("Plaintiffs [alleging no-poach conspiracy] were not required to set forth factual allegations sufficient to show plausibly the relevant market in which the antitrust impact occurred."); *see also id.* at 480–85 (explaining why the *per se* rule applies); *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 359 (D.N.J. 2001) ("where a *per se* violation is pled, as distinct from a violation subject to 'rule of reason' analysis, no market definition is required").

Defendants' cases are inapposite. In *Bishop v. GNC Franchising LLC*, the court rejected the plaintiffs' assertion that the *per se* rule applied. 403 F. Supp. 2d 411, 422 (W.D. Pa. 2005). *Bishop* then stated in dicta that a market must be defined even in *per se* cases under Section 1 of the Sherman Act, but the cases it cited do not support the proposition. In *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, the court held that the Section 1 claim involved a *vertical* non-price restraint subject to the rule of reason. 922 F. Supp. 1055, 1060 (E.D. Pa. 1996). Likewise, in *Bogan v. Hodgkins*, the court held that the alleged agreement was "not a classic interfirm horizontal restraint of trade," but was rather "akin to an *intra* firm agreement," and thus was not subject to the *per se* rule. 166 F.3d 509, 515 (2d Cir. 1999).

One court in this Circuit disapproved of *Bishop*'s dicta. *Mumford v. GNC Franchising LLC*, 437 F. Supp. 2d 344, 351–52 (W.D. Pa. 2006) ("Defendants first

LR1 ¶¶ 15–20, § IV; Mot. at 10 & n.25. 

This evidence is all common to the Class.

Defendants nevertheless argue this evidence is "deficient, as it is based on Prof. Leamer's unreliable analysis." Opp. at 22–23. Defendants rehash arguments from their *Daubert* challenge to Dr. Leamer's opinion, and they rely on their own

---

argue that, as a threshold matter, plaintiffs asserting antitrust injury under section 1 or section 2 of the Sherman Act must plead a relevant market. *See Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 419 (W.D. Pa. 2005). This court disagrees.").

    *Borozny v. Raytheon Techs. Corp.* is inapposite because it applies Second Circuit precedent, which does not apply here and which simply requires a plaintiff to "describe" the relevant market in the complaint. No. 3:21-cv-1657, 2023 WL 348323, at *10, n.6 (D. Conn. Jan. 20, 2023). In *Borozny*, the court itself redrew the relevant market because plaintiffs offered "no allegations" of certain markets. *Id.* at *11. Here, Plaintiffs define the proposed market with extensive record and expert evidence.

[22] LR1 ¶¶ 54–62; LR2 ¶¶ 48–54.

[23] LR1 ¶¶ 44, 47, 54–57, 93, 110; LR2 ¶¶ 47–49, 63–64, 69, 191.

[24] LR1 ¶¶ 59–78; LR2 ¶¶ 7, 9–38, 192–212, 228–39.

expert's opinion to contend that a proper assessment of relevant market would necessitate "individualized inquir[ies]." Opp. at 23–25. Specifically, Defendants assert that Class Members with different categories of jobs operate in different relevant markets, distinguished both by geographic scope (*e.g.*, national searches for specialists versus local facilities for more interchangeable professionals) and by type of employer (*e.g.*, hospitals that employ such specialists vs. non-hospital employers like nursing homes). Opp. at 23–24. Defendants are again wrong.

Plaintiffs have responded to Defendants' attacks on Dr. Leamer's analyses in detail in both the Leamer Rebuttal Report and the Leamer Opposition.



[25]

[26]

[27] Moreover, Defendants' argument that doctors are not substitutes for

---

[25] Leamer Opp. at 5–6, 19–21; LR1 ¶¶ 60–63, LR2 ¶¶ 5, 46–62.
[26] LR2 ¶¶ 57–60.
[27] Leamer Opp. at 18–19; LR1 ¶¶ 47, 64–73, 90; LR2 ¶¶ 64–70.

nurses (and vice versa), Opp. at 23, is beside the point. The question is what the workers, not the employers, would view as substitutes.[28]

Third, courts routinely find that antitrust market definition is a common question because it does not depend on individual plaintiff's circumstances.[29] Plaintiffs set forth classwide evidence defining the relevant market. Defendants dispute it, but the predominance analysis "is not a merit's determination" and the question of what "issues might arise if the relevant market is not found to be" what Plaintiffs assert is not a "question that matters" under Rule 23(b)(3).[30] Predominance is about whether a claim raises common questions susceptible to classwide evidence

---

[28] *See Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 337 (3d Cir. 2018) ("Critically, in a buyer-side conspiracy case, seller rather than consumer or purchaser behavior is the focus. The market is comprised of buyers who are seen by sellers as being reasonably good substitutes.") (cleaned up).

