# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE GEISINGER SYSTEM SERVICES AND EVANGELICAL COMMUNITY HOSPITAL HEALTHCARE WORKERS ANTITRUST LITIGATION | No. 4:21–cv–00196 <br><br> Chief Judge Matthew W. Brann |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, PRELIMINARY APPROVAL OF THE SETTLEMENTS, PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

INTRODUCTION .................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................4

    I.     Investigation and Filing of the Action..................................................5

    II.    Defendants' Motion to Dismiss the CCAC ..........................................5

    III.   Fact Discovery......................................................................................6

    IV.   Expert Discovery..................................................................................7

    V.    Class Certification and *Daubert* Proceedings .....................................8

    VI.   Settlement Negotiations .......................................................................8

THE PROPOSED SETTLEMENTS ....................................................................9

ARGUMENT .....................................................................................................10

    I.     The Proposed Class Should Be Certified For
        Settlement Purposes ..........................................................................10

        A.    The Requirements for Rule 23(a) Are Satisfied for Settlement
            Purposes .................................................................................12

        B.    The Requirements of Rule 23(b)(3) Are Satisfied for Settlement
            Purposes .................................................................................15
            1.    The Settlement Class Satisfies the Predominance
                Requirement of Rule 23(b)(3) ........................................16
            2.    The Settlement Class Satisfies the Superiority
                Requirement of Rule 23(b)(3) ........................................18

i

3.      Lead Counsel Meet the Requirements of Rule 23(g).....18

II.    THE SETTLEMENTS SHOULD BE PRELIMINARILY
       APPROVED .......................................................................................19

       A.     Standards for Preliminary Approval of a Class Action
              Settlement..............................................................................19

       B.     The Settlements Satisfy All of the Requirements of Rule
              23(e)(2) for Preliminary Approval ............................................21
              1.      The Settlement Class Has Been Adequately
                      Represented....................................................................21
              2.      The Settlements Were Negotiated at Arm's Length .......22
              3.      The Relief Provided by the Settlements Is More Than
                      Adequate .......................................................................23
              4.      The Settlements Treat Class Members Equitably...........33
              5.      The Extent of Discovery Completed and the Stage of the
                      Proceedings....................................................................33
              6.      The Risk of Maintaining Class Actions Status ..............34

III.   Notice of the Settlements Should be Approved ...................................35

IV.    The Court Should Appoint A.B. Data, Ltd. as Claims Administrator.37

V.     The Court Should Appoint Huntington as Escrow Agent...................37

VI.    The Final Approval Hearing Should be Scheduled.............................38

CONCLUSION .......................................................................................39

ii

# <u>TABLE OF AUTHORITIES</u>

**Page No.**

**Cases**

*Am. Sales Co. v. SmithKline Beecham Corp.*,
  274 F.R.D. 127 (E.D. Pa. 2010) .................................................................11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................11, 16, 18

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013)......................................................................................16

*In re Auto. Refinishing Paint Antitrust Litig.*,
  MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003).....................22

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007).............................................................34

*In re Auto. Refinishing Paint Antitrust Litig.*,
  MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004).....................20

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .............................................................................13

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) .........................................................................23

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...........................................................................33

*Binotti v. Duke Univ.*,
  No. 1:20-cv-00470, 2021 U.S. Dist. LEXIS 225003 (M.D.N.C.
  Aug. 30, 2021) ..............................................................................................32

*In re Blood Reagents Antitrust Litig.*,
  No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015).....................13, 14

*Caddick v. Tasty Baking Co.*,
  No. 2:19-cv-02106-JDW, 2021 WL 1374607 (E.D. Pa. Apr. 12,
  2021) ..............................................................................................................23

iii

*Castro v. Sanofi Pasteur Inc.*,
134 F. Supp. 3d 820 (D.N.J. 2015) ............................................................ 14, 16

*In re CertainTeed Fiber Cement Siding Litig.*,
303 F.R.D. 199 (E.D. Pa. 2014) ................................................................. 25

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995) .............................................................. 26

*Chimenti v. Wetzel*,
No. 15-3333, 2018 WL 2388665 (E.D. Pa. May 24, 2018) .......................... 13

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ................................................................ 11

*In re Chocolate Confectionary Antitrust Litig.*,
No. 1:08-md-01935, 2011 U.S. Dist. LEXIS 151516 (M.D. Pa.
Dec. 12, 2011) ............................................................................................ 11

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019) ................................................................. 23

*Davis v. Kraft Foods N. Am., Inc.*,
No. 03-6060, 2007 WL 9807443 (E.D. Pa. Aug. 10, 2007).......................... 32

*Davis v. Kraft Foods N. Am., Inc.*,
No. 03-6060, 2007 WL 9807445 (E.D. Pa. Aug. 10, 2007).......................... 30

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012) ....................................................................... 15

*In re: Domestic Drywall Antitrust Litig.*,
322 F.R.D. 188 (E.D. Pa. 2017) ................................................................. 10

*In re Domestic Drywall Antitrust Litig.*,
No. 2:13-md-02437, ECF No. 427 (E.D. Pa. July 18, 2016) ....................... 11

*Ebner v. Merchs. & Med. Credit Corp.*,
No. 14-06882, 2017 WL 1079966 (E.D. Pa. Mar. 22, 2017)....................... 32

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ....................................................................... 19

iv

*In re Elec. Carbon Prods. Antitrust Litig.*,
447 F. Supp. 2d 389, 400 (D.N.J. 2006)......................................................22

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Prac. and
Antitrust Litig.*,
No. 17-md-2785, ECF No. 2594 (D. Kan. Mar. 11, 2022) ..........................38

*In re Fasteners Antitrust Litig.*,
No. 08-md-1912, 2014 WL 285076 (E.D. Pa. Jan. 24, 2014)......................13

*In re Fasteners Antitrust Litig.*,
No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014)......................30

*In re Flonase Antitrust Litig.*,
291 F.R.D. 93 (E.D. Pa. 2013) ....................................................................30

*Fuentes v. Jiffy Lube Int'l, Inc.*,
No. 2:18-cv-5174, 2024 U.S. Dist. LEXIS 94102 (E.D. Pa. May
28, 2024)......................................................................................................32

*Gates v. Rohm & Haas Co.*,
248 F.R.D. 434 (E.D. Pa. 2008) ..................................................................11

*Gen. Motors Corp. Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................*passim*

*In re Generic Pharm. Pricing Antitrust Litig.*,
No. 16-MD-2724 , ECF No. 2385 (E.D. Pa. Mar. 9, 2023) .........................27

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).....................................................................................16

*Henry v. Brown Univ.*,
No. 22-cv-0125, ECF No. 782 (N.D. Ill. Jan. 24, 2025) ..............................38

*Jones v. Commerce Bancorp*, Inc.,
No. 05-5600-RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) ...................20

*In re K-Dur Antitrust Litig.*,
No. 01-cv-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008),
aff'd, 686 F.3d 197 (3d Cir. 2012), *reinstated*, No. 10-2077,
2013 WL 5180857 (3d Cir. Sept. 9, 2013) ......................................11, 13, 15

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
No. 06-cv-01797-MSG, 2015 WL 12843830 (E.D. Pa. Oct. 15,
2015) ................................................................................................27

*Lake v. First Nationwide Bank*,
900 F. Supp. 726 (E.D. Pa. 1995).................................................25

*Le v. Zuffa, LLC*,
No. 15-cv-1045, ECF No. 1053 (D. Nev. Oct. 23, 2024) .............38

*Lewis-Abdulhaadi v. Union Sec. Ins. Co.*,
No. 21-cv-03805-WB, 2025 WL 1510577 (E.D. Pa. Mar. 20,
2025) ................................................................................................27

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003).......................................22, 25

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10,
2020) *aff'd* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov.
16, 2022) ..........................................................................................25

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ...........................................................12

*Mehling v. N.Y. Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007) .................................................35, 36

