# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

IN RE GEISINGER SYSTEM SERVICES AND EVANGELICAL COMMUNITY HOSPITAL HEALTHCARE WORKERS ANTITRUST LITIGATION

No. 4:21–cv–00196

Chief Judge Matthew W. Brann

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

**TABLE OF CONTENTS**

**Page No.**

INTRODUCTION .........................................................................................1

SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS ..........................4

    I.    Investigation and Filing of the Action...................................................4

    II.    Defendants' Motion to Dismiss the CCAC .............................................5

    III.    Fact Discovery........................................................................5

    IV.    Expert Discovery.....................................................................7

    V.    Class Certification and *Daubert* Proceedings .......................................7

    VI.    Settlement Negotiations ...............................................................8

THE PROPOSED SETTLEMENTS ....................................................................8

ARGUMENT ..............................................................................................9

    I.    Class Counsel Are Entitled to a Fair Fee Award ...................................9

        A.    The Percentage-of-Fund Is the Appropriate Method for Awarding Attorneys' Fees. ..........................................................9

        B.    The Percentage Award Requested by Class Counsel is Reasonable.......................................................................12

            1.    The Size of the Fund Created and the Number of Beneficiaries Favor the Requested Fee. .........................12

            2.    The Reaction of the Settlement Class Favors the Requested Fee................................................................13

            3.    The Skill and Efficiency of Class Counsel Favor the Requested Fee................................................................14

             4.    The Complexity and Duration of the Action, Along with the Significant Time Devoted to It, Favor the Requested Fee................................................................16

5.    The Risk of Nonpayment Favors the Requested Fee, Which Is Consistent with Private Contingent Fee Agreements. .................................................................17

6.    The Requested Fee Is in Line With Awards in Similar Cases. .........................................................18

7.    The Benefits of the Settlements Are Attributable to Class Counsel. ........................................................19

8.    The Terms of the Settlement Favor the Requested Award. ...................................................................19

C.    A Cross Check of Class Counsel's Lodestar Confirms the Reasonableness of the Requested Fee. ....................................20

II.    Class Counsel's Requested Litigation Expenses Are Reasonable ......22

III.    The Requested Service Awards to the Class Representatives Are Reasonable ...........................................................................23

CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Binotti v. Duke Univ.*,
  No. 20-cv-00470, 2021 WL 5366877 (M.D.N.C. Aug. 30, 2021) ...................... 12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................ 9

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................ 12

*Fuentes v. Jiffy Lube Int'l, Inc.*,
  No. 18-cv-5174, 2024 WL 2723840 (E.D. Pa. May 28, 2024) ........................... 12

*Glaberson v. Comcast Corp.*,
  No. 03-cv-6604, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) .......................... 18

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ...................................................... 10, 11, 12, 20, 21

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ....................................................................... *passim*

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................................... 14

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) .................................................................... 9, 10, 20

*In re Cigna-Am. Specialty Health Admin. Fee Litig.*,
  No. 16-cv-03967, 2019 WL 4082946 (E.D. Pa. Aug. 29, 2019) ........................ 18

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) .......................................................................... 9, 10

*In re Fasteners Antitrust Litig.*,
  No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014) ............................ 22

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) ........................................................ 15, 18, 21, 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ................................................................................ 11

*In re Ikon Office Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ................................................................... 18, 19

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
   No. 17-cv-0341, 2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) .................... 19, 22

*In re Insurance Brokerage*,
   297 F.R.D. 136 (D.N.J. 2013) ............................................................................ 16

*In re Linerboard Antitrust Litig.*,
   No. 98-cv-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ....................... 23, 24

*In re Linerboard Antitrust Litig.*,
   No. 98-cv-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ............................. 13

*In re Papa John's Emp. and Franchisee Emp. Antitrust Litig.*,
   No. 18-cv-0825, 2025 WL 2255624 (W.D. Ky. Aug. 7, 2025) .......................... 12

*In re Polyurethane Foam Antitrust Litig.*,
   168 F. Supp. 3d 985 (N.D. Ohio 2016) .............................................................. 16

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ............... 15, 17, 18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ............................................................. 10, 11, 18, 19

*In re Railway Indus. Emp. No-Poach Antitrust Litig.*,
   No. 18-cv-0798, 2020 U.S. Dist. LEXIS 249904 (W.D. Pa. Aug. 26, 2020) ..... 13

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. 03-cv-00085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ............................. 18

*In re Remicade Antitrust Litig.*,
   No. 17-cv-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023).................. *passim*

*In re Residential Doors Antitrust Litig.*,
   No. 94-cv-3744, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) ............................... 24

*In re Rite Aid Corp. Secs. Litig.*,
   396 F.3d 294 (3d Cir. 2005) .................................................................. 11, 12, 20

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002).................................................................... 16, 21

*Institutionalized Juvs. v. Sec'y of Pub. Welfare*,
   758 F.2d 897 (3d Cir. 1985) .............................................................................. 21

*Johnson v. Cmty. Bank, N.A.*,
   No. 12-cv-01405, 2013 WL 6185607 (M.D. Pa. Nov. 25, 2013) ...... 10, 13, 17, 22

