# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE GEISINGER SYSTEM SERVICES AND EVANGELICAL COMMUNITY HOSPITAL HEALTHCARE WORKERS ANTITRUST LITIGATION | No. 4:21–cv–00196<br><br>Chief Judge Matthew W. Brann |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENTS

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.     INTRODUCTION ................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND....................................4

    A.    Procedural History of the Litigation .......................................4

    B.    The Settlements ......................................................................5

        1.    Settlements Negotiations ............................................5
        2.    The Settlement Class ..................................................6
        3.    Monetary Relief .........................................................7
        4.    Release of Claims and Dismissal................................8

III.   LEGAL STANDARD.............................................................................9

    A.    The Law and Public Interest Favor and Encourage Settlement...........9

    B.    Final Approval Standards Under Rule 23(e), *Girsh*, and *Prudential* ..........................................................................10

IV.   ARGUMENT .....................................................................................13

    A.    The Proposed Settlements Are Fair, Reasonable, and Adequate Under Rule 23(e)(2) ...............................................................13

        1.    Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class......................................13

        2.    The Proposed Settlements Were Negotiated at Arm's-Length ..............................................................16

        3.    The Proposed Settlements Are Adequate in Light of the Litigation Risks, Costs and Delays of Trial and Appeal...........17

            a.    The Settlement Eliminates the Additional Costs, Risks, and Delay of Continued Litigation................................17

            b.    The Proposed Method for Distributing Relief Is Effective ....................................................................22

i

       c.     Class Counsel's Request for Attorneys' Fees and
Reimbursement of Expenses Is Reasonable..................24

       d.     Agreements To Be Identified Under Rule 23(e)(3).......26

    4.    The Settlements Ensure Settlement Class Members Are Treated
Equitably ....................................................................................27

B.    The *Girsh* Factors Favor Approval of the Settlements ......................29

    1.    The Settlement Class Have Reacted Positively to the
Settlements.................................................................................29

    2.    The Stage of the Proceedings and Amount of Discovery
Completed Favor Approval ......................................................30

    3.    Defendants' Ability to Withstand a Greater Judgment ...........31

C.    Notice to the Settlement Class Satisfied the Requirements of Rule 23
and Due Process ...............................................................................33

V.    CONCLUSION ...........................................................................36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. Brightview Landscapes, LLC*,
  No. CV 3:13-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017)..................26

*In re Baby Prods. Antitrust Litig.*,
  708 F. 3d 163 (3d Cir. 2013) ............................................................13, 23, 33

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) .........................................................................14

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...........................................................................29

*Binotti v. Duke Univ.*,
  No. 1:20-cv-00470-CCE, 2021 U.S. Dist. LEXIS 225003
  (M.D.N.C. Aug. 30, 2021)..............................................................................22

*Bredbenner v. Liberty Travel, Inc.*,
  No. CIV.A. 09-1248-MF, 2011 WL 1344745 (D.N.J. Apr. 8,
  2011) ...............................................................................................................18

*Calhoun v. Invention Submission Corp.*,
  No. 2:19-CV-01396, 2023 WL 2411354 (W.D. Pa. Mar. 8,
  2023) ...............................................................................................................12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................*passim*

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ...................................................................18

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) .........................................................................14

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995) ...........................................................................10

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) ....................................................25

*Fuentes v. Jiffy Lube Int'l, Inc.*,
  No. 2:18-cv-05174-ABB, 2024 U.S. Dist. LEXIS 94102 (E.D.
  Pa. May 28, 2024) ......................................................................21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*,
  55 F.3d 768 (3d Cir. 1995) ..............................................9, 18, 30

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ..............................................*passim*

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
  934 F.3d 316 (3d Cir. 2019) .......................................................9

*Halley v. Honeywell Int'l, Inc.*,
  861 F.3d 481 (3d Cir. 2017) .......................................................3

*Hargrove v. Sleepy's LLC*,
  974 F.3d 467 (3d Cir. 2020) .....................................................20

*In re HealthSouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) .............................................27

*In re Humanigen, Inc. Sec. Litig.*,
  No. 2:22-CV-05258, 2024 WL 4182634 (D.N.J. Sept. 13, 2024) ...............12

*Jackson v. Wells Fargo Bank, N.A.*,
  136 F. Supp. 3d 687 (W.D. Pa. 2015) ...........................................3

*Kanefsky v. Honeywell Int'l, Inc.*,
  No. 18-CV-15536 (WJM), 2022 WL 1320827 (D.N.J. May 3,
  2022) ........................................................................................29

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) ...........................................33

*Lenahan v. Sears, Roebuck & Co.*,
  No. CIV. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006),
  *aff'd*, 266 Fed. Appx. 114 (3d Cir. 2008) ....................................18

*In re Linerboard Antitrust Litig.*,
    292 F.Supp.2d 631 (E.D.Pa.2003)...................................................16

*In re Linerboard Antitrust Litig.*,
    296 F.Supp.2d 568 (E.D.Pa.2003)...................................................18

*In re Linerboard Antitrust Litig.*,
    No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2,
    2004), *amended*, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D.
    Pa. June 4, 2004)..........................................................................29

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13MD02420YGRDMR, 2020 WL 7264559 (N.D. Cal.
    Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th
    Cir. Nov. 16, 2022).......................................................................19

*Martina v. L.A. Fitness Int'l, LLC*,
    No. 2:12-CV-2063, 2013 WL 5567157 (D.N.J. Oct. 8, 2013)....................20

*McDonough v. Toys "R" Us, Inc.*,
    80 F. Supp. 3.d 626, 645 (E.D. Pa. 2015).......................................32

*McDonough v. Toys R Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015).......................................19, 21

*In re Motorsports Merchandise Antitrust Litig.*,
    112 F.Supp.2d 1329 (N.D.Ga.2000)...........................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950).....................................................................33

*In re N.J. Tax Sales Certificate Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018).....................................................12

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ..................................................16

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016)............31, 32, 33

*In re Papa John's Emp. and Franchisee Emp. Antitrust Litig.*,
    No. 3:18-cv-00825-BJB-RSE, 2025 U.S. Dist. LEXIS 152012
    (W.D. Ky. Aug. 7, 2025.) ..............................................................21

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ....................................................................9, 12

*In re Processed Egg Prods. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012) ...............................................................31

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-MD-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012)...................25

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ...............................................................*passim*

*In re Railway Indus. Emp. No-Poach Antitrust Litig.*,
   No. 2:18-mc-00798-JFC, 2020 U.S. Dist. LEXIS 249904 (W.D.
   Pa. Aug. 26, 2020) ...................................................................................22

*In re Remicade Antitrust Litig.*,
   No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023)................28

*In re Residential Doors Antitrust Litig.*,
   No. 94-CV-3744, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) ......................29

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. 2012) ...............................................................14

*Silvis v. Ambit Energy L.P.*,
   326 F.R.D. 419 (E.D. Pa. 2018) ...............................................................18

*Stevens v. SEI Investments Co.*,
   No. 18-CV-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020)....................20