[29] *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 197 (E.D. Pa. 2016) ("*Mushroom*") ("whether or not there are separate [geographic] markets or one market [is] a common issue") (cleaned up); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 846 (D.N.J. 2015) ("Defining the relevant market focuses on common data, expert analysis, and economic tests; such proof generally does not vary by class member."); *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1178–79 (10th Cir. 2023) (relevant market challenges constitute "class-wide rebuttal evidence" the resolution of which is "a matter for the jury"); *Meyers v. Sw. Bell Tel. Co.*, 181 F.R.D. 499, 505 (W.D. Okla. 1997) ("Clearly the issues of market power and the relevant market will be common to all class members.").

[30] *See Mushroom*, 319 F.R.D. at 195–97 (defendants proposed competing relevant market definitions of geographic submarkets).

and not who wins.[31] If the jury agrees with Defendants, "that would be class-wide evidence that Plaintiffs have failed to prove an element of their claim."[32]

### 2.   Impact is a common issue susceptible to classwide evidence.

Plaintiffs set forth abundant classwide evidence capable of showing classwide impact, following "a roadmap widely accepted in antitrust class actions" for demonstrating classwide impact: (1) the NPA reduced competition for healthcare workers, and thereby generally suppressed pay, and (2) this suppression was experienced by all or nearly all Class Members. Mot. at 23–25.

### a.   Defendants misstate Plaintiffs' theory of impact.

Defendants claim that impact cannot be established without individualized inquiry because Plaintiffs' "theory of liability depends on Plaintiffs and class members being unaware of jobs at Defendants," Opp. at 17, and that Plaintiffs must investigate whether each Class Member was aware of other opportunities or would have been poached but for the NPA. Opp at 26; *see also id.* at 17–18. That is wrong.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[31] *See Amgen*, 568 U.S. at 481 ("even a definitive rebuttal on the issue [. . .] would not undermine predominance").

[32] *See Broilers*, 2024 WL 2117359, at *23–27 (noting Defendant's challenge to alleged national market "may be correct" and if "accepted by a trier of fact, these arguments [. . .] would likely defeat Plaintiffs' claim, but they would not require individualized inquiry. They would defeat the claim with evidence common to the class.").

 [33] Mot. at 25–33. This is well-established in the law[34]

[35] [36]

[37] If the factfinder accepts Plaintiffs'

evidence, classwide impact will be proven with evidence common to each Class

Member. Defendants dispute that evidence supports this theory of harm, but that is

a common issue for the Class.

###### b. Defendants' criticisms of Dr. Leamer are wrong on the merits.

Defendants' criticisms of Dr. Leamer's analysis do not refute Plaintiffs'

showing of classwide evidence of impact. First, Defendants claim that "Plaintiffs

---

[33] LR1 ¶¶ 169-221; LR2 ¶¶ 162-239.

[34] *See Broilers*, 2024 WL 2117359, at *23 ("Plaintiffs allege all class members were injured by the NPA, whether or not they would have or could have switched Integrators, because the anticompetitive effects of the Agreement—suppression of Grower pay—were transmitted broadly across the class."); *Railway Workers*, 395 F. Supp. 3d at 506–14 (recognizing that, in no-poach cases, a showing of pay structure emphasizing internal equity is the standard means of showing common impact.); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 300 (N.D. Cal. 2016) (plaintiffs' expert's "conclusion that increases in compensation from cold calling would tend to diffuse through Defendants' salary structure, impacting class members generally rather than just the individuals who received the cold calls is reasonable"); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1192 (N.D. Cal. 2013) ("*High-Tech*") (considering documentary, economic, and econometric evidence to conclude "all [] employees—not just those who would have received cold calls but for the anti-solicitation agreements—may have been impacted by the agreements").

[35] LR1 ¶¶ 184–221; LR2 ¶¶ 165–212; MR1 ¶¶ 17–26, 52–57; MR2 ¶¶ 22–32.

[36] Mot. at 8–9, 23–33; Leamer Opp. at 9–11, 22–24.