*Mehling v. New York Life Ins. Co.*,
248 F.R.D. 455 (E.D.Pa.2008) .......................................................28

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) ...........................................................12

*Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 12-cv-3824, 2014 WL 631031 (E.D. Pa. Feb. 18, 2014) .......11

*Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*,
No. 12-3824, 2014 WL 12778314 (E.D. Pa. Sept. 15, 2014) .......27

*In re Nat'l Football League Players Concussion Injury Litig.*,
775 F.3d 570 (3d Cir. 2014) ...........................................................11

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ...................................................................*passim*

*In re Neurontin Antitrust Litig.*,
Nos. 02-cv-1390, 2011 WL 286118 (D.N.J. Jan. 25, 2011)..........................11

*In re Neurontin Antitrust Litig.*,
No. 02-cv-1830, 2014 WL 12962880 (D.N.J. Aug. 6, 2014) ......................30

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ..........................................................................14

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)...............................................................................17

*In re Niaspan Antitrust Litig.*,
397 F. Supp. 3d 668 (E.D. Pa. 2019)..................................................10, 13, 14

*In re Opana ER Antitrust Litig.*,
No. 14-cv-10150, ECF No. 1069 (N.D. Ill. Aug. 24, 2022)..........................38

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
176 F.R.D. 158 (E.D. Pa. 1997) ....................................................................22

*In re Papa John's Emp. and Franchisee Emp. Antitrust Litig.*,
No. 3:18-cv-825-BJB, 2025 U.S. Dist. LEXIS 152012 (W.D.
Ky. Aug. 7, 2025) ...........................................................................................32

*In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator
Prods. Litig.*,
347 F.R.D. 113 (W.D. Pa. 2024) ....................................................................36

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 278 (E.D. Pa. 2012) ...............................................................14, 30

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ...........................................................................32

*In re Railway Indus. Emp. No-Poach Antitrust Litig.*,
No. 18-798, 2020 U.S. Dist. LEXIS 249904 (W.D. Pa. Aug. 26,
2020) ...............................................................................................................33

vii

*In re Remicade Antitrust Litig.*,
    No. 17-cv-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ...................28

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ..........................................................................17

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ..........................................................................18

*Sheinberg v. Sorensen*,
    606 F.3d 130 (3d Cir 2010) ..........................................................................19

*In re Shop-Vac Mktg. & Sales Pracs. Litig.*,
    No. 12-md-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016)...................31

*Silvis v. Ambit Energy L.P.*,
    326 F.R.D. 419 (E.D. Pa. 2018) ...................................................................11

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust*
    *Litig.*,
    No. 13-md-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ...............30, 31

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone)*
    *Antitrust Litig.*,
    421 F. Supp. 3d 12 (E.D. Pa. 2019), *aff'd* 967 F.3d 264 (3d Cir.
    2020) .......................................................................................................10, 15

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) (Scirica, C.J., concurring)..............12, 26, 28, 31

*Teva Pharm. USA Inc. v. Abbott Labs.*,
    252 F.R.D. 213 (D. Del. 2008) .....................................................................17

*Thomas v. NCO Fin. Sys., Inc.*,
    No. CIV.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31,
    2002) ..............................................................................................................20

*In re Tricor Direct Purchaser Antitrust Litig.*,
    No. 05-cv-340, 2009 WL 10744518 (D. Del. Apr. 23, 2009)......................27

*Tyson Foods*, *Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)......................................................................................17

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
No. 2:06-CV-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ...............27

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).................................................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ...........................................................................24

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-6019, 2021 WL 3276148 (E.D. Pa. July 30, 2021).........................30

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
No. 04-cv-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008) .....................11

*Whiteley v. Zynerba Pharm., Inc.*,
No. 19-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ........................22

## Federal Rules of Civil Procedure

Rule 23 ...............................................................................................*passim*

Rule 54 ........................................................................................................30

## Other Authorities

Manual for Complex Litigation
§ 21.632 (4th ed. 2004) ................................................................................11

**<u>TABLE OF ABBREVIATIONS</u>**

| | |
|---|---|
| Central Pennsylvania | A region in central Pennsylvania that includes Union, Snyder, Northumberland, Montour, Lycoming, and Columbia counties and the cities of Danville and Lewisburg, where Geisinger Medical Center and Evangelical Community Hospital are headquartered. |
| The Class | All natural persons who worked at Geisinger or Evangelical as Healthcare Workers from January 1, 2014 through August 5, 2020. Excluded from the Class are members of Defendants' boards of directors, Defendants' C-Suite Executives, and any and all judges assigned to hear or adjudicate any aspect of this litigation and their judicial staff. |
| Lead Counsel or Class Counsel | Berger Montague PC and Cotchett, Pitre & McCarthy, LLP |
| Class Member | A member of the Class (*see above*) |
| Class Period | January 1, 2014 to August 5, 2020 |
| Class Representatives | Nichole Leib and Kevin Brokenshire |
| Complaint or Compl. | Consolidated Amended Class Action Complaint (Feb. 2, 2023) (ECF No. 101) |
| Defendants | Geisinger System Services and Evangelical Community Hospital |
| Evangelical | Evangelical Community Hospital |
| Geisinger | Geisinger System Services |
| Healthcare Workers | Nurses, physicians, advanced practitioners, medical support personnel, and other healthcare professionals (*see* LR1 ¶ 21) |
| Named Plaintiffs | Nichole Leib and Kevin Brokenshire |

## INTRODUCTION

Nichole Leib and Kevin Brokenshire (collectively, "Plaintiffs"), on behalf of themselves and the proposed Settlement Class (defined below), entered into settlement agreements ("Settlement Agreements") with Defendant Geisinger System Services ("Gesinger") and Evangelical Community Hospital ("Evangelical") (collectively, "Defendants"). Under the terms of the proposed Settlement Agreements, Geisinger will pay $19 million and Evangelical will pay $9.5 million for the benefit of the proposed Settlement Class, for a total of $28.5 million plus interest accrued ("Settlement Amount").[1] In exchange, Plaintiffs agreed to dismiss this litigation and release certain claims against Defendants and related parties.

Taking into account the risks and potential damages, the Settlements are an excellent result for the Settlement Class. The combined $28.5 million recovery— achieved after more than four years of hotly-contested litigation—provides

---

[1] The Settlement Agreements are attached as Exhibits 1 and 2 to Joint Declaration of Eric L. Cramer and Adam J. Zapala In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlements and Approval of the Notice Plan (the "Joint Decl."). Citations to the Settlement Agreements will use the format "SA ¶ _." For ease of reference, and because the Settlement Agreements are similarly structured, citations to provisions in the Settlement Agreements will cite to a single agreement unless expressly identified otherwise with the name of the settling Defendant. All capitalized terms in this Memorandum of Law shall have the same meanings as set forth in the Settlement Agreements, unless expressly defined otherwise herein.

substantial, timely compensation to individuals who, Plaintiffs allege, were harmed in the form of artificially suppressed pay due to Defendants' alleged no-poach agreement. This recovery compares favorably with other, similar no-poach antitrust litigation (as discussed at Section II.B.3.iv *infra*).

The settlements offer members of the Settlement Class substantial, certain, and immediate recoveries while avoiding the risks of loss or significant delay inherent in class certification, summary judgment, trial, and potential appeal— including the risk that the Settlement Class could recover nothing or less than the Settlement Amount after years of additional litigation risk and delay. Under the proposed Plan of Allocation, if approved, each member of the Settlement Class would receive a minimum payment of $250 and then their *pro rata* recovery with the estimated average recovery per class member being $1,500, after deductions for attorneys' fees, litigation expenses, and service awards for Ms. Leib and Mr. Brokenshire.