*Kanefsky v. Honeywell Int'l Inc.*,
   No. 18-cv-15536, 2022 WL 1320827 (D.N.J. May 3, 2022)............................... 24

*Martin v. Foster Wheeler Energy Corp.*,
  No. 06-cv-0878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008) ........................... 14

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................. 16

*O'Hern v. Vida Longevity Fund, LP*,
  No. 21-cv-402, 2023 WL 3204044 (D. Del. May 2, 2023) ................... 12, 13, 22

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ...................................................................... 9

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  No. 06-cv-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ........................... 19

*Wallace v. Powell*,
  288 F.R.D. 347 (M.D. Pa. 2012) ...................................................... 18

*Whiteley v. Zynerba Pharms. Inc.*,
  No. 19-cv-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ................... 19, 21

**RULES**

Fed. R. Civ. P. 23(h) ............................................................. 4, 9

## **Table of Abbreviations**

| | |
|---|---|
| Berger Montague | Berger Montague PC |
| Class Counsel | Refers to both Lead Counsel and Supporting Counsel |
| Class Representatives | Named Plaintiffs Nichole Leib and Kevin Brokenshire |
| CCAC | Plaintiffs' Consolidated Class Action Complaint |
| CPM | Cotchett, Pitre & McCarthy, LLP |
| Defendants | Geisinger System Services and Evangelical Community Hospital |
| Evangelical | Defendant Evangelical Community Hospital |
| Geisinger | Defendant Geisinger System Services |
| Joint Declaration or Joint Decl. | Joint Declaration of Eric L. Cramer and Adam J. Zapala In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlements and Approval of the Notice Plan (ECF No. 246) |
| Lead Counsel | Berger Montague and CPM (*see* ECF No. 43 ¶10; ECF No. 257 ¶6) |
| No-Poach Agreement | Defendants' alleged agreement to restrict the solicitation and poaching of each other's employees |
| Settlement Agreements | The Settlement Agreement between Plaintiffs and Geisinger and the Settlement Agreement between Plaintiffs and Evangelical (Exhibits 1 and 2 to the Joint Decl. ECF Nos. 246-1 & -2) |

| | |
|---|---|
| Settlement Class | All natural persons who worked at Geisinger or Evangelical as Healthcare Workers[1] from January 1, 2014 through August 5, 2020. Excluded from the Class are members of Defendants' boards of directors, Defendants' C-Suite Executives, and any and all judges assigned to hear or adjudicate any aspect of this litigation and their judicial staff (ECF No. 257 ¶3) |
| Settlement Fund | The sum of Plaintiffs' settlement with Geisinger ($19 million) and Plaintiffs' settlement with Evangelical ($9.5 million) |
| Supplemental Declaration or Suppl. Decl. | Supplemental Joint Declaration of Daniel J. Walker and Adam J. Zapala In Support of Plaintiffs' Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards to the Class Representatives (filed concurrently with this motion) |
| Supporting Counsel | Refers to the firms that assisted Lead Counsel with the litigation |

---

[1] "Healthcare Workers" are nurses, physicians, advanced practitioners, medical support personnel, and other healthcare professionals.

**INTRODUCTION**

Lead Counsel,[2] together with the assistance of Supporting Counsel,

prosecuted this complex and challenging antitrust class action for more than four

years on a fully contingent basis. Over this period, Class Counsel invested over

24,000 hours (amounting to over $16 million) of uncompensated professional time

and over $2.7 million dollars in out-of-pocket costs.

Together with contributions from Class Representatives Nichole Leib and

Kevin Brokenshire, after pre-filing investigation, Lead Counsel filed the first

complaint on February 12, 2021, alleging Plaintiffs and the Settlement Class were

harmed in the form of artificially suppressed pay and job mobility due to

Defendants' alleged No-Poach Agreement. Defendants vigorously contested every

aspect of the litigation, including liability, the scope of discovery, the admissibility

of Plaintiffs' expert opinions, class certification, the scope of the alleged

conspiracy, Plaintiffs' damages modeling, Plaintiffs' standing, and numerous other

discrete issues right up to when Plaintiffs reached Settlement Agreements with

Defendants Geisinger and Evangelical. The proposed Settlement Agreements

provide that Geisinger will pay $19 million and Evangelical will pay $9.5 million

---

[2] All capitalized terms in this Memorandum of Law shall have the same meanings
as set forth in the Settlement Agreements, unless expressly defined otherwise
herein.

for the benefit of the Settlement Class, for a total of $28.5 million plus accrued interest.

The Settlements are an excellent result for the Settlement Class. The combined $28.5 million recovery offers Settlement Class members substantial, certain, and immediate recoveries while avoiding the risks of loss or significant delay inherent in class certification, summary judgment, trial, and potential appeal—including the risk that the Settlement Class could recover less or nothing after years of additional litigation risk and delay. Under the proposed Plan of Allocation, if approved, each Settlement Class member would receive a minimum payment of $250 and their *pro rata* recovery on top of the minimum payment, with the estimated average recovery per class member being $1,500, after deductions for attorneys' fees, litigation expenses, and service awards for the Class Representatives.