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ......................................................................28

*Tobler v. 1248 Holdings, LLC*,
   No. 2:24-CV-02068-EFM-GEB, 2025 WL 3494645 (D. Kan.
   Dec. 5, 2025)..............................................................................................19

*Tumpa v. IOC-PA, LLC*,
   2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ...................................................30

*Vasquez v. A+ Staffing LLC*,
   746 F. Supp. 3d 26 (E.D.N.Y. 2024)..........................................................27

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
    726 F.2d 956 (3d Cir. 1983) ...................................................................10, 28

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ..............................................................*passim*

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir.
    2007) .................................................................................................21, 26

*Whiteley v. Zynerba Pharms., Inc.*,
    No. 19-cv-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ...................17

## Rules and Statutes

Fed. R. Civ. P. 23 ...............................................................................*passim*

28 U.S.C. § 1715 .........................................................................................34

## Other Authorities

*Newberg and Rubenstein on Class Actions*
    § 13 (6th ed., Dec. 2025) ......................................................................10, 27

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| Central Pennsylvania | A region in central Pennsylvania that includes Union, Snyder, Northumberland, Montour, Lycoming, and Columbia counties and the cities of Danville and Lewisburg, where Geisinger Medical Center and Evangelical Community Hospital are headquartered. |
| Class Counsel or Co-Lead Counsel | Berger Montague PC and Cotchett, Pitre & McCarthy, LLP |
| Class Counties | Union, Snyder, Northumberland, Montour, Lycoming and Columbia |
| Class Period | January 1, 2014 to August 5, 2020 |
| Class Representatives or Named Plaintiffs | Nichole Leib and Kevin Brokenshire |
| Complaint or Compl. | Consolidated Amended Class Action Complaint (Feb. 2, 2023) (Dkt. 101) |
| Defendants | Geisinger System Services and Evangelical Community Hospital |
| Evangelical | Evangelical Community Hospital |
| Geisinger | Geisinger System Services |
| Healthcare Workers | Nurses, physicians, advanced practitioners, medical support personnel, and other healthcare professionals (*see* Corrected Expert Report of Edward Leamer Ph.D., Dkt. 188-3, ¶ 21) |
| Settlements | The Settlement Agreement between Plaintiffs and Geisinger and the Settlement Agreement between Plaintiffs and Evangelical |
| Settlement Class | All natural persons who worked as Health Care Workers (as defined herein) at Geisinger's or Evangelical's facilities located in Union, Snyder, |

| | Northumberland, Montour, Lycoming, and Columbia counties in the Commonwealth of Pennsylvania ("Class Counties") from January 1, 2014 through August 5, 2020.<br><br>Excluded from the Class are members of Geisinger's and Evangelical's boards of directors, Geisinger's and Evangelical's C-Suite Executives, and any and all judges assigned to hear or adjudicate any aspect of this litigation and their judicial staff. |
|---|---|
| Settlement Class Member | A member of the Settlement Class |
| Settlement Fund | The sum of Plaintiffs' settlement with Geisinger ($19 million) and Plaintiffs' settlement with Evangelical ($9.5 million) |

## I.    INTRODUCTION

Plaintiffs Nichole Leib and Kevin Brokenshire, on behalf of themselves and the Settlement Class, by and through Class Counsel, respectfully move for final approval of these exceptional Settlements reached with Defendants Geisinger and Evangelical.[1] These Settlements entirely resolve this complex antitrust class action alleging Defendants' agreement not to recruit or solicit each other's Healthcare Workers – conduct that Plaintiffs contend restricted job mobility and artificially suppressed wages. *See* Dkt. 101.

After over four years of vigorously contested litigation, the Settlements provide a combined $28.5 million non-reversionary recovery for the benefit of the Settlement Class – $9.5 million from Evangelical and $19 million from Geisinger. *See* Dkt. 246-1 & Dkt. 246-2. If finally approved, the Settlements will deliver substantial, certain, and timely monetary relief to Settlement Class Members while eliminating the significant risks, delay, and expense of continued litigation through class certification, summary judgment, trial, and appeal. Joint Decl. ¶ 11.

The Settlements are procedurally sound; they are the product of extensive arm's-length negotiations between experienced counsel following years of hard-fought litigation. *See* Dkt. 246 ¶ 4. The Settlements came after Class Counsel

---

[1] Citations to the Settlement Agreements refer to their docket entries: Dkt. 246-1 (Evangelical) and Dkt. 246-2 (Geisinger).

conducted substantial factual investigation, reviewed hundreds of thousands of documents, took dozens of depositions, retained and worked closely with economic experts, and litigated complex motions, including defeating Defendants' motion to dismiss and briefing class certification and *Daubert* issues, before reaching the Settlements. *Id*. ¶ 5. This well-developed factual and evidentiary record enabled the parties to comprehensively assess the merits of the litigation and negotiate meaningful relief for the Settlement Class. *Id*.

The Settlements are substantively fair and reasonable; they provide significant and immediate relief to the Settlement Class. Under the approved Plan of Allocation (*see* Dkts. 249 at 26-29; 257 ¶ 9), each Settlement Class Member will receive a guaranteed minimum payment of $250, with additional *pro rata* recovery based on the Settlement Fund, yielding meaningful compensation relative to the alleged harm. *See* Dkt. 246 ¶ 66. The cumulative recovery compares favorably with results obtained in similar no-poach antitrust cases and reflects the informed judgment of experienced antitrust counsel. *Id*. ¶ 4, n.7.

The Settlements also avoid substantial litigation risk. Defendants vigorously contested liability, damages, class certification, and expert testimony at every stage of the case. *Id*. ¶ 73. Continued litigation would have required years of additional proceedings with no guarantee of recovery—and the possibility the Class could recover less than, or nothing beyond, the proposed Settlements. *Id*. ¶¶ 68, 73.

2

The Settlement Class, which consists of Healthcare Workers employed at Defendants' facilities in the Class Counties between January 1, 2014 and August 5, 2020 (*see* Dkt. 257 ¶¶ 2-3), has responded overwhelmingly positively, as there have been ***zero*** objections to the Settlements and only one opt-out. *See* Decl. of Markeita Reid of A.B. Data ("Reid Decl.") ¶¶ 28, 29. Approximately 11,228 individuals stand to benefit (*i.e.*, receive payment) from the Settlements. *Id*. ¶¶ 31, 32. Taken together, this is an extraordinary result for any class action settlement.[2]

As discussed *infra*, the Settlements satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23 and easily meet the Third Circuit's standards for final approval. Plaintiffs respectfully request the Court approve the Settlements, including the Plan of Allocation, and enter a Final Judgment and Order terminating this litigation (both filed with this motion).

---

[2] *See*, *e.g.*, *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 495-96 (3d Cir. 2017) (finding that the district court did not abuse its discretion in approving a settlement in part because the reaction of the class supported the settlement, as only 28 out of 3,497 class members had opted out). *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("*Cendant*") ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 702 (W.D. Pa. 2015) (citing Newberg on Class Actions) (noting that 10 objections and 354 opt-outs of the settlement class of 2,315,362 members that amounted to approximately 0.0004% and 0.02% of the class, respectively, was, "[b]y any measure … a positive indicator of fairness").