[37] LR2 ¶¶ 170–197; MR2 ¶¶ 22–32.

conduct no mobility analysis and present no evidence that limited mobility affected any class member." Opp. at 27. But the relevant inquiry for antitrust impact is suppressed pay,[38] ████████████████████████████████

████████████████████████████████████████[39] ████████████

████████████████████████████████████████████

████████████████████████████████████████[40]

Second, Defendants argue Plaintiffs cannot show classwide harm because Dr. Leamer's impact methodology predicts harm for supposedly unharmed class members and yields "false positives." Opp. at 28–30. ████████████████

████████████████████████████████ Leamer Opp. at 26–27. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[38] *See also* Mem. Op. (Nov. 16, 2021), at 7–8 (ECF No. 66) (this Court's opinion finding that suppressed pay is injury); *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d 968, 980 (N.D. Ill. 2022) ("Financial injuries such as lost compensation are prototypical injuries[.]") (internal quotations omitted); *Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017) (subsequent history omitted) ("financial harm is a classic and paradigmatic form of injury in fact") (cleaned up).
[39] LR1 ¶¶ 79–104, 169–83, 222–29; LR2 ¶¶ 137–61, 240.
[40] Leamer Opp. at 25–26, 30–31; LR1 ¶¶ 95–104, 124–49; LR2 ¶¶ 12–35. Nor is there any requirement that a mobility analysis be statistical. Manning Opp. at 15–19. Dr. Manning did not "testif[y] that a statistical analysis is needed[.]" Opp at 27.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Manning Dep. Tr. 114:17–115:8.



*See* LR2 §§ V.A, VI.B. Defendants' claims that other uninjured employees cannot be identified without individualized inquiry, Opp. at 28–29, also mischaracterizes Plaintiffs' impact theory. *See supra* § II.A.2.a.

Third, Defendants raise the same criticisms of Dr. Leamer's model raised in their *Daubert* motion against him, Opp. at 30–31, but Dr. Leamer refuted each in the Leamer Rebuttal Report:

- LR2 § V.B.2.

- *Id.* ¶¶ 221–27.

- *Id.* §§ V.C.2–3.

- *Id.* § V.C.1.

- *Id.* § V.C.4.

14



*Id.* § V.A.2.

*d.* ¶¶ 154–55.

Defendants fail to respond to any of these rebuttals, here or in their *Daubert* motion against Dr. Leamer.

Finally, Defendants argue Dr. Leamer's analysis should be rejected because he does not show Defendants imposed a "rigid" pay structure, but Defendants do not explain what that means. ██████████████████████████ ████████████████████████████████ LR2 ¶ 168 (emphasis added). Nor do Defendants' citations support such a requirement to show impact.[41] For example,

---

[41] Defendants continue to misrepresent the initial class certification decision in *High-Tech*. Opp. at 32–33. As explained in the Leamer Opposition, the *High-Tech* court initially rejected certifying a class that included *all* the defendants' employees (from secretaries to electrical engineers) based on a simple correlation analysis, but the court ultimately certified a very broad "technical employee" class based on *the very same type of statistical analysis Dr. Leamer uses in this case*. Leamer Opp. at 28–31; *High-Tech*, 985 F. Supp. 2d at 1210–13.

Further, in *Seaman v. Duke Univ.*, the court refused to certify the "non-faculty" class not because of some "rigidity" of wage structure requirement, but rather because the alleged no-poach did not apply to the non-faculty class members and "plaintiff's briefing [did] not fully flesh out this theory[.]" No. 1:15-cv-462, 2018 WL 671239, at *6–7 (M.D.N.C. Feb. 1, 2018).

Finally, in *Weisfeld v. Sun Chem. Corp.*, the Third Circuit found plaintiff put forward no classwide evidence of impact, as plaintiff relied primarily on presumed impact and submitted an expert declaration limited to "bare conclusions" with "no

in *Railway Workers*, the court dismissed the complaint where, unlike here, the plaintiffs sought to represent a nationwide class of "all employees regardless of title, position, or status" across eleven defendants, "including employees with skills specific to the railway equipment supply industry *and employees without skills specific to that industry*[.]" 395 F. Supp. 3d at 506, 514–16 (emphasis added). The court also found that the plaintiffs failed to allege a mechanism for classwide impact, but that "other courts in wage suppression or no-hire cases have certified classes and found antitrust impact could be proven on a class-wide basis when there is evidence that the class members' wages were correlated and the defendant-employers emphasized internal or external equality, which ensured individuals performing similar jobs are compensated on a similar level." *Id.* at 506–13 (collecting cases) (cleaned up). That is precisely what Plaintiffs' evidence and expert analysis show, and many courts have found similar evidence supports classwide impact.[42] The analysis in *Railway Workers* supports certifying the class in this case.