The Settlements are fair and reasonable and satisfy the requirements of Fed. R. Civ. P. 23(e). Counsel for all parties are highly experienced in antitrust litigation and well-positioned to assess the risks and merits of the case. As detailed below and in the supporting documents, this case presented enormous litigation risks at every stage. Plaintiffs pursued a complex antitrust claim arising in the labor market. While the Department of Justice ("DOJ") Complaint contained certain

2

allegations of a potential no-poach agreement between Defendants, it did not itself challenge the agreement or pursue litigation or an enforcement action relating to any such agreement between Defendants. Without the assistance of the government, Plaintiffs undertook sole responsibility for investigating Defendants' alleged conduct, formulating the claims and legal theories, developing the factual record, and advancing the case through all phases of litigation. Moreover, as described below, Plaintiffs hired and worked closely with two preeminent economists—one (Prof. Alan Manning) a renowned labor economist and the other (Prof. Edward Leamer) a renowned econometrician and labor economist. Sadly, and further complicating this litigation, Prof. Leamer was diagnosed with and passed away from complications from amyotrophic lateral sclerosis (ALS) during the litigation.

Defendants vigorously contested the litigation every step of the way, including on liability, the admissibility of Plaintiffs' expert opinions, class certification, the existence and scope of the alleged conspiracy (including timing and job classifications), Plaintiffs' damages modeling, Plaintiffs' standing, and numerous other discrete issues raised over the course of the litigation. Had these challenges been successful, Plaintiffs faced the possibility that class certification would be denied, that key expert evidence would be excluded, or that the amount of recoverable damages would be reduced or eliminated entirely, among other

challenges. Indeed, the exclusion of Plaintiffs' expert testimonies in their entirety, which Defendants sought, would have likely resulted in summary judgment being granted for Defendants. While Plaintiffs believe they would have prevailed on all these issues, the risk of losing on one or more of them was real. In the face of material risks of an adverse outcome or the potential for lengthy delays and appeals, the settlements represent a meaningful recovery for the Settlement Class.

Plaintiffs therefore ask—and Defendants do not oppose—that the Court enter the accompanying proposed preliminary approval order that will: (i) preliminarily approve the Settlements; (ii) provisionally certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only; (iii) appoint Ms. Leib and Mr. Brokenshire as Class Representatives and designate Berger Montague PC, and Cotchett, Pitre & McCarthy, LLP. ("CPM") as Settlement Class Counsel; (iv) approve the notice plan for the Settlement Class; (v) appoint A.B. Data as Settlement Claims Administrator; (vi) appoint The Huntington National Bank ("Huntington") as the escrow agent; and (vii) approve the proposed schedule for completing the settlement process and set a date for a final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

This Action has been difficult and expensive, with an outcome that was often uncertain. After four and a half years, the Action has finally reached its end—but not without a formidable fight waged between Plaintiffs and Defendants. Although

4

the Court is fully aware of the work performed by Class Counsel in this Action, a full recitation of the work performed throughout this Action may be found in the Joint Declaration.

## I.    Investigation and Filing of the Action

In the fall of 2020, Lead Counsel began their investigation into potentially anticompetitive conduct by Defendants in their hiring and recruiting practices of healthcare workers. Joint Decl. ¶¶7-8. This conduct also involved an alleged secret "No-Poach Agreement" whereby Defendants agreed to restrict the solicitation and poaching of each other's employees. *Id.*

On February 3, 2021, Lead Counsel filed the first complaint asserting claims under the federal antitrust laws and Pennsylvania law. *Id.* ¶8. Other counsel filed a second complaint on February 12, 2021. *Id.* Class Counsel then moved to consolidate the cases and appoint Berger Montague and CPM as Lead Counsel, which motions the Court granted on March 11, 2021. *Id.* ¶9. A Consolidated Class Action Complaint ("CCAC") was filed on March 18, 2021. *Id.* ¶10.

## II.    Defendants' Motion to Dismiss the CCAC

On May 17, 2021, Defendants jointly moved to dismiss the CCAC. *Id.* ¶¶11-12. Lead Counsel vigorously opposed the motion to dismiss the antitrust claims but also voluntarily withdrew the Pennsylvania state law claims. *Id.* ¶12. On November 16, 2021, the Court declined Defendants' request for oral argument on

5

the motion and denied it as to Plaintiffs' *per se* antitrust claims and granted it for the withdrawn state claims. *Id.* On February 2, 2023, Plaintiffs filed their Consolidated Amended Class Action Complaint. *Id.* ¶13.

## III.    Fact Discovery

Lead Counsel, along with Supporting Counsel, aggressively pursued fact discovery from Defendants and third parties. This process was contested from the outset when Defendants sought to bifurcate discovery between class and merits. *Id.* ¶¶14-15. After briefing on the parties' contested positions, the Court adopted Plaintiffs' proposal for combined class and merits discovery. *Id.* ¶16.

Plaintiffs' fact discovery work included ensuring that Defendants and certain third parties preserved relevant electronically stored data and information ("ESI"), *id.* ¶¶18, 20; compelling Geisinger to produce its legacy structured data in a usable format, *id.* ¶23; negotiating with Evangelical to retain a third-party data vendor to secure Evangelical's structural data in a usable format, *id.* ¶24; serving requests for the production of documents and reviewing hundreds of thousands of pages of responsive documents, *id.* ¶¶25-26; serving interrogatories and requests for admissions on Defendants seeking details on hiring practices and other key issues, *id.* ¶¶27-28; assisting the Class Representatives with their discovery responses—including collecting and reviewing document productions from the Class Representatives, responding to Defendants' three sets of interrogatories, and

two sets of requests for admissions—which discovery was intensely litigated, *id.* ¶¶29-31; pursuing focused written discovery from Defendants and third parties, which involved more than 120 formal letters, hundreds of emails, and hours of negotiations to resolve issues on the scope, timing, and sufficiency of discovery responses, *id.* ¶32-35; pursuing discovery from third parties to obtain information necessary for market impact and salary benchmarks, *id.* ¶36; taking 26 depositions of fact witnesses, *id.* ¶¶37-39; and preparing the Class Representatives for their depositions—who each sat for *two* depositions—and defending those depositions. *Id.* ¶40.

## IV.    Expert Discovery

Given the importance of economic issues in this case, Lead Counsel retained two economic experts: Professor Alan Manning and Professor Edward Leamer. *Id.* ¶42. Lead Counsel collectively spent substantial time and effort working with these experts to facilitate their understanding of the case and the record, including with respect to issues on class certification and damages; their preparation of their expert reports; and their preparation for testimony at their depositions. *Id.* ¶¶41-49. With the sudden, tragic passing of Prof. Leamer, Lead Counsel were required to retain another economic expert, Dr. Phillip Johnson, and worked extensively to assist him in preparing the case as it moved toward summary judgment and trial before the Settlements were reached. *Id.* ¶¶50-51. In addition, Lead Counsel also

7

analyzed the reports produced by Defendants' expert and deposed the expert in 2024. *Id.* ¶¶52-54.

## V.    Class Certification and *Daubert* Proceedings

Following the completion of fact and expert discovery, Lead Counsel prepared a class certification motion and brief along with supporting materials, followed by a reply brief that responded to Defendants' opposition brief arguments. *Id.* ¶¶55-58. In conjunction with the class certification briefing, Lead Counsel opposed Defendants' *Daubert* motions to exclude Plaintiffs' experts' reports, while also separately moving to exclude portions of the opinion of Defendants' expert based on his use of a flawed benchmarking methodology. *Id.* ¶¶59-62.

## VI.    Settlement Negotiations

Settlement discussions first began in 2023, in the midst of fact discovery, via separate negotiations with both Defendants, but they did not lead to a resolution. *Id.* ¶64. In 2024, after the close of fact and expert discovery and the completion of class certification and *Daubert* briefing, the Parties renewed their separate settlement discussions. *Id.* After months of arm's-length negotiations, Plaintiffs reached separate settlement term sheets with each Defendant: Evangelical on March 13, 2025 and Geisinger on March 27, 2025. *Id.* The Parties then spent several more weeks negotiating and refining the specific terms of the Settlement Agreements, which were executed by Evangelical on June 9, 2025 and Geisinger

8

on June 13, 2025. *Id.* By the time these Settlements were reached, more than four years of hard-fought litigation had passed, along with extensive fact and expert discovery, class certification briefing, and *Daubert* motions. *Id.* ¶64.