During the Action, Lead Counsel have directed and overseen the work of their own attorneys and staff, as well as those of Supporting Counsel. Lead Counsel have been involved in every aspect of the Action, including pre-filing investigating, extensive fact and expert discovery (including obtaining, reviewing, and analyzing hundreds of thousands of pages of documents and data), deposing over two dozen Defendant and nonparty witnesses, preparing class and merits expert reports, and briefing on numerous motions—including opposing the motion

to dismiss, challenging Defendants' extensive privilege assertions, moving for class certification, and filing and opposing *Daubert* motions. *See* Joint Decl. ¶¶5, 22-26, 35, 55-62. Lead Counsel also presided over all aspects of the Settlement negotiations, drafted and edited the term sheets and Settlement Agreements, developed the notice plan, developed the allocation plan, and prepared all the necessary papers for preliminary approval of the Settlements. *See id.* ¶¶63-67.

In sum, this Action involved substantial risk, including the prospect of a total or partial loss pretrial, at trial, or on appeal. Class Counsel filed the Action on a fully contingent basis, knowing it could take years to prosecute, that it would require millions of dollars in costs, and demand thousands of attorney hours—all with the very real risk of no recovery. Class Counsel have dedicated substantial time and resources to the prosecution of the Action, collectively spending a total of 24,057.4 hours of professional time (nearly all incurred by Lead Counsel) with a total lodestar at current rates of $16,895,386.50. *See* Suppl. Decl. and Exhibits 1-4. Class Counsel also incurred substantial out-of-pocket costs in the amount of $2,702,804.95, the vast majority spent on Plaintiffs' experts who provided essential economic analysis in support of Plaintiffs' antitrust claims and motion for class certification. *Id.* ¶¶13-18; *see also* Joint Decl. ¶¶41-62.

For their work to achieve the Settlements, Lead Counsel respectfully request an award of attorneys' fees of 33.33% of the Settlement Fund plus *pro rata* interest

(*i.e.*, 28.5 million * .3333 = $9,499,050 plus 33.33% of the accrued interest). Lead Counsel also request reimbursement of Class Counsel's litigation expenses in the amount of $2,702,804.95, which were incurred to advance the interests of the Settlement Class and to obtain the favorable result.

Additionally, Lead Counsel respectfully request service awards of $10,000 for each of the two Class Representatives who were instrumental to the success of this litigation. Each Class Representative participated significantly in discovery, working with Lead Counsel to respond to 22 Requests for Production of Documents, three sets of Interrogatories, and two sets of Requests for Admission directed to each Class Representative. *See id.* ¶¶29-31. Both Class Representatives were deposed twice and spent hours working closely with Lead Counsel to prepare and sit for these depositions. *Id.* ¶40.

In sum, Lead Counsel respectfully submit that the requested attorneys' fees, reimbursement of litigation expenses, and the service awards for the Class Representatives are reasonable and appropriate under Fed. R. Civ. P. 23(h) and applicable law.

## SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS

### I.    Investigation and Filing of the Action

Lead Counsel began investigating Defendants' potentially anticompetitive conduct, including their No-Poach Agreement, in 2020. Joint Decl. ¶¶7-8. Lead

Counsel filed the first antitrust complaint on February 3, 2021. *Id.* ¶¶5, 8. The

Court consolidated this complaint with another (filed on February 12, 2021) and

appointed Berger Montague and CPM as Lead Counsel on March 11, 2021. *Id.* ¶9.

Plaintiffs filed a CCAC on March 18, 2021. *Id.* ¶10.

## II.    Defendants' Motion to Dismiss the CCAC

On May 17, 2021, Defendants jointly moved to dismiss the CCAC or,

alternatively, to strike the class allegations in the CCAC. *Id.* ¶¶11-12. Lead

Counsel devoted substantial resources to opposing the motion to dismiss, including

legal research and factual development drawn from the pre-complaint

investigation. *Id.* These efforts were instrumental to secure the Court's November

16, 2021 ruling that sustained the Sherman Act claim and the class allegations. *Id.*

¶12. On February 2, 2023, Plaintiffs filed their Consolidated Amended Class

Action Complaint. *Id.* ¶13.

## III.    Fact Discovery

Fact discovery in the litigation was complex, voluminous, and hotly

contested. *See generally id.* ¶¶14-40. Class Counsel aggressively pursued fact

discovery from Defendants and third parties. From the outset, Defendants

contested how to manage discovery, where, after briefing, the Court adopted Lead

Counsel's proposal for combined class and merits discovery. *Id.* ¶¶14-16.