## II.    FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.    Procedural History of the Litigation

This action arose from allegations that Defendants entered into an agreement not to recruit or solicit each other's Healthcare Workers, thereby artificially suppressing wages and restricting employee mobility in violation of the antitrust laws. *See* Dkt. 101.

Following substantial pre-filing investigation, Plaintiffs commenced this class action on February 3, 2021. *See* Dkt. 1. A related action was filed shortly thereafter (*Sauer v. Geisinger Health, et al.*, Case No. 4:21-cv-00263-MWB), and the Court consolidated the cases and appointed Berger Montague PC and Cotchett, Pitre & McCarthy, LLP as Interim Co-Lead Class Counsel. *See* Dkt. 246 ¶¶ 8-9; *see* Dkt. 43.

Plaintiffs filed a Consolidated Class Action Complaint on March 18, 2021. *See* Dkt. 246 ¶ 10; *see also* Dkt. 46. After several years of protracted litigation, including briefing Defendants' motion to dismiss, which the Court denied as to Plaintiffs' Sherman Act claims on November 16, 2021 (*see* Dkt. 246 ¶ 11; Dkts. 66, 67), Plaintiffs filed a Consolidated Amended Class Action Complaint on February 2, 2023. *See* Dkt. 246 ¶ 13; *see also* Dkt. 101.

---

[3] For a full and detailed description of the facts and procedural history of the case, refer to the Joint Declaration of Eric L. Cramer and Adam J. Zapala in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlements and Approval of the Notice Plan. Dkt. 246.

Fact discovery spanned multiple years and included extensive written discovery and negotiations, large-scale document and structured compensation data productions, and extensive depositions of party and nonparty witnesses. *See* Dkt. 246 ¶¶ 18-40. Plaintiffs also retained leading economic experts and engaged in extensive expert discovery, including opening and rebuttal reports, expert depositions, and *Daubert* challenges. *Id*. ¶¶ 41-54.

Following completion of fact and expert discovery, Plaintiffs moved for class certification on June 14, 2024. *Id*. ¶ 56; *see also* Dkts. 177, 178. The parties fully briefed class certification and multiple *Daubert* motions challenging expert testimony. Dkt. 246 ¶¶ 55-62; *see also* Dkts. 175-182, 184, 201, 202, 204, 205, 221, 224.

### B.    The Settlements

#### 1.    Settlements Negotiations

Settlement discussions occurred against the backdrop of over four years of hard-fought litigation, including extensive fact and expert discovery, class certification briefing, and *Daubert* motion practice. *See* Dkt. 246 ¶ 63.

The parties first began discussing potential resolution in mid-2023. *Id*. ¶ 64. Thereafter, Plaintiffs engaged in extended negotiations with each Defendant separately. *Id*. Meaningful progress toward resolution did not occur until late 2024,

after the parties had completed class certification briefing and *Daubert* proceedings. *Id*. ¶ 64.

Following months of arm's-length negotiations, Plaintiffs reached separate agreements in principle with each Defendant: Evangelical on March 13, 2025, and Geisinger on March 27, 2025. *Id*. The parties thereafter negotiated the detailed terms of the long-form Settlement Agreements over the course of approximately 10 weeks. *Id*. Plaintiffs executed the Settlement Agreement with Evangelical on June 9, 2025 and the Settlement Agreement with Geisinger on June 13, 2025. *Id*.; *see also* Dkts. 246-1, 246-2.

At all times, the negotiations were conducted at arm's length by experienced counsel and were informed by a well-developed record, including extensive document discovery, deposition testimony, and expert analysis. *See* Dkt. 246 ¶¶ 4, 64, 68, 75; *see also* Dkts. 246-1 at 2, 246-2 at 2.

### 2.    The Settlement Class

In its Preliminary Approval Order, the Court certified the Settlement Class pursuant to Rules 23(a) and 23(b)(3) for purposes of settlement and final judgment. *See* Dkt. 257 ¶¶ 2, 3.

The Settlement Class consists of:

All natural persons who worked as Healthcare Workers (as defined herein) at Geisinger's or Evangelical's facilities located in Union, Snyder, Northumberland, Montour, Lycoming, and Columbia counties in the Commonwealth of Pennsylvania (the "Class Counties") from

6

> January 1, 2014 through August 5, 2020. Excluded from the Settlement
> Class are members of Geisinger's and Evangelical's boards of directors,
> Geisinger's and Evangelical's C-Suite Executives (as defined herein),
> and any and all judges assigned to hear or adjudicate any aspect of this
> litigation and their judicial staff.

Dkt. 257 ¶ 3. Healthcare Workers is defined to include nurses, physicians, advanced

practitioners, medical support personnel, and other healthcare professionals who

contribute to the healthcare system in various capacities such as health technicians,

therapists, and healthcare managers. *Id*. n.3.

The Court appointed Plaintiffs Nichole Leib and Kevin Brokenshire as Class

Representatives and Berger Montague PC and Cotchett, Pitre & McCarthy, LLP as

Co-Lead Counsel for the Settlement Class. *Id*. ¶¶ 5, 6.

    3.    Monetary Relief

The Settlements establish a combined $28.5 million non-reversionary

settlement fund for the benefit of the Settlement Class. *See* Dkt. 246 ¶ 2. Under the

terms of the Settlement Agreements, Defendant Evangelical agreed to pay $9.5

million and Defendant Geisinger agreed to pay $19 million. *Id*.; *see also* Dkts. 246-

1 at 10; 246-2 at 10. Defendants' settlement payments are non-reversionary; once

paid, no portion of the settlement fund will revert to Defendants, regardless of the

number of claims submitted or payments made to Settlement Class Members. *See*

Dkts. 246-1 ¶ 15, 33; 246-2 ¶ 15, 35. The settlement fund will be used to provide

monetary payments to eligible Settlement Class Members, pay notice and settlement

7

administration costs, and satisfy any Court-approved attorneys' fees, litigation expenses, and service awards. *See* Dkts. 246-1 ¶ 29; 246-2 ¶ 30.

Under the preliminarily approved Plan of Allocation, each eligible Settlement Class Member will receive a guaranteed minimum payment of $250, with a possible additional recovery distributed on a *pro rata* basis depending on the size of the net Settlement Fund and each Settlement Class Member's relative share of compensation during the Class Period. *See* Dkts. 249 at 26-29, 257 ¶ 9.

### 4.    Release of Claims and Dismissal

The Settlements provide for the full and final resolution of this litigation as between Plaintiffs, the Settlement Class, and Defendants. Joint Decl. of Eric L. Cramer and Adam J. Zapala ("Joint Decl.") ¶ 3. Upon the Effective Date,[4] Plaintiffs and all Settlement Class Members who do not timely and validly request opt-out, release and discharge Defendants and their related entities and affiliates from the claims and identical factual predicates arising from this action. *See* Dkts. 246-1 ¶¶ 10, 11, 31; 246-2 ¶¶ 10, 11, 33.