_____

independent analysis or evidence." 84 F. App'x 257, 262–64 (3d Cir. 2004). The court also noted that evidence, such as "whether the salaries for all members of the proposed class exhibit any sort of correlation over time," could be classwide evidence of harm. *Id.* at 264. Plaintiffs offer more than that here.

[42] Mot. at 28–33. Defendants try to distinguish these cases as involving "much narrower classes." Opp. at 22, n.26. But none of these cases predicated class certification on a finding that the classes involved a narrow set of job types; they instead found that common evidence of internal equity supported predominance despite defendants' claims of variations between different types of employees within the class. *See Nitsch*, 315 F.R.D. at 300, 303 (certifying class of multiple job types

### c. Proof of impact is a classwide issue.

Defendants do not argue that Plaintiffs' impact evidence is individualized. Defendants argue their evidence should prevail. This is wrong but, regardless, class certification is not the stage to resolve the merits questions.[43] Moreover, criticisms regarding admitted expert opinions "go to the persuasiveness of [the] evidence and do not negate the fact that [the] evidence is common proof."[44] Whether Plaintiffs' evidence suffices to prove impact is a common question that "would apply with common force to the entire class."[45] Where a defendant "fails to engage with Plaintiffs' theory of impact" and instead "presupposes a theory of impact distinct from the one Plaintiffs set forth," a "jury may find [Defendants'] theory more compelling, but that would be class-wide evidence that Plaintiffs have failed to prove

---

and finding that "documentary evidence and expert report support Plaintiffs' theory that Defendants had company-wide compensation structures that placed a premium on internal equity"); *Broilers*, 2024 WL 2117359, at *20–21 (certifying class despite claims that class member pay varied extensively based on equipment, geography, and employer; rejecting argument that "Plaintiffs must adduce 'evidence that the compensation structures [. . .] were so rigid that the compensations of all [nationwide] class members were tethered together.'"); *Seaman*, 2018 WL 671239, at *6–7 (non-faculty class rejected because no-poach did not apply to non-faculty and plaintiffs offered separate theory of impact that was not fleshed out in briefing).
[43] *Broilers*, 2024 WL 2117359, at *21–22 (criticisms of common evidence of impact "may be accurate, but that is for a trier of fact to determine."); *Tyson Foods*, 577 U.S. at 459.
[44] *Seaman*, 2018 WL 671239, at *9; *see also, e.g.*, *Tyson Foods*, 577 U.S. at 459.
[45] *Broilers*, 2024 WL 2117359, at *22.

an element of their claim."[46] Defendants' arguments do precisely that.[47] But the question of which theory should control is common to the Class. *Id.*

## B. Defendants' Standing Arguments Are Meritless and Untimely.

Defendants argue Plaintiffs lack Article III standing because "Plaintiffs' antitrust theory of liability depends on Plaintiffs and class members being unaware of jobs at Defendants, impacting their ability to negotiate salaries, and suppressing their job mobility and wages." Opp. at 17 (cleaned up). This is wrong. This Court previously held that Plaintiffs satisfy Article III standing where the NPA "artificially reduced their wages."[48] ███████████████████████████ LRI §§ V–VI; MR1 §§ IV–VI. Defendants' argument also relies on the same misstatement of Plaintiffs' theory of impact that undermines Defendants' predominance argument.

---

[46] *Id.* (cleaned up). *See also, e.g.*, *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015) ("Further, predominance does not require that common 'questions will be answered, on the merits, in favor of the class.'") (quoting *Amgen*, 568 U.S. at 459)).

[47] Opp. at 25–26 (claiming injury depends on solicitation and knowledge), 27 (asserting statistical analysis of mobility is necessary and that movement, not mobility, is appropriate form of analysis), 33–34 (asserting that plaintiffs must show rigidity in a pay structure in order to show common impact).

[48] Mem. Op. (Nov. 16, 2021), at 6–7 (ECF No. 66); s*ee also Cottrell*, 874 F.3d at 163 (subsequent history omitted) ("financial harm is a classic and paradigmatic form of injury in fact") (cleaned up); *Robinson v. Jackson Hewitt, Inc.*, No. 19-9066, 2019 WL 5617512, at *3 (D.N.J. Oct. 31, 2019) (finding allegations of "reduced employment mobility and suppressed compensation" sufficient for injury).