## THE PROPOSED SETTLEMENTS

Taken together, the settlements totaling $28.5 million ("Settlement Amount") are an excellent result that bring immediate relief to the Settlement Class. The Settlements would offer members of the Settlement Class substantial, certain, and immediate recoveries while avoiding the real risks of loss or significant delay inherent in class certification, summary judgment, trial, and appeal of an antitrust class action, including the risk that the Settlement Class could recover nothing or less than the Settlement Amount after years of additional litigation and delay. *Id.*

Each Settlement Agreement also includes a cooperation "safeguard" should only one of the Settlement Agreements be approved. *Id.* ¶68. In that (unlikely) event, both Settlement Agreements provide that the settling Defendant promises to assist Class Counsel by making reasonable efforts to authenticate documents, provide testimony to establish foundation for admissibility for trial, and offering pre-trial depositions and trial testimony from Gesinger employees. *Id.*

9

## ARGUMENT

### I.    The Proposed Class Should Be Certified for Settlement Purposes

Plaintiffs seek certification of the following class for settlement purposes,

and Defendants do not object:

> All natural persons who worked as Healthcare Workers[2] at Geisinger's or Evangelical's facilities located in Union, Snyder, Northumberland, Montour, Lycoming and Columbia counties in the Commonwealth of Pennsylvania (the "Class Counties") from January 1, 2014 through August 5, 2020.
>
> Excluded from the Settlement Class are members of Defendants' boards of directors, Defendants' C-Suite Executives,[3] and any and all judges assigned to hear or adjudicate any aspect of this litigation and their judicial staff.

*See* SA ¶1(e) ("Settlement Class"). Courts regularly certify classes alleging

antitrust claims both for purposes of litigation and settlement.[4]

---

[2] The term "Healthcare Workers" is defined as nurses, physicians, advanced practitioners, medical support personnel, and Other Healthcare Professionals. SA ¶1(t). The term "Other Healthcare Professionals" refers to health technicians, therapists, healthcare managers, or other healthcare professionals who contribute to the healthcare system in various capacities. Examples of "Other Healthcare Professionals" can be found in the Expert Report of Professor Edward Leamer, Ph.D., at ¶¶ 21-24 & Exhibit 4 (dated January 16, 2024) (ECF Nos. 177, 178). *See* SA ¶1(x).

[3] The term "C-Suite Executives" refers to those executives responsible for day-to-day operation of either Geisinger or Evangelical with job titles including, but not limited to, "Chief," "Executive," "CMO," "CNO," and "President." Such personnel are identifiable via Defendants' wage data.

[4] *See, e.g., In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 78 (E.D. Pa. 2019) (certifying class for litigation), *aff'd* 967 F.3d 264 (3d Cir. 2020); *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668, 691 (E.D. Pa. 2019) (certifying for litigation); *In re: Domestic Drywall Antitrust*

"Where, as here, the court has not already certified the class prior to evaluating the settlement, it must determine whether the proposed settlement class satisfies the requirements of Rule 23(a) and (b)[.]" *Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 427 (E.D. Pa. 2018) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014). "At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice" by making a "'preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b))."" *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439 (E.D. Pa. 2008) (quoting Manual Complex Lit. § 21.632 (4th ed.)).

---

*Litig.*, 322 F.R.D. 188 (E.D. Pa. 2017) (certifying for litigation); *In re Domestic Drywall Antitrust Litig.*, No. 2:13-md-02437, ECF No. 427 (E.D. Pa. July 18, 2016) (certifying class for settlement); *Id.*, ECF No. 185 (E.D. Pa. Mar. 16, 2015) (same); *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. 12-cv-3824, 2014 WL 631031, at *1 (E.D. Pa. Feb. 18, 2014) (certifying for settlement); *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200 (M.D. Pa. 2012) (certifying for litigation); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-md-01935, 2011 U.S. Dist. LEXIS 151516 (M.D. Pa. Dec. 12, 2011) (certifying class for settlement); *Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127, 137 (E.D. Pa. 2010) (certifying for litigation); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-cv-5525, 2008 WL 1946848, at *11 (E.D. Pa. May 2, 2008) (certifying for litigation); *In re K-Dur Antitrust Litig.*, No. 01-cv-1652, 2008 WL 2699390, at *1 (D.N.J. Apr. 14, 2008) (certifying for litigation), *aff'd*, 686 F.3d 197, 224 (3d Cir. 2012), *reinstated*, No. 10-2077, 2013 WL 5180857, at *1 (3d Cir. Sept. 9, 2013); *In re Neurontin Antitrust Litig.*, No. 02-cv-1390, 2011 WL 286118, at *1 (D.N.J. Jan. 25, 2011) (certifying for litigation).

Here, the Settlement Class satisfies these elements of Rule 23 meriting

certification, and Settlement Class Counsel should be appointed.

### A.    The Requirements for Rule 23(a) Are Satisfied for Settlement Purposes

**<u>Numerosity</u>**

Rule 23(a)(1) requires that a class be so numerous that joinder of all

members is "impracticable." Fed. R. Civ. P. 23(a)(1). The Third Circuit has

recognized that "generally if the named plaintiff demonstrates that the potential

number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *In re*

*Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016) (internal quotation

marks omitted). Here, the proposed Settlement Class is nearly 12,000 Healthcare

Workers. *See* Plaintiffs' Motion for Class Certification, at 12 (ECF No. 177, 178).

**<u>Commonality</u>**

Rule 23(a)(2) requires that there be "questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d

583, 597 (3d Cir. 2012) ("For purposes of Rule 23(a)(2), even a single common

question will do") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359

(2011)). To satisfy commonality under Rule 23(a)(2), the common issue "must be

of such a nature that it is capable of class-wide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Sullivan v. DB Invs., Inc.*, 667

F.3d 273, 335 (3d Cir. 2011) (Scirica, C.J., concurring) (quoting *Dukes*, 564 U.S. at 350).

This requirement is "easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994), and especially so in an antitrust case such as this. The central issue in this antitrust case is Defendants' alleged no-poach agreement, including its scope, and whether the agreement led to lower Healthcare Worker pay.[5] Commonality is easily met in this case.

**Typicality**

Rule 23(a)(3) requires the named plaintiffs' claims to be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The Third Circuit has a 'low threshold' for satisfying typicality." *Niaspan*, 397 F. Supp. 3d at 680 (quoting *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016)) ("*NFL Concussion*"); *Chimenti v. Wetzel*, No. 15-3333, 2018 WL 2388665,

---

[5] *See also In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211, at *26 (E.D. Pa. Oct. 19, 2015) ("Courts interpreting the commonality requirement in the antitrust area have held that allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement.") (internal quotation marks omitted); *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2014 WL 285076, at *5 (E.D. Pa. Jan. 24, 2014) ("Cases involving the existence, scope, and efficacy of an alleged conspiracy generally meet the commonality requirement because the allegations present questions adequately common to class members.") (internal quotation marks omitted); *K-Dur*, 2008 WL 2699390, at *4 ("Courts routinely find commonality among antitrust class members alleging conspiracy to fix prices, as well as monopolization.").

13

at *6 (E.D. Pa. May 24, 2018). In assessing typicality, "the court must examine 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *Niaspan*, 397 F. Supp. 3d at 680 (quoting *Blood Reagents*, 2015 WL 6123211, at *26).

"If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 290 (E.D. Pa. 2012) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)). Claims are typical if they "'arise from the same alleged wrongful conduct' and are based upon 'the same general legal theories'". *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 844 (D.N.J. 2015) (citation omitted).