With the discovery schedule in place, Class Counsel developed and pursued comprehensive discovery from Defendants and third parties, including: ensuring that Defendants and certain third parties preserved relevant electronically stored information ("ESI"), *id.* ¶¶18, 20; negotiating to obtain Geisinger compensation data in a usable, structured format, *id.* ¶23; negotiating with Evangelical to retain a third-party data vendor to secure Evangelical's legacy compensation data in a usable, structured format, *id.* ¶24; serving requests for the production of documents and reviewing and analyzing hundreds of thousands of pages of responsive documents, *id.* ¶¶25-26; serving interrogatories and requests for admissions on Defendants seeking details on hiring practices and other key issues, *id.* ¶¶27-28; assisting the Class Representatives with their discovery responses—including collecting and reviewing document productions from the Class Representatives, responding to Defendants' three sets of interrogatories, and two sets of requests for admissions—which discovery was intensely litigated, *id.* ¶¶29-31; pursuing focused written discovery from Defendants and third parties, which involved more than 120 formal letters, hundreds of emails, and hours of negotiations to resolve issues on the scope, timing, and sufficiency of discovery responses, *id.* ¶¶32-35; pursuing discovery from third parties to obtain information necessary for market impact and salary benchmarks, *id.* ¶36; taking 26 depositions of Defendant and

nonparty fact witnesses, *id.* ¶¶37-39; and preparing Class Representatives to sit for *two* depositions each and defending those depositions. *Id.* ¶40.

## IV.    Expert Discovery

Class Counsel also oversaw extensive and protracted expert discovery. Lead Counsel retained two economic experts, Professor Alan Manning and Professor Edward Leamer, to tackle the complex economic issues presented by Plaintiffs' antitrust class action claims. *Id.* ¶42. Lead Counsel collectively spent substantial time and effort working with these experts to facilitate their understanding of the case and the record, including with respect to issues on class certification and damages; the experts' preparation of their reports; and the experts' preparation for testimony at their depositions. *Id.* ¶¶41-49. With the unexpected illness and, ultimately, death of Prof. Leamer, after the Parties fully briefed class certification and *Daubert* motions but before the hearing date, Lead Counsel were required to retain another economic expert, Dr. Phillip Johnson, and Lead Counsel worked to assist him in preparing for a hearing on the motion for class certification and *Daubert*. *Id.* ¶¶50-51. Lead Counsel also analyzed the reports produced by Defendants' expert and deposed the expert in 2024. *Id.* ¶¶52-54.

## V.    Class Certification and *Daubert* Proceedings

Following fact and expert discovery, Lead Counsel prepared class certification papers, followed by a reply brief that responded to Defendants'

7

opposition arguments. *Id.* ¶¶55-58. In conjunction with the class certification

briefing, Lead Counsel opposed Defendants' *Daubert* motions to exclude

Plaintiffs' experts' reports, while separately moving to exclude portions of

Defendants' expert opinion. *Id.* ¶¶59-62.

## VI.    Settlement Negotiations

Settlement discussions first began in 2023 via separate negotiations with

both Defendants, but these did not lead to a resolution. *Id.* ¶64. In 2024, following

fact and expert discovery and class certification and *Daubert* briefing, the Parties

renewed their separate settlement discussions. *Id.* After months of arm's-length

negotiations, Plaintiffs reached separate settlement term sheets with Evangelical on

March 13, 2025 and Geisinger on March 27, 2025. *Id.* The Parties spent several

more weeks negotiating the terms of the Settlement Agreements, which were

executed by Evangelical on June 9, 2025, and by Geisinger on June 13, 2025. *Id.*

## THE PROPOSED SETTLEMENTS

As discussed above, the combined Settlements of $28.5 million are an

excellent result that bring immediate relief to the Settlement Class. *Id.* Each

Settlement Agreement also includes a cooperation "safeguard" should only one of

the Settlement Agreements be finally approved by the Court and the case continues

against the other Defendant. *Id.* ¶68. In that (unlikely) event, both Settlement

Agreements provide that the settling Defendant promises to assist Class Counsel

by making reasonable efforts to authenticate documents, provide testimony to establish foundation for admissibility for trial, and offering pre-trial depositions and trial testimony from settling Defendants' employees. *Id.*

## ARGUMENT

### I.    Class Counsel Are Entitled to a Fair Fee Award

#### A.    The Percentage-of-Fund Is the Appropriate Method for Awarding Attorneys' Fees

It is well established that an attorney who secures a common fund for the benefit of the class is entitled to "a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").[3] This approach makes it "economically feasible for [class] plaintiffs to receive redress for corporate [misconduct]." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) (private antitrust enforcement serves "a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations").

---

[3] Unless expressly indicated in the text, the citations in this memorandum omit all references to internal quotation marks and citations.

The Third Circuit recognizes two methods to determine a reasonable attorneys' fees award in common fund cases: the "percentage-of-recovery" method and the "lodestar" method. *See In re Cendant*, 404 F.3d at 188. Although either method is acceptable, "[t]he percentage-of-recovery method is generally favored in cases involving a common fund." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *see, e.g.*, *Johnson v. Cmty. Bank, N.A.*, No. 12-cv-01405, 2013 WL 6185607, at *6 (M.D. Pa. Nov. 25, 2013) (same). The Third Circuit has recognized "the stated goal in percentage fee-award cases of ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation" and "the importance of a financial incentive to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk non-payment." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

Under the percentage-of-recovery method, the Court applies a certain percentage to the settlement fund. *In re AT&T Corp.*, 455 F.3d 160, 163-64 (3d Cir. 2006). "In determining what constitutes a reasonable percentage fee award, a district court must consider the ten factors … identified in *Gunter* and *Prudential*." *Diet Drugs*, 582 F.3d at 541 (citing *Gunter*, 223 F.3d at 195 n.1; *Prudential*, 148 F.3d at 336-40). These factors are:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class

10

to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Id.*

"The fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *AT&T*, 455 F.3d at 166 (quoting *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005)). Here, all pertinent factors support the requested fee award.