---

[4] See the definition for "Effective Date" within the Settlements. Dkts. 246-1 ¶ 1-m, 246-2, ¶ 1-m.

All Settlement Class Members who do not opt out are bound by the releases and by the final judgment entered by the Court, regardless of whether they submit a claim for payment from the Settlement Fund. *See* Dkts. 246-1 ¶ 31; 246-2 ¶ 33.[5]

## III.    LEGAL STANDARD

### A.    The Law and Public Interest Favor and Encourage Settlement

Courts have repeatedly emphasized the strong public and institutional interest in resolving complex class actions through settlement, particularly in the Third Circuit. "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010) ("*Pet Food*") (reaffirming the overriding public interest in settling class action litigation). The law likewise "favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*In re Gen. Motors Corp*"); *see In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) ("[W]e favor the parties reaching an amicable agreement and

---

[5] It should be noted, however, that the vast majority of Settlement Class Members will automatically receive a payment based on the compensation data Defendants produced to Plaintiffs as part of discovery in addition to Social Security Numbers Defendants provided to the Settlement Administrator post-settlement. *See* Reid Decl. ¶ 3 n.1, 7, 31.

avoiding protracted litigation."); *Newberg and Rubenstein on Class Actions* §13:44 (6th ed. 2025) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). The disposition of a class action settlement "is committed to the sound discretion of the district court. It can endorse a settlement only if the compromise is 'fair, adequate, and reasonable.'" *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983)).

**B.    Final Approval Standards Under Rule 23(e), *Girsh*, and *Prudential***

Rule 23(e) provides the applicable standard for approval of a class action settlement; generally, a class action settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination, the court must consider certain factors, including:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    i.   the costs, risks, and delay of trial and appeal;

    ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii. the terms of any proposed award of attorney's fees, including timing of payment; and

    iv.  any agreement required to be identified under Rule 23(e)(3); and

10

(D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2). Interpreting 23(e) requires "courts to independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Cendant*, 264 F.3d at 231.

In addition to the factors delineated in Rule 23(e), the Third Circuit "has identified nine factors to be considered when determining whether a proposed class action settlement is fair, reasonable and adequate." *Warfarin*, 391 F.3d at 534. These factors include:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendant to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). Importantly, the *Girsh* inquiry is holistic rather than rigid—no single factor is dispositive. The Third Circuit has recognized that "a court may approve a settlement even if it does not

11

find that each of [the *Girsh*] factors weigh in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018). Courts in the Third Circuit have confirmed the continued use of these factors after the 2018 amendments to the Federal Rules of Civil Procedure. *See*, *e.g.*, *In re Humanigen, Inc. Sec. Litig.*, No. 2:22-CV-05258, 2024 WL 4182634, at *4 n.6 (D.N.J. Sept. 13, 2024).

In addition to the *Girsh* factors, the Third Circuit has subsequently identified further considerations that may inform the evaluation of a proposed class action settlement. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) ("*Prudential*"). These additional considerations, later clarified in *Pet Food*, 629 F.3d at 350, overlap with the *Girsh* framework and are non-exclusive. *Id*. ("The factors we identified in *Prudential* are illustrative of additional inquiries that in many instances will be useful[.]"). Thus, "[a] reviewing court need only address those *Prudential* considerations that are relevant to the litigation in question." *Calhoun v. Invention Submission Corp.*, No. 2:19-CV-01396, 2023 WL 2411354, at *15 (W.D. Pa. Mar. 8, 2023). The *Prudential* factors are:

(1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2) the existence and probable outcome of claims by other classes and subclasses;

12

(3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;

(4) whether class or subclass members are accorded the right to opt-out of the settlement;

(5) whether any provisions for attorneys' fees are reasonable; and

(6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323-24. "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Baby Prods. Antitrust Litig.*, 708 F. 3d 163, 174 (3d Cir. 2013) ("*Baby Prods.*").

As discussed below, the proposed Settlements satisfy the requirements of Rule 23, the *Girsh* factors, and the applicable *Prudential* factors, and therefore warrant approval. Indeed, at the preliminary approval stage, the Court considered all the Rule 23(e) factors, and found the Settlements likely compliant. *See* Dkt. 257 ¶¶ 7, 8.

## IV.    ARGUMENT

### A.    The Proposed Settlements Are Fair, Reasonable, and Adequate Under Rule 23(e)(2)

#### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

When evaluating whether a proposed class action settlement is fair, reasonable, and adequate, the Court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

13

"The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012). This requirement "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Both components of the adequacy inquiry favor approval here.

First, the Class Representatives' interests are fully aligned with those of the Settlement Class. The Class Representatives and all Settlement Class Members are Healthcare Workers who were allegedly harmed by Defendants' agreement not to recruit or solicit each other's employees—conduct that Plaintiffs contend artificially suppressed wages and restricted job mobility in common ways across the Settlement Class. *See* Dkt. 101. Plaintiffs seek the same relief as the rest of the Settlement Class and share identical legal and economic interests in obtaining compensation for the alleged antitrust violations. Joint Decl. ¶ 7. There is no evidence of any conflict between Plaintiffs and other Settlement Class Members.

14

Second, Class Representatives have actively and vigorously represented the Settlement Class throughout this litigation. They were involved in the early investigation of the claims and remained actively engaged throughout the prosecution of the case. *See* Dkt. 246 ¶ 8. They participated extensively in discovery, including multiple rounds of document production, responses to complex interrogatories, and repeated depositions - efforts that exceeded the typical discovery burden placed on class representatives. *See* Dkt. 246 ¶ 31. Class Representatives were each deposed twice and worked closely with Class Counsel in preparation for those examinations, participating in lengthy preparation sessions addressing both substantive and procedural issues to ensure accurate testimony on behalf of the proposed class. *See* Dkt. 246 ¶ 40. These substantial efforts demonstrate Plaintiffs' commitment to advancing the interests of the Class and fulfilling their fiduciary obligations as class representatives. *See* Joint Decl. ¶ 8.

Class Counsel likewise have adequately represented the Settlement Class. The Court appointed Berger Montague PC and Cotchett, Pitre & McCarthy, LLP as Interim Co-Lead Class Counsel, recognizing their extensive experience and qualifications to litigate complex antitrust class actions. *See* Dkt. 246 ¶ 9. Throughout over four years of litigation, Class Counsel conducted extensive factual investigation, engaged in substantial discovery, retained and worked closely with economic experts, litigated complex motions, and pursued class certification and

*Daubert* proceedings before reaching the Settlements. *See* Dkt. 246 *passim*. These efforts reflect diligent and capable representation of the Settlement Class at every stage of the litigation. Accordingly, both Plaintiffs and Class Counsel have adequately represented the Settlement Class. Rule 23(e)(2)(A) favors approval of the Settlements.