*See supra* § II.A.2.a. ████████████████████████████████████

████████████████████████████████ LR2 § VI.B.[49]

## C.  The Class Is Easily Ascertainable.

Defendants argue the Class is not ascertainable because Plaintiffs purportedly

failed to provide a method for identifying injured Class Members or to identify

which "other healthcare professionals" are included in the Class. Opp. at 35. Neither

is true.



Thus, there is no need for "extensive and individualized fact-finding or mini-trials"

---

[49] Defendants' reliance on *Weisfeld* is misplaced. Unlike here, plaintiff's expert in *Weisfeld* performed no analysis and instead "provided only 'naked conclusions' that common proof would demonstrate injury to class members." 84 F. App'x at 261. The plaintiff in *Weisfeld* also alleged a different theory of harm that included "deprivation of new job opportunities," *id.* at 263, which the *Weisfeld* court found would require individualized analysis as to whether a given employee in fact sought employment elsewhere. Defendants also cite authority that this Court already discounted in its motion to dismiss on grounds that the case "did not involve [NPAs]." Mem. Op. (Nov. 16, 2021), at 6–7 (ECF No. 66) (discussing *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016)).

[50] LR1 ¶¶ 21–24, Ex. 4.

[51] As to Defendants' argument that "other healthcare professionals [. . .] now inexplicably excludes [patient access representatives,]" Defendants cite a paragraph in an inoperative version of Plaintiffs' complaint filed three years ago before Defendants produced *any* data in the case. Opp. at 35, n.34. That Plaintiffs have refined the definition of their Class does not indicate that Class Members are not ascertainable under the operative Class definition.

to identify injured class members. Opp. at 35. Defendants' contention otherwise is premised on their erroneous assertion that there are swaths of uninjured Class Members which, in turn, is based on a misstatement of Plaintiffs' theory of impact.[52]

Defendants' cases are inapposite. Opp. at 35. For example, in *In re Niaspan Antitrust Litig.*, the proposed class was of *indirect purchasers* of pharmaceuticals who could not be identified in the available data.[53] In *Carrera v. Bayer Corp.*, there was no evidence that the retailers had the data to identify the proposed class of purchasers.[54] Here, the Class is employees who are all identified in Defendants' payroll data.[55]

## III.  CONCLUSION

The Court should grant Plaintiffs' motion to certify the proposed Class.

---

[52] *Id.* (citing section detailing allegations of individualized inquiries necessary to determine impact); *see supra* § II.A.2.a.

[53] *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 134 (3d Cir. 2023).

[54] *Carrera v. Bayer Corp.*, 727 F.3d 300, 308–09 (3d Cir. 2013).

[55] *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 480 (3d Cir. 2020) (explicitly distinguishing *Carrera*, holding that plaintiffs "obtained thousands of records from [defendant] and have explained how they can use them to identify" class members).

Dated: August 30, 2024                    Respectfully submitted,

*/s/ Adam J. Zapala*                       */s/ Eric L. Cramer*
Adam J. Zapala (*Pro Hac Vice*)            Eric L. Cramer (PA Bar No. 69289)
Elizabeth T. Castillo (*Pro Hac Vice*)     Shanon Jude Carson (PA Bar No.
**COTCHETT, PITRE &**                      85957)
**McCARTHY, LLP**                          Candice J. Enders (PA Bar No. 92107)
840 Malcolm Road                           Michael J. Kane (PA Bar No. 73998)
Burlingame, CA 94010                       Michaela L. Wallin (*Pro Hac Vice*)
Phone: (650) 697-6000                      J. Taylor Hollinger (PA Bar No.
Fax: (650) 697-0577                        332706)
azapala@cpmlegal.com                       **BERGER MONTAGUE PC**
ecastillo@cpmlegal.com                     1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103
                                           Phone: (215) 875-4604
                                           Fax: (215) 875–5707
                                           ecramer@bm.net
                                           scarson@bm.net
                                           cenders@bm.net
                                           mkane@bm.net
                                           mwallin@bm.net
                                           thollinger@bm.net

                                           Daniel J. Walker (*Pro Hac Vice*)
                                           **BERGER MONTAGUE PC**
                                           2001 Pennsylvania Avenue NW,
                                           Suite 300
                                           Washington, DC 20006
                                           Phone: (202) 559-9745
                                           dwalker@bm.net

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Adam J. Zapala, hereby certify that on August 30, 2024, I filed a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in reply to Defendants' Joint Opposition to Plaintiffs' Motion for Class Certification via ECF and mail to the Clerk of Court. I further certify that the same documents were served via email upon all counsel of record in this matter.

<div align="right">

*/s/  Adam J. Zapala*
Adam J. Zapala

</div>