Here, Plaintiffs and each Settlement Class member are (or were) employees of Defendants who seek damages for claims arising from the same course of conduct and the same legal theory which gave rise to the claims of the Settlement Class (*i.e.*, the alleged no-poach agreement reduced competition between Defendants for labor, suppressed employee mobility, and thereby suppressed pay). Plaintiffs' claims are typical of the Settlement Class Members' claims.

**Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement has two components: (1) the interests and incentives of the representative plaintiffs; and (2) the experience and performance of class counsel." *Suboxone*, 421 F. Supp. 3d at 50 (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012)).

There are no indications that Plaintiffs have interests antagonistic to those of the Settlement Class. *See Suboxone*, 967 F.3d at 272 (the adequacy analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent.") (rejecting defendant's adequacy argument). Plaintiffs, on their own behalf and on behalf of all Settlement Class Members, seek to recover suppressed wages caused by Defendants' alleged unlawful conduct. Plaintiffs' interests are entirely aligned with the interests of the rest of the Settlement Class. *See K-Dur*, 686 F.3d at 223 (holding that "all of the class members have the same financial incentive for purposes of the litigation" to prove and recover damages).

The experience and performance of Lead Counsel are discussed in Section I.B.3 below, which demonstrate that Rule 23(a)(4) is met.

**B.    The Requirements of Rule 23(b)(3) Are Satisfied for Settlement Purposes**

If a proposed class satisfies Rule 23(a), a class should be certified under

15

Rule 23(b)(3) if the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, questions of law and fact common to the Settlement Class predominate over any individualized questions, and a class action is the superior method of adjudicating the controversy.

### 1. The Settlement Class Satisfies the Predominance Requirement of Rule 23(b)(3)

Predominance is "readily met" in cases alleging violations of antitrust law.[6] Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 469 (2013) (citing Fed. R. Civ. P. 23(b)(3)) (emphasis and alterations in original). Thus, Rule 23(b)(3) is satisfied when common issues predominate, even if there are some individualized questions.[7]

---

[6] *Amchem*, 521 U.S. at 625; *see also Castro*, 134 F. Supp. 3d at 845 ("Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members.") (citation omitted).

[7] *See*, *e.g.*, *Halliburton Co. v. Erica P. John Fund*, *Inc.*, 573 U.S. 258, 276 (2014) (even if there are "individualized questions of reliance in the case, there is no reason to think that these questions will overwhelm common ones and render class

Common issues predominate here for at least two reasons. First, Plaintiffs allege Defendants conspired to impose a no-poach agreement as a mechanism to suppress wages for the entire Settlement Class, and that issue is susceptible to common proof. A trial in this case would focus on Plaintiffs proving (and for Defendants, attempting to refute) that Defendants entered into and carried out the conspiracy. Second, classwide evidence is capable of showing the alleged no-poach agreement caused antitrust injury in the form of suppressed pay broadly across the Settlement Class. Both of these issues would predominate over any individual ones for any Plaintiff or Class Member seeking to prove the alleged antitrust claims. Accordingly, predominance is met here.

---

certification inappropriate under Rule 23(b)(3)") (internal citation and quotation marks omitted); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'") (citation omitted); *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015) ("Rule 23 does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances."); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) ("[T]he question is whether there is 'reason to think that [individualized] questions will *overwhelm* common ones and render class certification inappropriate[.]") (alteration in original) (citation omitted); *Teva Pharm. USA Inc. v. Abbott Labs.*, 252 F.R.D. 213, 227 (D. Del. 2008) ("[T]he existence of an individual inquiry does not preclude class certification, especially where all members face the necessity of proving the same fraudulent scheme.")

## 2.    The Settlement Class Satisfies the Superiority Requirement of Rule 23(b)(3)

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Settlement Class Members' claims. For certification of a Settlement Class, the Court is not required to analyze the superiority factors in great detail. *See*, *e.g.*, *Amchem*, 521 U.S. at 620 (holding that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013) (recognizing that "certain Rule 23 considerations, such as whether the case, if tried, would present intractable management problems, are not applicable in the settlement class context") (internal quotation marks omitted).

Here, class treatment is superior to other means of resolving these claims. This is especially true given that individual members of the Settlement Class would have to pay far more in expenses to litigate individually than they could hope to recoup in individual damages. Moreover, it would be far more efficient with judicial resources to have the settlement take place on a classwide basis than to have each member of the Settlement Class pursue their claims and settlements individually.

## 3.    Lead Counsel Meet the Requirements of Rule 23(g)

Under Rule 23(g), if the Court certifies the Settlement Class for purposes of the Settlements, it must appoint counsel for the Settlement Class. When appointing

18

class counsel, the Court considers (1) counsel's work on the claims in the action, (2) counsel's experience in handling class actions and other complex litigation, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class. *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir 2010). The Court has previously appointed Lead Counsel as interim counsel for the Settlement Class pursuant to Rule 23(g)(3). Since that time, Lead Counsel have diligently represented the interests of the Settlement Class in this Action and will continue to do so throughout the settlement administration process. Both firms are experienced class action litigation firms and have expended thousands of hours and advanced millions of dollars in costs litigating this case for over four years. As before, Lead Counsel meet the requirements of Rule 23(g).

## II.    The Settlements Should Be Preliminarily Approved

### A.    Standards for Preliminary Approval of a Class Action Settlement

The Third Circuit recognizes that "a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *see also Gen. Motors Corp. Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

19

A class action settlement requires Court approval pursuant to Fed. R. Civ. P. 23(e). This Rule requires the Court to consider whether: (a) the class was adequately represented; (b) the settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably. Fed. R. Civ. P. 23(e)(2).

To grant preliminary approval, the Court does not have to undertake an in-depth consideration of all the relevant factors necessary for final approval. The issue to be resolved now is only whether "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This threshold for preliminary approval of a proposed class action settlement is not high. The court need not reach any "ultimate conclusion on the issues of fact and law that underlie the merits of the dispute." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (quoting *Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)). The primary purpose is to ensure that there are no obvious deficiencies in the settlement that would preclude final approval. *See Jones v. Commerce Bancorp*, Inc., No. 05-5600-RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

The Settlements satisfy the elements of Rule 23(e)(2). Accordingly, notice of the Settlements should be issued to the Settlement Class pursuant to the plan of

20

notice (the "Notice Plan"), as discussed in more detail at Section III *infra*.

**B.    The Settlements Satisfy All of the Requirements of Rule 23(e)(2) for Preliminary Approval**

### 1.    The Settlement Class Has Been Adequately Represented

Plaintiffs satisfy the first requirement of Rule 23(e)(2), which asks whether "the class representatives and class counsel have adequately represented the class[.]" Fed R. Civ. P. 23(e)(2)(A). This factor focuses on "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment.

When assessing the adequacy of class counsel, the Court should consider "the actual performance of counsel acting on behalf of the class." *Id.* Lead Counsel have extensive experience litigating antitrust class actions. Joint Decl. ¶68. As detailed above (*see* Section I.B.3 *supra*), Lead Counsel have developed this case from inception and diligently prosecuted this action on behalf of the Settlement Class, have engaged in substantial discovery, have retained and consulted with experts, and have negotiated with Defendants to reach the Settlements. *See NFL Concussion*, 821 F.3d at 436 (plaintiffs' counsel should be "aware of the strengths and weaknesses of their case").

Similarly, Plaintiffs actively participated in representing the interests of the Settlement Class prior to commencement of this matter and throughout this litigation. *See* Section I.A *supra*; *see also* Joint Decl. ¶¶8-10, 29-31, 34. As

21

described above and in the Joint Declaration, Plaintiffs spent many hours pursuing

the interests of the Settlement Class, including responding to discovery requests,

producing documents, taking depositions, and actively engaging with Plaintiffs'

Counsel throughout the discovery phase. *Id.*

## 2.    The Settlements Were Negotiated at Arm's Length

The Settlements satisfy the second element of Rule 23(e)(2), which requires

that the Settlements result from arm's-length negotiations. *See* Fed R. Civ. P.