The court is also encouraged to "cross-check the percentage award counsel asks for against the lodestar method of awarding fees so as to insure plaintiffs' lawyers are not receiving an excessive fee at their clients' expense." *Gunter*, 223 F.3d at 199 (first citing *Prudential*, 148 F.3d at 340-41, then citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820-22 & n.40 (3d Cir. 1995)). To perform this "lodestar cross-check," the district court should "multiply[] the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."

11

*O'Hern v. Vida Longevity Fund, LP*, No. 21-cv-402, 2023 WL 3204044, at *10 (D. Del. May 2, 2023) (quoting *Rite Aid*, 396 F.3d at 305-06).

### B.    The Percentage Award Requested by Class Counsel is Reasonable

Applying the *Gunter* and *Prudential* factors confirms that Class Counsel's requested attorneys' fees award of $9,499,050 (plus 33.33% of the interest accrued), equal to 33.33% of the common fund created by the Settlements, is reasonable.

#### 1.    The Size of the Fund Created and the Number of Beneficiaries Favor the Requested Fee

"The size of the settlement fund created and the number of persons benefitted" are important factors for the Court to consider when determining a reasonable attorneys' fees award. *Gunter*, 223 F.3d at 198; *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) ("The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained.").

The Settlements here are an excellent result for the Settlement Class. The combined Settlements of $28.5 million compare very favorably alongside similar no-poach antitrust class actions. *See, e.g.*, *Fuentes v. Jiffy Lube Int'l, Inc.*, No. 18-cv-5174, 2024 WL 2723840 (E.D. Pa. May 28, 2024) ($2 million recovery); *In re Papa John's Emp. and Franchisee Emp. Antitrust Litig.*, No. 18-cv-825, 2025 WL 2255624 (W.D. Ky. Aug. 7, 2025) ($5 million recovery); *Binotti v. Duke Univ.*,

12

No. 20-cv-00470, 2021 WL 5366877 (M.D.N.C. Aug. 30, 2021) ($19 million recovery); *In re Railway Indus. Emp. No-Poach Antitrust Litig.*, No. 18-cv-798, 2020 U.S. Dist. LEXIS 249904 (W.D. Pa. Aug. 26, 2020) & ECF No. 306, at 1 (July 17, 2020) (final approval brief) ($48.95 million recovery). Almost 12,000 Settlement Class members stand to recover from the Settlements.

This result was obtained against the significant risks Plaintiffs confronted to vindicate their claims. *See* Joint Decl. ¶¶73-75.

Additionally, the minimum payment is $250, and it is estimated that the average payout to each Settlement Class member will be approximately $1,500. *See, e.g.*, *Johnson*, 2013 WL 6185607, at *6 ("Given the natural economic preference for certain and immediate recovery over payments that are speculative and delayed, settling for $2,500,000 in the present may certainly be preferable to most class members than risking years of uncertain litigation in order to potentially double their money.").

### 2. The Reaction of the Settlement Class Favors the Requested Fee

The absence of fee-related objections to date weighs heavily in favor of approving the requested attorneys' fees award. *See O'Hern*, 2023 WL 3204044, at *9 (crediting that "there were no objections to the settlement or to Class Counsel's fee request"); *In re Linerboard Antitrust Litig.*, No. 98-cv-5055, 2004 WL

13

1221350, at *5 (E.D. Pa. June 2, 2004);[4] *see also In re Cendant Corp. Litig.*, 264

F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential

class members who received notice of the Settlement and the number of objectors

creates a strong presumption … in favor of the Settlement ….").

The Court-approved notice program is ongoing with a deadline of February

17, 2026 to opt out or object to the Settlements. To date, none of the nearly 12,000

Settlement Class members have requested exclusion from or objected to the

Settlements.

### 3. The Skill and Efficiency of Class Counsel Favor the Requested Fee

The skill and efficiency with which Class Counsel prosecuted this litigation

also supports the reasonableness of the fee request. *See Martin v. Foster Wheeler

Energy Corp.*, No. 06-cv-0878, 2008 WL 906472, at *4 (M.D. Pa. Mar. 31, 2008)

(factor is "measured by the quality of the result achieved, the difficulties faced, the

speed and efficiency of the recovery, the standing, experience and expertise of the

counsel, the skill and professionalism with which counsel prosecuted the case and

the performance and quality of opposing counsel.").