        2.      The Proposed Settlements Were Negotiated at Arm's-Length

The Settlements satisfy Rule 23(e)(2)(B) because they are the product of extensive, arm's-length negotiations between experienced counsel. *See* Dkt. 246 ¶¶ 4, 5, 64, 68, 75. Settlement discussions did not meaningfully progress until after the parties had completed extensive fact and expert discovery, briefed class certification, and litigated *Daubert* challenges thereby ensuring that both sides had access to a well-developed record for evaluating a settlement. Dkt. 246 ¶¶ 64, 75. The parties first reached agreements in principle in March 2025 and subsequently negotiated detailed long-form Settlement Agreements over several weeks. *Id*. ¶ 63, 64.

Courts generally give deference to settlements that result from arm's length negotiations between experienced counsel. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 640 (E.D.Pa.2003)); *Whiteley v.*

*Zynerba Pharms., Inc.*, No. 19-cv-4959, 2021 WL 4206696, at *4 (E.D. Pa. Sept. 16, 2021) ("Courts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery."). The negotiations were adversarial and conducted by experienced antitrust counsel. Dkt. 246 ¶¶ 5, 64. By the time of settlements, the discovery record was extensive and included substantial document productions, depositions, and expert analysis. *Id.* ¶ 5. And, as noted, there are no objections to the Settlements (or to Class Counsel's request for attorneys' fees and reimbursement of litigation expenses) and only one opt-out. *See* Reid Decl. ¶¶ 28, 29.

        3.      The Proposed Settlements Are Adequate in Light of the Litigation Risks, Costs and Delays of Trial and Appeal.

Rule 23(e)(2)(C) directs the Court to consider whether "the relief provided for the class is adequate," taking into account the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorneys' fees; and any agreements required to be disclosed under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). As demonstrated below, each of these considerations supports approval of the Settlements.

        a.      The Settlement Eliminates the Additional Costs, Risks, and Delay of Continued Litigation.

Rule 23(e)(2)(C)(i) directs the Court to consider whether the relief provided for the class is adequate in light of "the costs, risks, and delay of trial and appeal."

17

This inquiry substantially overlaps with the first, fourth, fifth, sixth, eighth, and ninth *Girsh* factors, which require courts to evaluate the complexity, expense, and length;[6] risks of continued litigation;[7] and the reasonableness of the settlement fund.[8] *See Girsh*, 521 F.2d at 157.

This action is a complex antitrust case involving alleged no-poach conduct across Central Pennsylvania. *See* Dkt. 101; *see also In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 577 (E.D.Pa.2003) (quoting *In re Motorsports Merchandise Antitrust Litig.*, 112 F.Supp.2d 1329, 1337 (N.D.Ga.2000) ("An antitrust class action is arguably the most complex action to prosecute."); *McDonough v. Toys R Us, Inc.*,

---

[6] The first *Girsh* factor captures "the probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at 233–34. Where the complexity, expense, and duration of litigation are significant, courts consistently view this factor as favoring settlement. *Warfarin*, 391 F.3d 516, 536 (3d Cir. 2004); *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248-MF, 2011 WL 1344745, at *11 (D.N.J. Apr. 8, 2011); *Lenahan v. Sears, Roebuck & Co.*, No. CIV. 02-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2006), *aff'd*, 266 Fed. Appx. 114 (3d Cir. 2008).

[7] The fourth, fifth, and sixth *Girsh* factors "balance the likelihood of success and potential damage award if the case were taken to trial against the benefits of immediate settlement." *Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 432 (E.D. Pa. 2018) (quoting *Prudential*, 148 F.3d at 319). They strongly support approval here.

[8] The eighth and ninth *Girsh* factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538. The question is whether the settlement reflects a prudent compromise—not whether it achieves the maximum theoretical recovery. *See In re Gen. Motors Corp.*, 55 F.3d at 806. In other words, "[t]his inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *Id*. A settlement may still be within a reasonable range, even though it represents only a fraction of the potential recovery. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000).

80 F. Supp. 3d 626, 640 (E.D. Pa. 2015) ("Antitrust class actions are particularly complex to litigate and therefore quite expensive."); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420YGRDMR, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ("Antitrust cases are particularly risky, challenging, and widely acknowledge to be among the most complex actions to prosecute."); *Tobler v. 1248 Holdings, LLC*, No. 2:24-CV-02068-EFM-GEB, 2025 WL 3494645, at *4 (D. Kan. Dec. 5, 2025) ("No poach litigation is a relatively novel with class actions only recently emerging about ten years ago."). Absent settlement, the litigation would continue through a series of costly and highly contested proceedings, including a decision on class certification, resolution of *Daubert* challenges, summary judgment, pretrial motions, a likely multi-week jury trial, post-trial motions, and appeals. Joint Decl. ¶ 9. Each of these phases would require substantial additional expenditure of resources by the parties and the Court. *Id.*

Although fact and expert discovery had been completed at the time of settlement, no litigation class has yet been certified and no liability finding has been made. Class certification in wage-suppression antitrust cases often turns on detailed econometric analysis and contested expert testimony. Joint Decl. ¶ 10. Defendants have vigorously challenged Plaintiffs' ability to demonstrate common impact and classwide damages. *See* Dkt. 246 ¶¶ 45, 52, 57, 60. An adverse certification ruling

would significantly limit or eliminate entirely any recovery for the Settlement Class. Even if initially certified, an order "may be altered or amended before final judgment." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) (quoting Fed. R. Civ. P. 23(c)(1)(C)). Courts have repeatedly recognized that "continuing litigation sometimes presents plaintiffs with the risk of losing class certification and any substantial trial award, so a settlement which provides immediate and definite relief is preferable to the prospect of receiving no relief at all." *Martina v. L.A. Fitness Int'l, LLC*, No. 2:12-CV-2063, 2013 WL 5567157, at *6 (D.N.J. Oct. 8, 2013).

Even if Plaintiffs prevailed on certification, substantial litigation risks remained. Those issues would continue to be sharply disputed and contested, and the outcome of trial would be uncertain for all parties. *See Warfarin*, 391 F.3d at 536 (noting that a settlement is favored when "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial."). Furthermore, as courts have recognized, the presence of dueling experts creates inherent trial risk, as there is "no compelling reason to think that a [fact finder] confronted with competing expert opinions would accept the plaintiff's damages theory rather than that of the defendant . . . ." *Stevens v. SEI Investments Co.*, No. 18-CV-4205, 2020 WL 996418, at *5 (E.D. Pa. Feb. 28, 2020) (quoting *Cendant*,

20

264 F.3d at 239). This battle of experts provides "no guarantee whom the [fact finder] would believe." *In Re Warfarin*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2007).

By contrast, the proposed Settlements provide immediate, certain, and substantial monetary relief. *See* Dkts. 246-1, 246-2. This guaranteed recovery stands in stark contrast to the uncertainty inherent in continued complex antitrust class action litigation, where the Settlement Class could recover less or nothing at all. Courts in this Circuit have repeatedly emphasized that private resolution of complex disputes "reduces expenses and avoids delay," and therefore weighs heavily in favor of approval. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 640 (E.D. Pa. 2015). Therefore, continued litigation would be lengthy, expensive, and uncertain. The Settlements eliminate those risks and provide meaningful and timely compensation to over 11,000 Healthcare Workers.