23(e)(2)(B). As a general matter, settlements that result from arm's length

negotiations between experienced counsel are given deference by courts.[8] "[W]hen

evaluating a settlement, a court should be 'hesitant to undo an agreement that has

---

[8] *See Whiteley v. Zynerba Pharm., Inc.*, No. 19-4959, 2021 WL 4206696, at *4
(E.D. Pa. Sept. 16, 2021) ("[C]ourts generally recognize that a proposed class
settlement is presumptively valid where . . . the parties engaged in arm's length
negotiations after meaningful discovery") (internal quotation marks omitted); *In re
Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *2
(E.D. Pa. Sept. 5, 2003) ("Though the ultimate determination of the fairness of a
partial settlement is left to the court, it is appropriate to give substantial weight to
the recommendations of experienced attorneys, who have engaged in arms-length
settlement negotiations, in making this determination."); *In re Linerboard Antitrust
Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (holding that "[a] presumption of
correctness is said to attach to a class settlement reached in arms-length
negotiations between experienced, capable counsel"); *In re Orthopedic Bone Screw
Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) (concluding that the
settlement was the product of "good faith, arms' length negotiations[,]" which
eliminated "the risk that a collusive settlement agreement may [have been]
reached"); *In re In re Elec. Carbon Prods. Antitrust Litig.,* 447 F. Supp. 2d 389,
400 (D.N.J. 2006) ("Where this negotiation process follows meaningful discovery,
the maturity and correctness of the settlement become all the more apparent.").

resolved a hard-fought, multi-year litigation.'" *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 378 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)).

The Settlements are the result of years of hard-fought, arm's length negotiations between Lead Counsel and Defendants' counsel, all of whom are capable attorneys with decades of experience in complex class actions and antitrust matters. Joint Decl. ¶¶63-69. Lead Counsel and Defendants' counsel vigorously advocated for their respective clients and were prepared to continue with the litigation if no settlement had been reached.

### 3. The Relief Provided by the Settlements Is More Than Adequate

The Settlements satisfy the third requirement of Rule 23(e), namely that the relief provided by the Settlements is adequate. Fed. R. Civ. P. 23(e)(2)(C). The rule directs the Court to consider four factors as part of this analysis: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of distributing relief to the class; (iii) the terms and timing of attorneys' fees; and (iv) any related agreements. *Id.* at Rule 23(e)(2)(C)(i)-(iv). Each of these factors supports preliminary approval.

### i. The Costs, Risks, and Delay of Trial and Appeal

"This factor balances the 'relief that the settlement is expected to provide to class members' against 'the costs and risks involved in pursuing a litigated outcome." *Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106-JDW, 2021 WL

1374607, at *6 (E.D. Pa. Apr. 12, 2021) (quoting Fed. R. Civ. P. 23 Advisory

Committee Notes (Dec. 1, 2018)).

While Lead Counsel believe that the claims asserted in the Action are

meritorious, the continued prosecution of the Action would pose significant risks,

substantial delay, and additional costs. *See generally* Joint Decl. ¶¶73-75.

Defendants have vigorously contested liability, class certification, and the

admissibility of Plaintiffs' expert opinions, and raised credible arguments

concerning impact, damages, and standing. *Id.* ¶73. Had these challenges been

successful, Plaintiffs faced the possibility that class certification would be denied

and/or key expert evidence would be excluded. *Id.* The exclusion of Plaintiffs'

expert testimony in their entirety would have likely resulted in summary judgment

being granted. *Id.* Relatedly, the passing of Plaintiffs' main expert, Prof. Leamer,

would have posed considerable difficulties moving forward. While Plaintiffs

believe they would have ultimately prevailed, the risks of losing on any of these

issues were real and substantial.

Trial also presents real risks. Even with beneficial rulings, Plaintiffs would

still face the risk of proving at trial the existence and extent of damages, as well as

the other elements of their claims. "Antitrust cases are particularly risky,

challenging, and widely acknowledge[d] to be among the most complex actions to

prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15

(N.D. Cal. Dec. 10, 2020);[9] *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (citations and internal quotation marks omitted). This case is no different.

Continued litigation would be long, complex, and expensive, and a burden to the Court's docket. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement). For these reasons, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Gen. Motors*, 55 F.3d at 784 (internal citations omitted).[10] Given this uncertainty, a certain "bird in the hand

---

[9] *Affirmed*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022).
[10] *See also Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should  therefore be encouraged"); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

### ii.    The Proposed Plan of Allocation Is Fair and Effective

Preliminary approval is further justified because the proposed method of distributing relief to the Class is equitable, efficient, and effective. *See*, *e.g.*, Fed. R. Civ. P. 23(e)(2)(C)(ii). Like settlements, proposed allocation plans must be "fair, reasonable and adequate." *Sullivan*, 667 F.3d at 326 ("A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund") (internal quotation and citation omitted). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan*, 667 F.3d at 328 (citation omitted).

Plaintiffs propose the following Plan of Allocation:

Each Class Member who is automatically included in the Class or who files a valid and timely claim form, and does not exclude himself or herself, shall be eligible for a payment based on his or her Payment Ratio applied to the Net Settlement Fund, sometimes referred to as "pro rata share" of the Net Settlement Fund, with a minimum payment of $250.  A Class Member's "pro rata share" simply means that if the Class Member's compensation constituted, for example, 1% of all Class Members' compensation, that Class Member's individual share

would be 1% of the net settlement fund, after distribution of the minimum payment.

The proposed Plan of Allocation accounts for each Class Member's total compensation and is fair, reasonable, adequate, and equitable. Indeed, *pro rata* methods of distribution are the norm in antitrust class actions and have repeatedly been found to be fair and reasonable. *See Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2020 WL 1922902, at *25 (E.D. Pa. Apr. 21, 2020) (finding "the proposed Plan of Allocation is fair, reasonable, and adequate as it provides a straightforward method for determining each Class Member's *pro rata* share of the Net Settlement Fund and then reimburses Class Members based on the type and extent of their injuries.").[11]

The proposed minimum payment of $250 per Class Member is effective because it encourages Class Member participation in the Settlements and more broadly distributes the benefits of the Settlements. Courts in the Third Circuit have approved minimum payments in class action settlements. *See Lewis-Abdulhaadi v.*

---

[11] *See also King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-01797-MSG, 2015 WL 12843830 (E.D. Pa. Oct. 15, 2015) (approving plan allocating common fund among class members on a *pro rata* basis based on class members' weighted share of net direct unit purchases); *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-MD-2724, ECF No. 2385 (E.D. Pa. Mar. 9, 2023) (same); *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*, No. 12-cv-3824, 2014 WL 12778314 (E.D. Pa. Sept. 15, 2014) (same); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340, 2009 WL 10744518 (D. Del. Apr. 23, 2009) (same).

*Union Sec. Ins. Co.*, No. 21-cv-03805-WB, 2025 WL 1510577, at *8 (E.D. Pa.

Mar. 20, 2025) (citing *Sullivan*, 667 F.3d at 328) ("The Third Circuit has expressly

recognized the need to establish certain '*de minimis* thresholds for payable claims'

in class action settlements because those minimums 'are beneficial to the class as a

whole since they save the settlement fund from being depleted by the

administrative costs associated with claims unlikely to exceed those costs.'");

*Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 463 (E.D.Pa.2008) (approving

settlement plan with $50 minimum payment); *In re Remicade Antitrust Litig.*, No.

17-cv-04326, 2022 WL 3042766, at *3 (E.D. Pa. Aug. 2, 2022) (requiring $25

minimum distribution to be paid to the class member).