Lead Counsel, who are experienced antitrust litigators (Joint Decl. ¶68),

developed this case from inception, diligently prosecuted it on behalf of the

---

[4] *Amended*, No. 98-cv-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

Settlement Class, engaged in substantial discovery, retained and consulted with experts, and negotiated with Defendants to reach the Settlements. *See* Joint Decl. ¶¶7-69. Lead Counsel achieved this result despite the unexpected and tragic loss of Plaintiffs' primary economic expert (Joint Decl. ¶42), who would have performed an essential role at both the class certification hearing and trial of Plaintiffs' antitrust claims. *See AT&T*, 455 F.3d at 167 ("because the case had been vigorously litigated for over four years, … class counsel had a thorough and exhaustive appreciation for the merits of the case prior to settlement"); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *3 (E.D. Pa. Nov. 9, 2012) ("successful settlement negotiations ... demonstrate[ ] the significant skill and expertise of counsel"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("Class counsel are highly regarded in the complex class action and antitrust communities. The manner in which they conducted this complicated and lengthy litigation demonstrates skill and expertise.").

Class Counsel also litigated this case against experienced defense counsel who represented their clients' interests fiercely and committed significant resources to countering Plaintiffs' claims. *See*, *e.g.*, *In re Remicade Antitrust Litig.*, No. 17-cv-04326, 2023 WL 2530418, at *25 (E.D. Pa. Mar. 15, 2023) (crediting that "[t]he attorneys representing both parties are well credentialed, highly qualified, and have years of experience litigating similar matters, so this factor weighs in favor of

finding the requested fees reasonable"); *Meredith Corp. v. SESAC, LLC*, 87 F.

Supp. 3d 650, 670 (S.D.N.Y. 2015) (noting counsel's achievement in securing

valuable compensation despite the formidable opposition).

### 4. The Complexity and Duration of the Action, Along with the Significant Time Devoted to It, Favor the Requested Fee

The complexity—and attendant risk—of this litigation, along with the

significant time Class Counsel devoted to it since 2021, support the reasonableness

of the requested fees. As courts within this Circuit and around the country

recognize, "antitrust class actions are among the most complex to litigate."

*Remicade*, 2023 WL 2530418, at *25; *see In re Polyurethane Foam Antitrust Litig.*,

168 F. Supp. 3d 985, 1011 (N.D. Ohio 2016) ("Antitrust class actions are

inherently complex. The legal and factual issues are complicated and highly

uncertain in outcome.").

Navigating these complex factual and legal issues over four years, Plaintiffs

briefed and defeated Defendants' motion to dismiss, engaged in extensive fact and

expert discovery, and briefed class certification and *Daubert* motions that was

vigorously contested by Defendants, all of which weighs heavily in favor of the

attorneys' fees request. *See*, *e.g.*, *In re Insurance Brokerage*, 297 F.R.D. 136, 154-

55 (D.N.J. 2013) (crediting that class counsel "engaged in extensive discovery and

motion practice, and the litigation of th[e] matter ha[d] been a costly and lengthy

process for all parties"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231,

16

261 (crediting that "[t]he litigation ha[d] already progressed for over three years on multiple fronts through motions, appeals, discovery, consolidation, and lengthy settlement negotiations"); *Remicade*, 2023 WL 2530418, at *25 (crediting that class counsel litigated the case for five years, including "brief[ing] a motion to dismiss, engag[ing] in years of complex document and written discovery, and depos[ing] dozens of party and non-party witnesses"). In total, Class Counsel collectively expended more than 24,000 hours prosecuting Plaintiffs' claims against Defendants, demonstrating their substantial commitment to this Action. *See* Suppl. Decl. Exs. 1-4.

### 5.    The Risk of Nonpayment Favors the Requested Fee, Which Is Consistent with Private Contingent Fee Agreements

Class Counsel invested 24,057.4 hours and $2,702,804.95 in costs litigating Plaintiffs' complex antitrust claims without any guarantee of payment.

"Any contingency fee includes a risk of nonpayment." *Processed Egg*, 2012 WL 5467530, at *4. Taking a case on contingency supports the fee award because given "the complexity of the case and the defenses available to [Defendants], it is not difficult to imagine scenarios in which recovery could be drastically reduced or precluded altogether—whether at the class certification, summary judgment, trial, or appellate stages." *Johnson*, 2013 WL 6185607, at *8. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis

17

militates in favor of approval." *In re Cigna-Am. Specialty Health Admin. Fee Litig.*, No. 16-cv-03967, 2019 WL 4082946, at *13 (E.D. Pa. Aug. 29, 2019).

The fee request of 33.33% is also consistent with "the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained." *AT&T*, 455 F.3d at 166 (citing *Prudential*, 148 F.3d at 340). If this were an individual action, the customary contingent fee would likely range between 30% and 40% of the recovery. *See*, *e.g.*, *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-00085, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012); *see also Processed Egg*, 2012 WL 5467530, at *5 (finding one-third contingency fees are standard in litigation).