The cumulative recovery also compares favorably with settlements approved in similar no-poach antitrust cases and reflects the informed judgment of experienced antitrust counsel. *See, e.g.*, *Fuentes v. Jiffy Lube Int'l, Inc.*, No. 2:18-cv-05174-ABB, 2024 U.S. Dist. LEXIS 94102 (E.D. Pa. May 28, 2024) ($2 million recovery for no-poach by Jiffy Lube franchisees); *In re Papa John's Emp. and Franchisee Emp. Antitrust Litig.*, No. 3:18-cv-00825-BJB-RSE, 2025 U.S. Dist. LEXIS 152012 (W.D. Ky. Aug. 7, 2025) ($5 million recovery for no-poach by Papa

John's franchisees); *Binotti v. Duke Univ.*, No. 1:20-cv-00470-CCE, 2021 U.S. Dist. LEXIS 225003 (M.D.N.C. Aug. 30, 2021) ($19 million recovery for no-poach agreement between Duke University and University of North Carolina for non-medical faculty); *In re Railway Indus. Emp. No-Poach Antitrust Litig.*, No. 2:18-mc-00798-JFC, 2020 U.S. Dist. LEXIS 249904 (W.D. Pa. Aug. 26, 2020) ($48.95 million recovery for no-poach agreement by railway employers, following DOJ's simultaneous Complaint and stipulated Final Judgment for same conduct entered four months prior to filing of class action complaint).

Accordingly, Rule 23(e)(2)(C)(i) and the first, fourth, fifth, sixth, eight, and ninth *Girsh* factors strongly favor approval.

        b.      The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) directs the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This inquiry overlaps with the sixth *Girsh* factor, which considers "whether the procedure for processing individual claims under the settlement is fair and reasonable." *Prudential*, 148 F.3d at 323. Together, these considerations examine whether the distribution mechanism is fair and workable. Both strongly favor approval here.

The Court has already reviewed and preliminarily approved the Plan of Allocation. *See* Dkt. 257 ¶ 9 ("The Court has reviewed the Plan of Allocation and

hereby preliminarily approves it."). The Court likewise approved the Notice Program. *Id.* ¶¶ 16–18. Settlement Class Members were identified through Defendants' employment and compensation records,[9] and notice was disseminated through direct mail and email (if available) and supplemented by digital outreach and a publicly accessible settlement website, email address, phone number, and P.O. Box. *See* Reid Decl. ¶¶ 7-27. Settlement Class Members who received notice by mail or email with a claim number and total compensation amount from January 1, 2014 through August 5, 2020 were automatically included in the Settlement Class and did not need to submit a Proof of Claim and Release Form to receive payment. *Id.* ¶ 9. Settlement Class Members who did not receive a notice by mail or email but believed they are included in the Settlement Class had the option of submitting a Proof of Claim and Release Form electronically or by mail through a user-friendly process administered by A.B. Data. *Id.* ¶ 3, 10, 21, 27-29. Such streamlined and data-driven distribution mechanisms weigh in favor of approval. *See Baby Prods.*, 708 F.3d at 173–74.

---

[9] On October 3, 2025, Class Counsel submitted a discovery letter brief concerning the production of Social Security numbers for Settlement Class Members to facilitate notice and settlement administration. *See* Dkt. 248. On November 18, 2025, the Court ordered Geisinger to produce Social Security numbers for Settlement Class Members to the settlement administrator, A.B. Data; Evangelical had previously agreed to provide this information. *See* Dkt. 256. Through these productions A.B. Data has been able to identify Settlement Class Members' records.

The distribution method is straightforward and designed to maximize participation and recovery. The $28.5 million non-reversionary Settlement Fund will be distributed pursuant to the Plan of Allocation. Reid Decl. ¶ 36. After deducting Court-approved attorneys' fees, litigation expenses, service awards, and administration costs, the net Settlement Fund will be distributed to eligible Settlement Class Members on a *pro rata* basis with each Settlement Class Member receiving a guaranteed minimum payment of $250 and a possible additional recovery based on each claimant's relative compensable employment during the Class Period. *See* Dkt. 249 at 26–29. The Settlement Administrator will be issuing payments to eligible Settlement Class Members via an electronic payment platform or check. Reid Decl. ¶ 30.

> c. Class Counsel's Request for Attorneys' Fees and Reimbursement of Expenses Is Reasonable

Rule 23(e)(2)(C)(iii) directs the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Advisory Committee Notes explain that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23, advisory comm.'s notes to 2018 amendment. Rule 23(e)(2)(C)(iii) overlaps with the fifth *Prudential* factor, which considers "whether any provisions for attorneys' fees are reasonable[.]" *Prudential*, 148 F.3d at 323. These factors weigh in favor of approval.

24

As set forth in Plaintiffs' separately filed fee motion (*see* Dkt. 261), Class Counsel seek an award of 33.33% of the $28.5 million Settlement Fund, plus *pro rata* interest, as well as reimbursement of $2,702,804.95 in litigation expenses. *Id*. The requested attorney fee was fully disclosed in the Court-approved Notice, and Settlement Class Members were afforded an opportunity to object. *See* Reid Decl., Exs. A, B, D. No objections to the fee request have been received. Moreover, as the Settlement Agreements make clear, the Court can consider the fairness of Class Counsel's fee request separate and apart from the Settlements themselves. *See* Dkts. 246-1 ¶37; 246-2 ¶ 39.

The requested 33.33% is consistent with fee awards routinely approved in complex antitrust class actions within the Third Circuit. *See, e.g.*, *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-2002, 2012 WL 5467530, at *5 (E.D. Pa. Nov. 9, 2012). As detailed in the fee motion, Class Counsel litigated this case for over four years on a fully contingent basis, devoted over 24,000 hours, and incurred over $2.7 million in expenses. *See* Dkt. 261. In fact, the requested fee award would constitute a negative multiplier of 0.56., meaning that Class Counsel will not even recover the full value of the time they expended on the Action on a lodestar basis. *Id*. at 30. Accordingly, Rule 23(e)(2)(C)(iii) and the fifth *Prudential* factor weigh in favor of final approval.

d.      Agreements To Be Identified Under Rule 23(e)(3)

Federal Rule of Civil Procedure 23(e)(2)(C)(iv) requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(3), in turn, requires disclosure of any agreement made in connection with the proposal.

Here, the only agreement made in connection with the Settlements is a Confidential Supplemental Agreement[10] between Plaintiffs and Evangelical containing a customary opt-out termination provision (a "blow provision"). Under that Supplemental Agreement, Evangelical may elect to rescind the Settlement Agreement if valid requests for exclusion (that comply with the requirements set forth in the Class Notice) equal or exceed a certain threshold of Settlement Class Members. The provision, however, cannot be triggered because there is one opt-out, which is below the applicable threshold. *See* Joint Decl. ¶ 4; Reid Decl. ¶ 28.