 The proposed Plan of Allocation is also efficient. Class Members fall into

one of three categories: (1) Class Members for whom the Claims Administrator has

compensation data and social security numbers are not required to submit a claim

form to receive a payment; (2) Class Members for whom the Claims Administrator

has compensation data but does not have social security numbers must complete an

IRS Form W-9 to receive a payment;[12] and (3) Class Members for whom the

Claims Administrator does not have compensation data or social security numbers

must submit a claim form that is signed under penalty of perjury and complete an

---

[12] The first and second categories of Class Members are encouraged to verify the
information that the Claims Administrator has on file for them.

IRS Form W-9 to receive a payment. The third category of Class Members must describe any supporting documents or data used to calculate their compensation information. They also agree to provide documentation and other information upon request as part of potential audits of their claims. Class Members that fall into the third category who submit timely, valid claims will receive a *pro rata* distribution from the Net Settlement Fund via a mailed check or automatic electronic payment.

### iii.  Lead Counsel's Request for Fees and Expenses, and Service Awards for the Class Representatives Is Reasonable

Lead Counsel intend to ask the Court for an award of attorneys' fees from the Settlement Fund not to exceed one third of the Settlement Fund (plus one third of any accrued interest), and reimbursement of litigation expenses of no more than $3,500,000 million (to be documented and supported in Plaintiffs' fee petition filed later in the process). Additionally, Lead Counsel will seek service awards of up to $10,000 for each of the Class Representatives for their work on behalf of the Settlement Class. The notice described in the proposed Notice Plan (*see* Section III *infra*) will include this information to allow Class Members to make an informed decision about whether to opt out or object to this (or any other) aspect of the Settlements. This satisfies due process. *See NFL Concussion*, 821 F.3d at 444-47.

The Court need not evaluate the merits of Plaintiffs' intended fee and expense requests but merely approve the notices that will identify these requests so

29

that Class Members may evaluate them. *See Wawa*, 2021 WL 3276148, at *13

preliminarily approving a settlement and declining to further address attorney's

fees "because a formal motion will be filed at a later date, at which time the Court

can fully analyze the request and any opposition to it.").[13] Many courts have

approved a fee award of one-third in common fund cases like this one where the

results are significant for class members. *See In re Suboxone (Buprenorphine*

*Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-md-2445, 2024 WL 815503, at

*16 (E.D. Pa. Feb. 27, 2024); *In re Fasteners Antitrust Litig.*, No. 08-md-1912,

2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014); *In re Flonase Antitrust Litig.*, 291

F.R.D. 93, 106, 113 (E.D. Pa. 2013); *Davis v. Kraft Foods N. Am., Inc.*, No. 03-

6060, 2007 WL 9807445, at *2 (E.D. Pa. Aug. 10, 2007); *In re Neurontin Antitrust*

*Litig.*, No. 02-cv-1830, 2014 WL 12962880, at *3 (D.N.J. Aug. 6, 2014)

The ultimately attorney fee motion in connection with final approval will

also set forth the expenses Lead Counsel reasonably incurred in prosecuting the

---

[13] *See also NFL Concussion*, 821 F.3d at 444 ("The petition for a fee award will be
submitted to the Court at a later date. Objectors will then be able to present
arguments as to why the requested award is improper, and the Court will have
discretion to modify the award in whatever way it sees fit."); *Processed Egg
Prods.*, 284 F.R.D. at 277 ("Because, here, the [] Settlement Agreement provides
that the attorneys' fees and expenses ultimately will be determined upon approval
of the Court, which will require the assessment of the reasonableness of any such
fees and expenses sought pursuant to Fed.R.Civ.P. 23(h) (and Fed.R.Civ.P.
54(d)(2)), the [] Settlement's provisions concerning attorneys' fees and expenses
do not raise issues at this time  that would weigh against approving the settlement.)

Action, which costs courts regularly permit counsel to recoup. *See Suboxon*, 2024 WL 815503, at *18 ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.").

### iv.    The Settlements Provide a Significant Monetary Benefit to the Settlement Class

The Settlements, which provide for significant monetary consideration, afford important relief to the Settlement Class Members and are well within the range of reasonableness. *See* Rule 23(e)(2)(C). The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan*, 667 F.3d at 323. In conducting the analysis, the court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Gen. Motors*, 55 F.3d at 806; *see also In re Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 12-md-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim…and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). This assessment should consider "the present value of damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, compared with

31

the amount of the proposed settlement." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998) (quoting *Gen. Motors*, 55. F.3d at 806).

Courts in this Circuit also give significant weight to the judgment of experienced counsel who have conducted arm's length settlement negotiations, like Lead Counsel here. *See Ebner v. Merchs. & Med. Credit Corp.*, No. 14-06882, 2017 WL 1079966, at *5 (E.D. Pa. Mar. 22, 2017) (approving class settlement and noting that, "*experienced* class counsel endorses this settlement," and "[s]uch an opinion is entitled to 'significant weight'") (emphasis in original, internal citation omitted omitted); *Davis v. Kraft Foods N. Am., Inc.*, No. 03-6060, 2007 WL 9807443, at *1 (E.D. Pa. Aug. 10, 2007) ("Courts in this Circuit give considerable weight and deference to the views of experienced counsel as to the merits of an arms-length settlement.").

The Settlements here are an excellent result for the Settlement Class. As explained above, at Section II.B.3.i, Plaintiffs faced significant risks in vindicating their claims, which is an unfortunate characteristic of no-poach cases generally. Indeed, when examined alongside similar no-poach antitrust cases, the combined Settlements (of $28.5 million) compare very favorably. *See, e.g.*, *Fuentes v. Jiffy Lube Int'l, Inc.*, No. 2:18-cv-5174, 2024 U.S. Dist. LEXIS 94102 (E.D. Pa. May 28, 2024) ($2 million recovery for no-poach by Jiffy Lube franchisees); *In re Papa*

32

*John's Emp. and Franchisee Emp. Antitrust Litig.*, No. 3:18-cv-825-BJB, 2025

U.S. Dist. LEXIS 152012 (W.D. Ky. Aug. 7, 2025) ($5 million recovery for no-

poach by Papa John's franchisees); *Binotti v. Duke Univ.*, No. 1:20-cv-00470, 2021

U.S. Dist. LEXIS 225003 (M.D.N.C. Aug. 30, 2021) ($19 million recovery for no-

poach agreement between Duke University and University of North Carolina for

non-medical faculty); *In re Railway Indus. Emp. No-Poach Antitrust Litig.*, No. 18-

798, 2020 U.S. Dist. LEXIS 249904 (W.D. Pa. Aug. 26, 2020) ($48.95 million

recovery for no-poach agreement by railway employers, following DOJ's

simultaneous Complaint and stipulated Final Judgment for same conduct entered

four months prior to filing of class action complaint).  Additionally, it is estimated

that the average payout to each Class Member will be approximately $1,500.

### 4.    The Settlements Treat Class Members Equitably

The Settlement treats Class Members equitably for the same reasons the Plan

of Allocation is fair, reasonable, and adequate, as discussed in Section II.B.3.ii

*supra*.

### 5.    The Extent of Discovery Completed and the Stage of the Proceedings

The extent of the discovery completed in the Action weighs in favor of

preliminary approval. All fact and expert discovery was completed when the

agreements to settle were reached. This allowed Plaintiffs to develop enough

information about the case to appreciate the value of the claims. *NFL Concussion*,

821 F.3d at 439. Where, as here, a case has completed discovery and reached an advanced stage of litigation, courts have found approval warranted because "post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

### 6.    The Risk of Maintaining Class Actions Status

Separate from Defendants' agreement as to the proposed Settlement Class, Defendants have opposed certifying the proposed class in this Action on litigated basis. Defendants could seek Rule 23(f) review to challenge the underlying certification decision, if Plaintiffs were successful on that litigated class certification motion. Should a certified class reach the trial phase, proceeding to trial would inevitably carry the risk of decertification or the potential for various orders limiting recoverable damages. Accordingly, this factor favors approval of the Settlements.