### 6. The Requested Fee Is in Line With Awards in Similar Cases

The request for 33.33% of the settlement fund is supported by Third Circuit precedent. "A one-third fee award is standard in complex antitrust cases of this kind. Indeed, a one-third award is consistent with awards in other complex antitrust actions." *Flonase*, 291 F.R.D. at 104 (citing antitrust cases awarding 33.33%); *see also Glaberson*, 2015 WL 5582251, at *13 (citing additional antitrust cases that "award[ed] fees of one-third of the value of class action settlements"). While there is no general rule as to what percentage of the common fund should be awarded as

18

attorneys' fees, *see Ikon Office Sols.*, 194 F.R.D. at 193, a one third fee award

"[falls] in the middle" of the range of fees granted in the Third Circuit. *See*

*Whiteley v. Zynerba Pharms. Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16,

2021). Accordingly, the requested 33.33% fee award is reasonable.

### 7. The Benefits of the Settlements Are Attributable to Class Counsel

Courts also consider the "value of benefits accruing to class members

attributable to the efforts of class counsel as opposed to other groups …." *AT&T*,

455 F.3d at 166 (citing *Prudential*, 148 F.3d at 338). The benefits of the

Settlements in this case are attributable solely to the work of Class Counsel. *See In*

*re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *11 (E.D.

Pa. Oct. 28, 2022) ("Lead counsel did not ride on anyone's coattails in this action

…."). No other private firm, other than Lead Counsel, did the work to develop this

case, and there is no reason to believe that any lawsuit would have been filed but

for Lead Counsel's efforts, which supports the reasonableness of the fee request.

### 8. The Terms of the Settlement Favor the Requested Award

"In certain cases, a district court may find that 'class counsels'

representation and the results achieved [by the settlement agreement] were

'nothing short of remarkable.'" *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 06-

cv-1833, 2020 WL 1922902, at *31 (E.D. Pa. Apr. 21, 2020) (quoting *Prudential*,

148 F.3d at 339). Achieving a settlement in a no-poach case is extremely

19

challenging, as noted in the low recoveries in similar cases. *See* Section I.B.1 *supra*. To receive class certification, Plaintiffs would have had to show that classwide evidence demonstrates the alleged No-Poach Agreement suppressed job mobility and wages across Defendants' Healthcare Workers. Moreover, to reach the combined $28.5 million recovery here, Lead Counsel were also forced to overcome the unexpected and untimely loss of one their key economic experts. *See* Joint Decl. ¶¶50-51. Additionally, the Settlements provide cooperation agreements as a safety measure should one of the Settlement Agreements terminate. This factor supports the fee request or, at least, is neutral.

### C. A Cross Check of Class Counsel's Lodestar Confirms the Reasonableness of the Requested Fee

Class Counsel's requested fee award is confirmed by a lodestar cross-check, which compares a percentage of the recovery award with the hours spent by Class Counsel working on the case at a reasonable hourly billing rate. *See Gunter*, 223 F.3d at 195 n.1; *In re Cendant*, 404 F.3d at 188 (recommending use of a lodestar cross-check "to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple"); *In re Rite Aid*, 396 F.3d at 305-06 ("The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work.").

20

Examining the submitted time summaries[5] (Suppl. Decl. Exs. 1-4), there is no windfall to Class Counsel because, as shown below, the lodestar here exceeds the requested fee award, which is known as a "negative multiplier."

The "lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164. Indeed, the lodestar multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id.* at 172-73.

Here, Class Counsel collectively spent 24,057.4 hours prosecuting this case over more than four years, resulting in a lodestar value of $16,895,386.50 at current rates.[6] As reflected in the accompanying firm declarations (Suppl. Decl. Exs. 1-4), Class Counsel's hourly rates are well within the range that has been approved as reasonable by courts. *See, e.g.*, *Remicade*, 2023 WL 2530418, at *28 (finding rates "rang[ing] from $115 to $1,325, fall well within the range of rates charged by other attorneys in this market"); *Whiteley*, 2021 WL 4206696, at *14 (approving class counsel rates ranging from $110 to $1,100).

---

[5] *See Warfarin*, 212 F.R.D. at 263 ("When performing the lodestar analysis as a cross check on the fee award, the court may find it sufficient to review time summaries, rather than the actual billing records.") (citing *Gunter*, 223 F.3d at 200).

[6] "Using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task of the district court." *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 923 & n.41 (3d Cir. 1985); *see also Flonase*, 291 F.R.D. at 106 (using current rates for lodestar cross-check in granting one-third fee award).

Applying Class Counsel's lodestar of $16,895,386.50 to the requested fee of $9,499,050 ($28.5 million * 0.3333) results in a multiplier of 0.56. "Where, as here, there is a negative multiplier (*i.e.*, the multiplier is less than 1), it means that class counsel 'receive *less* under a percentage fee award than their regular billing rates.'" *Remicade*, 2023 WL 2530418, at *29. Courts have found that a negative multiplier is strong additional support for the requested fee. *See, e.g.*, *O'Hern*, 2023 WL 3204044, at *10 (a negative multiplier "is well under the generally accepted range and provides strong additional support for approving the attorneys' fee request"); *Flonase*, 291 F.R.D. at 106; *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2014 WL 296954, at *8 (E.D. Pa. Jan. 27, 2014). This means that Plaintiffs are only requesting 56 cents for every dollar of lodestar they have put towards litigating the Action. The lodestar cross-check further supports the requested fee.