Such confidential opt-out termination provisions are standard in complex class action settlements and do not undermine the fairness of the Settlement. *See Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *19 (M.D. Pa. Oct. 2, 2017); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D.Del.2002) (stating that notice did not need to include details on "the confidential 'opt-out' threshold beyond which defendant reserved the right to

---

[10] Upon the Court's request, Settlement Class Counsel will make the confidential side letter agreement available for the Court's *in camera* review.

26

withdraw from the settlement"); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n. 4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 40 n. 4 (E.D.N.Y. 2024) ("Courts in this circuit have generally approved settlements that include blow up provisions."); *Newberg and Rubenstein on Class Actions* § 13:6 (6th ed., Dec. 2025) ("Indeed, courts generally approve settlements that contain blow up provisions, likely because, by insuring defendants against bad outcomes, they encourage settlement.")

There are no other agreements, side letters, or arrangements made in connection with the Settlements that require identification.

        4.    The Settlements Ensure Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires the Court to consider whether the settlement "treats class members equitably relative to each other." This requirement ensures there is no "inequitable treatment of some class members vis-à-vis others." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. The Settlements satisfy this standard.

The Court's "principal obligation" in reviewing a plan of allocation "is simply to ensure that the fund distribution is fair and reasonable as to all participants in the

fund." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh*, 726 F.2d at 964). The Plan of Allocation, which the Court preliminarily approved (Dkt. 257 ¶ 9) and no Settlement Class Member has objected to, distributes the net settlement fund equitably on a *pro rata* basis tied to each Settlement Class Member's relative employment compensation during the Class Period, while also guaranteeing a minimum payment to each eligible Settlement Class Member. *See* Dkt. 249 at 26-29. This structure directly aligns recovery with each Settlement Class Member's potential exposure to the alleged wage suppression, ensuring that Settlement Class Members are treated equitably. There are no arbitrary distinctions among Settlement Class Members, no preferential subgroups, and no reversion to Defendants. *See* Joint Decl. ¶ 5. All Settlement Class Members are eligible to relief under the same employment- and compensation-based formula. *Id.*

The requested service awards to the Class Representatives are consistent with this equitable treatment in light of their substantial involvement in the Action. Unlike other class members, Plaintiffs Leib and Brokenshire extensively participated in defensive discovery, including interrogatory responses, document production and multiple depositions – all on behalf of the class. For their contributions to the litigation, each seek $10,000. *See* Dkt. 261. Courts within this Circuit routinely approve comparable service awards in complex class actions. *See, e.g., In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *29 (E.D. Pa.

Mar. 15, 2023); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *18-19 (E.D. Pa. June 2, 2004), *amended*, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004); *In re Residential Doors Antitrust Litig.*, No. 94-CV-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998); *Kanefsky v. Honeywell Int'l, Inc.*, No. 18-CV-15536 (WJM), 2022 WL 1320827, at *12 (D.N.J. May 3, 2022). The service awards compensate the Class Representatives for their time and risk and do not create inequitable treatment among Settlement Class Members.

Accordingly, because the Settlements allocate recovery through a uniform, employment- and compensation-based formula and treats Settlement Class Members alike, Rule 23(e)(2)(D) weighs in favor of approval.

## B.    The *Girsh* Factors Favor Approval of the Settlements

Plaintiffs have addressed the first, fourth, fifth, sixth, eighth, and ninth *Girsh* factors above in connection with Rule 23(e). The remaining second, third, and seventh *Girsh* factors independently confirm that the Settlements are fair, reasonable, and adequate, therefore warrant approval.

### 1.    The Settlement Class Have Reacted Positively to the Settlements

The reaction of Settlement Class Members confirms the effectiveness of this approach. The second *Girsh* factor evaluates the Settlement Class's response by examining the number of objections and opt-outs relative to the size of the class.

*See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313–14 (3d Cir. 1993). "[S]ilence constitutes tacit consent to the agreement." *In re Gen. Motors Corp.*, 55 F.3d at 812. The Settlement Administrator has received no objections and only one request for exclusion from a Settlement Class comprised of over 11,000 Healthcare Workers. *See* Reid Decl. ¶¶ 7, 8, 9, 18, 28, 29. Accordingly, Rule 23(e)(2)(C)(ii) and the second *Girsh* factor both weigh strongly in favor of approval.

        2.     The Stage of the Proceedings and Amount of Discovery Completed Favor Approval

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement" and permits the Court to assess whether counsel had an "adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235; *Warfarin*, 391 F.3d at 537. The inquiry is whether the parties were sufficiently informed—not whether discovery was exhaustively complete. *See Tumpa v. IOC-PA, LLC*, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021). This inquiry overlaps with the first *Prudential* factor, which considers "the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages." *Prudential*, 148 F.3d at 323.

Here, there is no question that this case was extensively developed before settlement. Over more than four years, the parties engaged in substantial fact discovery, including large-scale document productions, structured compensation data analysis, written discovery, and numerous depositions. *See* Dkt. 246 ¶¶ 18–40. Plaintiffs retained economic experts, exchanged opening and rebuttal reports, conducted expert depositions, and fully briefed *Daubert* motions. *Id*. ¶¶ 41–54, 59-62; *see also* Dkts. 175–80, 182, 184, 201, 202, 204, 205, 221, 224. Plaintiffs also moved for class certification, which was fully briefed at the time of settlement. Dkt. 246 ¶¶ 55-58.

The Settlements were reached only after the parties had developed a comprehensive factual and expert record and clearly understood the strengths and weaknesses of their respective positions. *Id*. ¶ 5. Courts routinely find this factor satisfied under comparable circumstances. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 438-39 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*"); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 270–71 (E.D. Pa. 2012). The third *Girsh* factor and first *Prudential* factor strongly support final approval.

### 3.    Defendants' Ability to Withstand a Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Cendant* 264

31

F.3d at 240; *Warfarin*, 391 F.3d at 537–38. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *See NFL*, 821 F.3d 410, 440 (3d Cir. 2016), *as amended* (May 2, 2016).

Defendants have not asserted an inability to pay a greater judgment, nor are either Settlement premised on financial distress. Nonetheless, as hospitals, there is a practical limit on what each Defendant could withstand in terms of either a settlement or judgment. This is particularly true with respect to Evangelical, which is a non-profit community hospital.[11]

However, even where a defendant may have the theoretical ability to withstand a larger judgment, courts routinely hold that this fact alone does not render a settlement unfair: "Even if solvency could be assured," the Third Circuit "regularly find[s] a settlement to be fair even though the defendant has the practical ability to pay greater amounts." *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3.d 626, 645 (E.D. Pa. 2015) (collecting cases).