### III.    Notice of the Settlements Should be Approved

The Notice Plan is described in the accompanying Declaration of Brian Devery of A.B. Data In Support of Plaintiffs' Motion for Preliminary Approval and Dissemination of Settlement Class Notice ("Devery Decl.").

In an action certified for settlement purposes under Rule 23(b)(3) "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *NFL Concussion*, 821 F.3d at 435. To meet this standard, "notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors maybe heard." *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 477 (E.D. Pa. 2007).

The Notice Plan achieves this objective with notice documents that use plain, easy to understand language about the Action, the Settlements, and Class Members' rights. The Long Form Notice provides information about: the nature and status of the Action; the amount of the Settlements; the amount Lead Counsel

will request in fees, litigation expenses, and service awards for the Class Representatives to be paid from the Settlement; how Class Members can submit claims later in the process; Class Members' rights to object and attend the Fairness Hearing; the important deadlines; and how to obtain additional information, including using a website dedicated to the Settlements or to contact the Claims Administrator. The Postcard and Email Notices provide summary information and inform Class Members on how they can obtain additional information, including a copy of the Long Form Notice.

The manner by which notice will be sent to the Settlement Class also complies with Rule 23. The Notice Plan employs numerous means and media to provide the best notice practicable, including direct mail to Class Members, whose email addresses or mailing addresses were provided by Defendants, a press release in Business Wire's Pennsylvania Newsline, targeted social media (including LinkedIn and HealthcareDive.com), a toll-free telephone number, and a dedicated settlement website. *See* Devery Decl. ¶¶6-21; *see also Mehling*, 246 F.R.D. at 477-78 (approving notice sent via first class mail, media publication, and use of a settlement website); *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.*, 347 F.R.D. 113, 126 (W.D. Pa. 2024) (approving notice sent via first class mail, email, social media, publication, Google, and press release).

The proposed Notice Plan is the best notice that is practicable under the

circumstances. It fully comports with due process and is compliant with Fed. R.

Civ. P. 23. Plaintiffs respectfully request the Court approve the Notice Plan.[14]

## IV.    The Court Should Appoint A.B. Data, Ltd. as Claims Administrator

The Court should appoint A.B. Data, Ltd. ("A.B. Data") as the claims

administrator for the Settlements. A.B. Data is an experienced settlement and

claims administration firm with sophisticated technological capabilities and is

staffed by personnel well-versed in antitrust issues and class action litigation.

Moreover, A.B. Data was selected by Class Counsel only after engaging in a

competitive bidding process. A.B. Data's experience and qualifications for the role

are set forth in the Declaration of Brian Devery, submitted herewith.

## V.    The Court Should Appoint Huntington as Escrow Agent

Plaintiffs request that The Huntington National Bank ("Huntington") be

appointed as the Escrow Agent. Huntington is a highly respected bank providing

consumers, corporations, and others with a broad range of financial services.

---

[14] Plaintiffs are filing concurrently herewith a motion to compel Geisinger to produce its Class Members' social security numbers to effectuate settlement administration in this matter. The notice and settlement administration plan outlined herein assumes production of this data by Geisinger, either voluntarily or by Court order.  Evangelical has already agreed to provide this information to Plaintiffs.

Huntington has served as escrow agent in many other antitrust class actions and should also be appointed as Escrow Agent here.[15]

## VI.    The Final Approval Hearing Should be Scheduled

To ensure efficient management of the Settlements, Plaintiffs' respectfully request that the Court direct that the below settlement schedule be implemented:

| DATE | EVENT |
|---|---|
| Within 30 days after preliminary approval | Claims Administrator to (i) provide direct mail notice of the Settlements to the Class and (ii) commence the multi-tiered, robust media campaign publication notice plan. |
| Within 60 days after preliminary approval | Lead Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of the Settlement Agreements. |
| Within 90 days after preliminary approval | Class Members may submit a request for exclusion or any objection to the proposed Settlements or to Lead Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, and service awards to the Class Representatives. |
| Within 21 days after the objection deadline | No later than 21 days after the expiration of the deadline for members of the Class to object to the proposed Settlements and/or attorneys' fees, expenses and service awards, or Plan of Allocation, Lead Counsel |

---

[15] *See, e.g.*, *Henry v. Brown Univ.*, No. 22-cv-0125, ECF No. 782 (N.D. Ill. Jan. 24, 2025) (order granting preliminary approval motion and appointing Huntington Bank as an escrow agent); *Le v. Zuffa, LLC*, No. 15-cv-1045, ECF No. 1053 (D. Nev. Oct. 23, 2024) (same); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 1069 (N.D. Ill. Aug. 24, 2022) (same); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Prac. and Antitrust Litig.*, No. 17-md-2785, ECF No. 2594 (D. Kan. Mar. 11, 2022) (same).

| DATE | EVENT |
|---|---|
|  | shall file all briefs and materials in support of final approval of the Settlements. |
| At least 30 days after the objection deadline[16] | Final Settlement Fairness Hearing |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Order: (i) granting preliminary approval of the Settlement Agreements; (ii) finding that the requirements of Fed. R. Civ. P. 23 are satisfied for the Settlement Class for purposes of settlement and judgment, including appointing Plaintiffs as the Class Representatives; (iii) appointing Lead Counsel under Fed. R. Civ. P. 23(g); (iv) authorizing dissemination of notice of the Settlements to the Settlement Class; (v) preliminarily approving the Plan of Allocation; (vi) appointing A.B. Data as Claims Administrator; (vii) appointing The Huntington National Bank as Escrow Agent and approving the Custodian/Escrow Agreement; (viii) approving the Settlement Fund as a qualified settlement fund pursuant to Internal Revenue Code Section 468B; and (ix) approving the proposed schedule for the Settlements, including setting a date for a final Fairness Hearing.

---

[16] Under the proposed schedule, the earliest date a Fairness Hearing could likely take place is 106 days from preliminary approval.

Dated: October 3, 2025                    Respectfully submitted,

*/s/ Adam J. Zapala*_____          */s/ Eric L. Cramer*_____
Adam J. Zapala (*Pro Hac Vice*)             Eric L. Cramer (PA Bar No. 69289)
Elizabeth T. Castillo (*Pro Hac Vice*)      Shanon Jude Carson (PA Bar No. 85957)
Christian S. Ruano (*Pro Hac Vice*)         Michael J. Kane (PA Bar No. 73998)
**COTCHETT, PITRE &**                       Michaela L. Wallin (*Pro Hac Vice*)
**McCARTHY, LLP**                           J. Taylor Hollinger (PA Bar No. 332706)
840 Malcolm Road                            **BERGER MONTAGUE PC**
Burlingame, CA 94010                        1818 Market Street, Suite 3600
Phone: (650) 697-6000                       Philadelphia, PA 19103
Fax: (650) 697-0577                         Phone: (215) 875-4604
azapala@cpmlegal.com                        Fax: (215) 875–5707
ecastillo@cpmlegal.com                      ecramer@bergermontague.com
cruano@cpmlegal.com                         scarson@ bergermontague.com
                                            mkane@ bergermontague.com
                                            mwallin@ bergermontague.com
                                            thollinger@ bergermontague.com

                                            Daniel J. Walker (*Pro Hac Vice*)
                                            **BERGER MONTAGUE PC**
                                            1001 G Street, NW
                                            Suite 400 East
                                            Washington, DC 20001
                                            Phone: (202) 559-9745
                                            dwalker@ bergermontague.com

**CERTIFICATE OF SERVICE**

I, Adam J. Zapala, hereby certify that on October 3, 2025, I filed a true and correct copy of the foregoing Plaintiffs' Memorandum of Law In Support of Motion for Certification of the Settlement Class, Preliminary Approval of the Settlements, Preliminary Approval of the Plan of Allocation, Approval of the Notice Plan, and Approval of the Proposed Schedule for Completing the Settlement Process with the Court's Case Management/Electronic Case Filing System and thereby served upon all counsel of record in this matter.


*/s/ Adam J. Zapala*
Adam J. Zapala