## II.    Class Counsel's Requested Litigation Expenses Are Reasonable

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *Innocoll*, 2022 WL 16533571, at *12. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Johnson*, 2013 WL 6185607, at *10. Here, Class Counsel requests reimbursement of costs and expenses incurred by Class Counsel

in connection with this litigation in the amount of $2,702,804.95.

The expenses borne by Class Counsel are documented in the accompanying firm declarations. *See* Suppl. Decl. Exs. 1-4. Consistent with Third Circuit precedent, Class Counsel's reasonable expenses include: assessments; deposition and court reporter costs; costs for the electronic storage, retrieval, and searches of ESI; Court, filing, and service costs; expert witness and consultant fees and expenses; data and materials provided by outside third-party vendors, consultants, and attorneys; and bank and financial charges. Suppl. Decl. ¶¶13-17. The majority of the expenses ($2,392,369.32) consisted of the fees paid (or owed) to three testifying experts, one of whom (Dr. Johnson) was required to step in when Prof. Leamer tragically passed away, which were essential to litigate a case of this complexity. *See id.* All these expenses are of the same type routinely approved in antitrust class actions. *See, e.g.*, *Remicade*, 2023 WL 2530418, at *29.

### III. The Requested Service Awards to the Class Representatives Are Reasonable

Class Counsel also seek service awards of $10,000 each for the two Class Representatives (totaling $20,000). "Service awards are regularly granted to 'compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation and [ ] reward the public service of contributing to the enforcement of mandatory laws.'" *Remicade*, 2023 WL 2530418, at *29; *Linerboard*, 2004 WL 1221350, at *18 (finding "ample

authority" for service awards as "the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly").

The Class Representatives undertook significant work to protect the interests of the Settlement Class as a whole. They collectively have devoted many hours to the litigation from the early case investigation leading to the February 3, 2021 complaint. Joint Decl. ¶¶8, 10. Each Class Representative worked closely with Lead Counsel to respond to Defendants requests for production of documents, three sets of interrogatories, and two sets of requests for admissions. *Id.* ¶¶29-31. Defendants' discovery requests were expansive and sought detailed information on each Class Representative's employment history, including job application history, employment records, compensation, and qualifications. *Id.* Both Class Representatives were deposed twice and they each spent hours preparing for and sitting for these depositions. *Id.* ¶40.

The awards requested here are consistent with awards that Courts in this Circuit and elsewhere have awarded to class representatives for their services. *See*, *e.g.*, *Remicade*, 2023 WL 2530418, at *29-*30 (awarding $15,000 to one class representative and $15,600 to a second); *Linerboard*, 2004 WL 1221350, at *18-*19 (awarding $25,000 each to five class representatives); *In re Residential Doors Antitrust Litig.*, No. 94-cv-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (awarding $10,000 each to four class representatives); *Kanefsky v. Honeywell Int'l*

24

*Inc.*, No. 18-cv-15536 (WJM), 2022 WL 1320827, at *12 (D.N.J. May 3, 2022) (awarding $10,000 each to two class representatives).

Accordingly, because the Class Representatives' contributions have benefited the entire Settlement Class, Class Counsel respectfully submit this request for service awards of $10,000 for each Class Representative to be paid from the Settlement Fund.

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court issue an order substantially in the form of the proposed Order: (i) awarding Class Counsel attorneys' fees in the amount of 33.33% of the Settlement Fund (plus interest on the fee award), or $9,499,050 from the Settlement Fund plus interest; (2) order reimbursement of litigation expenses incurred by Class Counsel in the amount of $2,702,804.95; and (3) award service awards in the amount of $10,000 to both Class Representatives.

Dated: January 20, 2026

Respectfully submitted,

*/s/ Adam J. Zapala*
Adam J. Zapala (*Pro Hac Vice*)
Elizabeth T. Castillo (*Pro Hac Vice*)
Christian S. Ruano (*Pro Hac Vice*)
**COTCHETT, PITRE &**
**McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

*/s/ Daniel J. Walker*
Daniel J. Walker (*Pro Hac Vice*)
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Phone: (202) 559-9745
dwalker@bergermontague.com

Eric L. Cramer (PA Bar No. 69289)
Shanon Jude Carson (PA Bar No. 85957)
Michael J. Kane (PA Bar No. 73998)
Michaela L. Wallin (*Pro Hac Vice*)
J. Taylor Hollinger (PA Bar No. 332706)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-4604
Fax: (215) 875–5707
ecramer@bergermontague.com
scarson@bergermontague.com
mkane@bergermontague.com
mwallin@bergermontague.com
thollinger@bergermontague.com

**CERTIFICATE OF SERVICE**

I, Daniel J. Walker, hereby certify that on January 20, 2026, I filed a true and correct copy of the foregoing Plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards to the Class Representatives with the Court's Case Management/Electronic Case Filing System and thereby served upon all counsel of record in this matter.

*/s/ Daniel J. Walker*
Daniel J. Walker