The relevant inquiry focuses on whether, in light of the substantial risks inherent in litigation, the recovery represents a fair and reasonable compromise. As discussed *supra*, Plaintiffs faced meaningful litigation risks at every stage of the case. In these circumstances, courts recognize that a defendant's ability to pay more does not weigh against settlement where there is a real possibility that plaintiffs

---

[11] *See* https://projects.propublica.org/nonprofits/organizations/240795411

might recover less, or nothing, at trial. *See Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997) (holding that a defendant's financial capacity to pay more did not undermine settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial."). Accordingly, this factor does not weigh against approval and, when considered in context, supports approval of the Settlements.

### C.    Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process

Rule 23 requires that notice of a proposed settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B). Notice satisfies Rule 23 and due process where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *NFL*, 821 F.3d 410, 435 (3d Cir. 2016), *as amended* (May 2, 2016) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). It must provide sufficient information to enable class members to make informed decisions about whether to object or opt out. *See Baby Prods.*, 708 F.3d at 180.

This Court has already found that Plaintiffs' proposed Notice Program met these standards. *See* Dkt. 257 ¶¶ 16, 17. And, as the notice provider's declaration

33

makes clear, A.B. Data implemented the Court-approved Notice Program. Reid Decl. ¶¶ 2, 38. Following the Court's preliminary approval of the Settlements (*see* Dkt. 257 ¶¶ 16-17), A.B. Data promptly began implementing all aspects of the Court-approved notice plan. Reid Decl. *passim*. In addition, pursuant to 28 U.S.C. § 1715, Defendants provided notice of the Settlements to the appropriate officials pursuant to the Class Action Fairness Act. *See* Joint Decl. ¶ 6. A.B. Data had previously been retained as Settlement Administrator after a competitive bidding process and was responsible for administering notice and settlement. *See* Dkt. 247 ¶ 1.

The Notice informed Settlement Class Members of, among other things: (i) the nature of the action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the material terms of the Settlements; (iv) the proposed Plan of Allocation; (v) Settlement Class members' rights to object or request exclusion; (vi) the binding effect of a judgment; and (vii) Class Counsel's anticipated request for attorneys' fees expenses, and service awards. *See* Reid Decl. ¶ 3, Exs. A, B, D, E. The Notice also clearly explained the procedures and specific deadlines for submitting claims; this included completing required an IRS Form W-9 documentation (where applicable), requesting exclusion, or objecting to the Settlements—including the February 17, 2026 deadline for submitting claims, exclusions, and objections—and advised Settlement Class Members of the March 16, 2026 Fairness Hearing before this Court. *Id*.

Implementation of the Notice Program included establishment of the case-specific settlement website, activation of a dedicated email address and toll-free telephone helpline, and dissemination of all components of the approved supplemental media campaign; the supplemental media campaign included banner advertisements, a press release, and digital and social media outreach which began December 18, 2025. *See* Reid Decl. ¶¶ 4-6, 23-27. The settlement website, www.geisingerevansettlement.com, became publicly accessible on January 18, 2026 and provides Settlement Class Members with information regarding the Settlements, access to key case documents, frequently asked questions, and tools for submitting claims or updating contact information. *See* Reid Decl. ¶ 24.

Settlement Class Members were able to obtain information or assistance through multiple dedicated communication channels, including the settlement email address (info@geisingerevansettlement.com), a toll-free telephone helpline (877-543-4579), and the Settlement Administrator's mailing address at Geisinger Evangelical Settlement, c/o A.B. Data, Ltd., P.O. Box 173108, Milwaukee, WI 53217. *See* Reid Decl. ¶¶ 23, 26, 27.

A.B. Data also effectuated direct notice using contact information associated with both Geisinger and Evangelical employees provided by Defendants. *See* Reid Decl. ¶¶ 12-22. Through this coordinated program of direct notice, digital outreach,

35

and publicly accessible information resources, the Court-approved Notice Program was fully implemented. *See* Reid Decl. ¶ 2, 38.

The uniformly favorable reaction of the Settlement Class confirms the adequacy of notice and the clarity of the procedures and deadlines provided to Settlement Class Members. As of the date of this filing, the Settlement Administrator has received only one request for exclusion and no objection to the Settlements; the deadline for objections and exclusions was February 17, 2026. *See* Reid Decl. ¶¶ 28, 29.

Accordingly, the Court-approved Notice Program fully satisfies Rule 23 and constitutional due process requirements.

## V.    CONCLUSION

For the foregoing reasons, and consistent with this Court's Preliminary Approval Order, Plaintiffs respectfully submit that the Settlements are fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e) and satisfy all *Girsh* factors and the applicable *Prudential* factors. As the Court has already recognized, the Settlements were reached after over four years of hard-fought litigation, extensive discovery, expert analysis, class certification and *Daubert* briefing, and arm's-length negotiations between experienced counsel. *See* Dkt. 257 ¶ 8.

The $28.5 million recovery provides substantial, certain, and timely monetary relief to thousands of Healthcare Workers while eliminating the significant risks, expense, and delay of continued litigation. Accordingly, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlements; (2) finally approve the Plan of Allocation; (3) enter final judgment; and (4) grant such other and further relief as the Court deems just and proper.

Dated: March 10, 2026                              Respectfully submitted,

*/s/ Adam J. Zapala*                               */s/ Eric L. Cramer*
Adam J. Zapala (*Pro Hac Vice*)                    Eric L. Cramer (PA Bar No. 69289)
Elizabeth T. Castillo (*Pro Hac Vice*)             Shanon Jude Carson (PA Bar No. 85957)
Christian S. Ruano (*Pro Hac Vice*)                Michael J. Kane (PA Bar No. 73998)
**COTCHETT, PITRE &**                              Michaela L. Wallin (*Pro Hac Vice*)
**McCARTHY, LLP**                                  J. Taylor Hollinger (PA Bar No. 332706)
840 Malcolm Road                                   **BERGER MONTAGUE PC**
Burlingame, CA 94010                               1818 Market Street, Suite 3600
Phone: (650) 697-6000                              Philadelphia, PA 19103
Fax: (650) 697-0577                                Phone: (215) 875-4604
azapala@cpmlegal.com                               Fax: (215) 875–5707
ecastillo@cpmlegal.com                             ecramer@bergermontague.com
cruano@cpmlegal.com                                scarson@bergermontague.com
                                                   mkane@bergermontague.com
                                                   mwallin@bergermontague.com
                                                   thollinger@bergermontague.com

                                                   Daniel J. Walker (*Pro Hac Vice*)
                                                   **BERGER MONTAGUE PC**
                                                   1001 G Street, NW
                                                   Suite 400 East
                                                   Washington, DC 20001
                                                   Phone: (202) 559-9745
                                                   dwalker@bergermontague.com

37

## CERTIFICATE OF SERVICE

I, Adam J. Zapala, hereby certify that on March 10, 2026, I filed a true and correct copy of the foregoing Plaintiffs' Memorandum of Law In Support of Motion for Final Approval of the Class Action Settlements with the Court's Case Management/Electronic Case Filing System and thereby served upon all counsel of record in this matter.

*/s/ Adam J. Zapala*
Adam J. Zapala